# 16-3450-cv

## United States Court of Appeals

*for the*

## Second Circuit

In Re: KINGATE MANAGEMENT LIMITED LITIGATION

---

CRITERIUM CAPITAL FUNDS B.V., BBF TRUST, BANCA ARNER S.A., ALVARO CASTILLO, BG VALORES, S.A., JAQUES LAMAC, NITKEY HOLDINGS CORPORATION,

*Plaintiffs-Appellants,*

LUCIEN GELDZAHLER,

*Plaintiff-Consolidated Defendant-Appellant,*

SILVANA WORLDWIDE CORPORATION, WALL STREET SECURITIES, S.A., EITHAN EPHRATI, ANDBANC,

*Plaintiffs,*

– v. –

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT BRIEF FOR DEFENDANTS-APPELLEES

BARRY G. SHER
JODI A. KLEINICK
ANTHONY ANTONELLI
MOR WETZLER
PAUL HASTINGS LLP
*Attorneys for Defendants-Appellees FIM Limited, FIM Advisers LLP, FIM (USA) Incorporated, Carlo Grosso and Federico M. Ceretti*
200 Park Avenue
New York, New York 10166
(212) 318-6000

CARMINE D. BOCCUZZI, JR.
ERICA KLIPPER
CLEARY GOTTLIEB STEEN
  & HAMILTON LLP
*Attorneys for Defendant-Appellee Citi Hedge Fund Services, Ltd.*
One Liberty Plaza
New York, New York 10006
(212) 225-2000

TREMONT (BERMUDA) LIMITED, SANDRA MANZKE, FIM ADVISERS
LLP, MICHAEL G. TANNENBAUM, TREMONT GROUP HOLDINGS,
INCORPORATED, PRICEWATERHOUSECOOPERS LLP,

*Defendants-Appellees,*

KINGATE MANAGEMENT LIMITED, FIM (USA)
INCORPORATED, CITI HEDGE FUND SERVICE LTD,

*Defendants-Consolidated Defendants-Appellees,*

PRICEWATERHOUSECOOPERS BERMUDA, CARLO GROSSO,
FIM LIMITED, FEDERICO M. CERETTI,

*Consolidated Defendants-Appellees,*

BERNARD L. MADOFF, GRAHAM H. COOK, JOHN E. EPPS, CHARLES
SEBAH, KEITH R. BISH, CHRISTOPHER WETHERHILL, PHILLIP A.
EVANS, MARGARET EVERY, SHAZIEH SALAHUDDIN, JOHANN WONG,
PRESTON M. DAVIS, BANK OF BERMUDA LIMITED,

*Defendants,*

PRICEWATERHOUSECOOPERS, ANDORRA BANC AGRICOL REIG S.A.,
on behalf of itself and on behalf of all others similarly situated,

*Consolidated Defendants.*

---

SCOTT W. REYNOLDS
ERIN E. VALENTINE
CHAFFETZ LINDSEY LLP
*Attorneys for Defendant-Appellee*
  *Kingate Management Limited*
1700 Broadway, 33rd Floor
New York, New York 1019
(212) 257-6960

DENNIS H. TRACEY, III
SANFORD M. LITVACK
HOGAN LOVELLS US LLP
*Attorneys for Defendant-Appellee*
  *PricewaterhouseCoopers Bermuda*
875 Third Avenue
New York, New York 10022
(212) 918-3000

KIMBERLY PERROTTA COLE
JONATHAN D. COGAN
KOBRE & KIM LLP
*Attorneys for Defendant-Appellee*
  *Sandra Manzke*
800 Third Avenue
New York, New York 10022
(212) 488-1200

SETH M. SCHWARTZ
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
*Attorneys for Defendants-Appellees*
  *Tremont (Bermuda) Limited and*
  *Tremont Group Holdings, Inc.*
Four Times Square
New York, New York 10036
(212) 735-3000

LAURA G. BIRGER
ABIGAIL B. SEIDNER
COOLEY LLP
*Attorneys for Defendant-Appellee*
  *Michael G. Tannenbaum*
1114 Avenue of the Americas
New York, New York 10036
(212) 479-6000

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for:

Defendant-Appellee Kingate Management Limited ("KML") states that KML does not have a corporate parent and no publicly-held corporation owns 10% or more of its stock;

Defendants-Appellees Tremont (Bermuda) Limited ("Tremont") and Tremont Group Holdings, Inc. ("Tremont Group") states that Tremont is a wholly-owned subsidiary of Tremont Group, that Tremont Group is a wholly-owned subsidiary of Oppenheimer Acquisition Corp. ("Oppenheimer"), that Oppenheimer is a wholly-owned subsidiary of MassMutual Holding LLC ("MassMutual"), that MassMutual is a wholly-owned subsidiary of Massachusetts Mutual Life Insurance Company ("Mass Mutual Life"), that Mass Mutual Life is a mutual insurance company that has no parent corporation and no publicly held corporation owns 10 percent or more of the stock of Mass Mutual Life;

Defendant-Appellee PricewaterhouseCoopers Bermuda ("PwC Bermuda") states that PwC Bermuda is not a publicly held company, has no parent company, and that no publicly held company owns more than ten percent (10%) of PwC Bermuda;

i

Defendant-Appellee Citi Hedge Fund Services, Ltd. ("Citi Hedge") states that Citi Hedge, which changed its name to Citi Fund Services (Bermuda), Ltd. in January 2013, has again changed its name to SS&C Fund Services (Bermuda) Ltd. as a result of its acquisition by SS&C Technologies Holdings, Inc. ("SS&C") in March 2016, that SS&C Fund Services (Bermuda) Ltd. is wholly owned by SS&C, that SS&C is a publicly held corporation that has no parent corporation, that as of December 30, 2016, T. Rowe Price Group, Inc., which owns 13.38% of SS&C, is the only publicly held corporation that directly owns 10% or more of SS&C, and that Janus Capital Group Inc. indirectly owns 10.55% of SS&C through its wholly owned subsidiary, Janus Capital Management LLC; and

Defendants-Appellees FIM Limited, FIM Advisers LLP ("FIM Advisers"), and FIM (USA) Inc. ("FIM (USA)") (private non-governmental parties) state that FIM Limited has no corporate parent and no publicly held corporation owns 10% or more of its stock, that FIM Limited owns 98% of FIM Advisers, and that FIM (USA), which filed a certificate of dissolution on June 8, 2009, was an indirect, wholly-owned subsidiary of FIM Advisers.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF AUTHORITIES ...................................................................... vii

TABLE OF DEFINED TERMS ...................................................................xvi

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW.................2

COUNTER-STATEMENT OF THE CASE ........................................................3

    A.    The Subscription Agreements and the Information Memoranda.........5

    B.    The Funds' and KML's Service Providers and Service Agreements................................................................................................7

        1.    The Manager:  KML ...............................................................7

        2.    The Co-Manager:  Tremont ....................................................9

        3.    The Consultant:  FIM ...........................................................11

        4.    The Auditor:  PwC Bermuda .................................................14

        5.    The Administrator:  Citi Hedge ..............................................15

        6.    The Individual Defendants......................................................16

    C.    The Risk Disclosures and Exculpatory Provisions in the Information Memoranda ...............................................................17

    D.    Relevant Procedural History ............................................................22

    E.    The District Court's Decision ..........................................................26

    F.    Other Relevant Proceedings .............................................................27

SUMMARY OF THE ARGUMENT ...............................................................29

STANDARD OF REVIEW ............................................................................33

ARGUMENT ...............................................................................................35

I.    THE DISTRICT COURT CORRECTLY DISMISSED ALL OF PLAINTIFFS' CLAIMS FOR LACK OF STANDING UNDER BVI/BERMUDA LAW ...............................................................................35

    A.    Plaintiffs' Claims Are Barred By The Rule Against Reflective Loss..................................................................................................36

    B.    The Giles v. Rhind Exception Does Not Apply...............................42

iii

**TABLE OF CONTENTS**
(continued)

Page

C. Most of Plaintiffs' Claims Are Also Barred Under the "Proper Plaintiff" Principle...............................................................................47

II. THE DISTRICT COURT CORRECTLY DISMISSED COUNTS 5-7, 9-13, 15-16, 18-19, 21-23, 25-26 AND 28 FOR FAILURE TO STATE CLAIMS UNDER BVI/BERMUDA LAW AGAINST ANY DEFENDANT ........................................................................................51

A. The District Court Correctly Held that Plaintiffs Cannot Avoid the Limited Scope of Duties, Including the Exculpation Provisions, Limitations on Liability Clauses and Disclaimers Found in the Subscription Agreements, Information Memoranda and Service Agreements ................................................52

B. The District Court Correctly Held That Plaintiffs' Breach of Fiduciary Duty Claims Against the Kingate Defendants (Count 7) and Citi Hedge (Count 21) Fail.......................................................55

   1. The SAC Fails to State a Breach of Fiduciary Duty Claim Against Any of the Kingate Defendants ..................................56

   2. The SAC Fails to State a Breach of Fiduciary Duty Claim Against Citi Hedge..................................................................63

C. The District Court Correctly Held That Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claims Against Tremont Group (Count 13), PwC Bermuda (Count 19) and Citi Hedge (Count 26) Fail ....................................................................................68

D. The District Court Correctly Held That Plaintiffs' Gross Negligence Claims Against All Defendants (Counts 5, 15 and 22) Fail.......................................................................................70

E. The District Court Correctly Held That Plaintiffs' Negligence Claims Against All Defendants (Counts 6, 16 and 23) Fail..............71

   1. Kingate Defendants.................................................................72

   2. Citi Hedge .............................................................................75

   3. PwC Bermuda ........................................................................76

F. Plaintiffs Fail to State Claims for Negligent Misrepresentation Against PwC Bermuda (Count 17) and Citi Hedge (Count 24).........78

# TABLE OF CONTENTS
(continued)

Page

G.      The District Court Correctly Held That Plaintiffs' Claims For Third Party Beneficiary Breach of Contract Against KML and Tremont (Count 9), the FIM Entities (Count 10), PwC Bermuda (Count 18) and Citi Hedge (Count 25) Fail ........................................80

H.      The District Court Correctly Held That Plaintiffs' Claims For Constructive Trust and Mutual Mistake Against the Kingate Defendants (Counts 11 and 12) and Unjust Enrichment Against All Defendants (Count 28) Fail ........................................82

III.    SLUSA PRECLUDES PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION AGAINST PWC BERMUDA (COUNT 17) AND CITI HEDGE (COUNT 24), AS THE DISTRICT COURT CORRECTLY HELD, AND ALSO REQUIRES PRECLUSION OF ADDITIONAL CLAIMS ........................................89

     A.      The District Court Properly Dismissed Plaintiffs' Negligent Misrepresentation Claims Against PwC Bermuda (Count 17) and Citi Hedge (Count 24) as Precluded by SLUSA ........................90

     B.      Plaintiffs' Argument that SLUSA Does Not Apply to Foreign Law Claims is Foreclosed by Kingate and This Court's Mandate, and In Any Event Fails ........................................91

     C.      The District Court Incorrectly Determined that Additional Claims Are Not Precluded by SLUSA ........................................99

         1.      All Claims Against Citi Hedge (Counts 21-26 and 28) and PwC Bermuda (Counts 15-19 and 28) Are Group 2 or 3 Claims Precluded by SLUSA ........................................99

         2.      All Claims Against the Kingate Defendants (Except Mutual Mistake) (Counts 5-7, 9-11, 13 and 28) Are Group 2 or 3 Claims Precluded by SLUSA ........................102

IV.    IN THE ALTERNATIVE, INTERNATIONAL COMITY ALSO REQUIRES DISMISSAL OF ALL CLAIMS ........................................105

     A.      Comity of Courts Warrants Dismissal ........................................106

     B.      Comity of Nations Also Warrants Dismissal ........................................109

# TABLE OF CONTENTS
(continued)

Page

V.    ALTERNATIVELY, THE DISTRICT COURT SHOULD HAVE DISMISSED THE CLAIMS AGAINST THE KINGATE DEFENDANTS (COUNTS 5-7, 9-13 AND 28) AS TIME-BARRED .....111

    A.    Plaintiffs' Claims Against the KML Defendants, the FIM Defendants and Manzke Are Untimely Because the Original Occurrence Giving Rise to the Claims Against Them Occurred Years Before Madoff's Fraud Was Discovered ...............................112

    B.    Plaintiffs' Claims Against FIM (USA), Grosso and Ceretti Are Untimely Even If The "Original Occurrence" Did Not Occur Until Madoff's Fraud Was Discovered .............................................113

VI.    ALTERNATIVELY, THE DISTRICT COURT SHOULD HAVE DISMISSED THE ACTION AGAINST CITI HEDGE FOR LACK OF PERSONAL JURISDICTION ............................................................115

VII.    THE DISTRICT COURT PROPERLY DENIED APPELLANTS' REQUEST TO RE-PLEAD FOR A THIRD TIME...................................121

CONCLUSION ................................................................................................124

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...............................127

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.,
No. 13 CIV. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31,
2015) ...............................................................................................117

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,
404 F.3d 566 (2d Cir. 2005) ...........................................................78, 79

Allstate Life Ins. Co. v. Linter Grp. Ltd.,
994 F.2d 996 (2d Cir. 1993) .....................................................106, 108

Anschutz Corp. v. Merrill Lynch & Co., Inc.,
690 F.3d 98 (2d Cir. 2012) ...............................................................79

Anwar v. Fairfield Greenwich Ltd.,
118 F. Supp. 3d 591 (S.D.N.Y. 2015) ..............................................73

Anwar v. Fairfield Greenwich Ltd.,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ..........................38, 58, 73, 112

Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Mgmt. Inc.,
18 N.Y.3d 341, 939 N.Y.S.2d 274 (2011).........................................23

Atuahene v. City of Hartford,
10 F. App'x 33 (2d Cir. 2001) ...........................................................26

Baltus-Michaelson v. Credit Suisse First Boston, LLC,
116 F. App'x 308 (2d Cir. 2004) .......................................................33

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)....................................................................37, 42

Bensusan Rest. Corp. v. King,
126 F.3d 25 (2d Cir. 1997) .............................................................120

In re Bernard L. Madoff Inv. Secs. LLC.,
Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y.) ..........................27

## TABLE OF AUTHORITIES
(continued)

Page

In re Bernard L. Madoff Inv. Securities LLC,
654 F.3d 229 (2d Cir. 2011) ...............................................................38

Bogle-Assegai v. Connecticut,
470 F.3d 498 (2d Cir. 2006) ...............................................................95

In re BP p.l.c. Sec. Litig.,
109 F. Supp. 3d 946 (S.D. Tex. 2014)..................................................98

Brown v. Lockheed Martin Corp.,
814 F.3d 619 (2d Cir. 2016) .............................................................118

Call Ctr. Techs., Inc. v. Interline Travel,
622 F. App'x 73 (2d Cir. 2015) ....................................................93, 94

In re Coudert Bros. LLP,
809 F.3d 94 (2d Cir. 2015) ..........................................................93, 94

Cromer Fin. Ltd. v. Berger,
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ......................................116, 119

CRT Invs., Ltd. v. BDO Seidman, LLP,
85 A.D. 3d 470, 925 N.Y.S.2d 439 (1st Dep't 2011) .......................119

Cunard S.S. Co. v. Salen Reefer Servs. AB,
773 F.2d 452 (2d Cir. 1985) .............................................................107

Daimler AG v. Bauman,
134 S. Ct. 746 (2014).................................................................*passim*

Daniel v. Am. Bd. of Emergency Med.,
428 F.3d 408 (2d Cir. 2005) .......................................................34, 115

DeLollis v. Friedberg, Smith & Co., P.C.,
600 F. App'x 792 (2d Cir. 2015) .................................................34, 67

Diorinou v. Mezitis,
237 F. 3d 133 (2d Cir. 2001) ............................................................106

Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.),
341 B.R. 460 (Bankr. S.D.N.Y. 2006)..............................................115

viii

**TABLE OF AUTHORITIES**

(continued)

Page

Feiner Family Tr. v. Xcelera Inc.,
No. 10-cv-3431 (RPP), 2010 WL 3184482 (S.D.N.Y. Aug. 9,
2010) ...............................................................................................98

In re Fosomax Products Liab. Litig.,
707 F.3d 189 (2d Cir. 2013) ...........................................................41

Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic,
582 F.3d 393 (2d Cir. 2009) ..................................................120, 122

Giles v. Rhind,
[2003] (Ch.) 618 ........................................................................*passim*

Gilstrap v. Radianz Ltd.,
443 F. Supp. 2d 474 (S.D.N.Y. 2006), aff'd, 233 F. App'x 83 (2d
Cir. 2007) ...................................................................................70, 80

Goodyear Dunlop Tires Operations, S.A. v. Brown,
564 U.S. 915 (2011)........................................................................117

Grace v. Rosenstock,
228 F.3d 40 (2d Cir. 2000) ..............................................................34

Gucci Am., Inc. v. Li,
768 F.3d 122 (2d Cir. 2014) ..........................................................115

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009) ..............................................................33

Hau Yin To v. HSBC Holdings PLC,
No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1,
2017) ...............................................................................................37

Heimeshoff v. Hartford Life & Accident Ins. Co.,
134 S. Ct. 604 (2013).....................................................................112

In re Herald,
730 F.3d 112 (2013).........................................................101, 102, 103

**TABLE OF AUTHORITIES**

(continued)

Page

Homan v. Société Générale (In re Maxwell Commc'n Corp. plc ex rel Homan),
93 F.3d 1036 (2d Cir. 1996) ...............................................................109

Interfoto Picture Library Ltd. v. Stiletto Visual Programmes Ltd.,
[1989] QB 433 ....................................................................................54

Joblove v. Barr Labs, Inc. (In re Tamoxifen Citrate Antitrust Litig.),
466 F.3d 187 (2d Cir. 2006), abrogated on different grounds by
Fed. Trade Comm'n. v. Actavis, Inc., 133 S. Ct. 2223 (2013)........................121

In re Johns-Manville Corp.,
759 F.3d 206 (2d Cir. 2014) ................................................................95

Johnson v. Gore Wood & Co.
[2002] 2 AC 1 ...........................................................................*passim*

JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,
412 F.3d 418 (2d Cir. 2005) .............................................34, 106, 107

Kazakhstan Kagazy v. Arip
[2014] 1 C.L.C. 451 ...........................................................................45

Kingate. Anwar v. Fairfield Greenwich Ltd.,
118 F. Supp. 3d 591 (S.D.N.Y. 2015) ......................................................91

In re Kingate Management Ltd. Litig.,
784 F.3d 128 (2d Cir. 2015) ...........................................................*passim*

In re Kingate Mgmt. Ltd. Litig.,
No. 09 Civ. 5386 (DAB) (S.D.N.Y.).......................................................4

In re: Kingate Mgmt. Ltd. Litig.,
No. 11-1397 (2d Cir. May 21, 2012).................................................*passim*

Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941).............................................................................99

Kramer v. Time Warner Inc.,
937 F.2d 767 (2d Cir. 1991) ..................................................................57

x

**TABLE OF AUTHORITIES**

(continued)

Page

Lander v. Hartford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir. 2001) ........................................................................97

LaSala v. Bordier et Cie,
519 F.3d 121 (3d Cir. 2008) .................................................................95, 97

LaSala v. TSB Bank, PLC,
514 F. Supp. 2d 447 (S.D.N.Y. 2007) ..........................................................98

LaSala v. UBS, AG,
510 F. Supp. 2d 213 (S.D.N.Y. 2007) ..........................................................98

Lewis v. Robinson (In re Am. Exp. Co. S'holder Litig.),
39 F.3d 395 (2d Cir. 1994) ..........................................................................122

Marchak v. JPMorgan Chase & Co.,
84 F. Supp. 3d 197 (E.D.N.Y. 2015) ...............................................103, 105

Mazzei v. Money Store,
829 F.3d 260 (2d Cir. 2016) ..........................................................................96

Meacham v. Knolls Atomic Power Lab.,
358 F. App'x 233 (2d Cir. 2009) ..................................................................92

Meridian Horizon Fund, LP v. KPMG (Cayman),
487 F. App'x 636 (2d Cir. 2012) ..................................................................67

Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.,
747 F. Supp. 2d 406 (S.D.N.Y. 2010) ............................................................3

In re Merrill Lynch & Co.,
273 F. Supp. 2d 351 (S.D.N.Y. 2003), aff'd sub nom., Lentell v.
Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005)........................................4

Morrison v. Nat'l Austl. Bank Ltd.,
561 U.S. 247 (2010), S. Ct..............................................................98, 104, 110

Novella v. Westchester Cnty.,
661 F.3d 128 (2d Cir. 2011) ..........................................................................34

**TABLE OF AUTHORITIES**
(continued)

Page

Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), aff'd, 530 F. App'x 19 (2d Cir. 2013) .....................................26

Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d. Cir. 2003) .................................................................96

Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261 (2d Cir. 2012) ..................................................................94

Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006) .................................................................95

In re Petrobras Sec. Litig., 169 F. Supp. 3d 547 (S.D.N.Y. 2016) .........................................97, 98

Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 468 B.R. 620 (Bankr. S.D.N.Y. 2012)...............................................115

Rehman v. Jones Lang LaSalle Ltd. [2013] EWHC 1339, (QB) ...........................................................................44

Reyes v. Metromedia Software, Inc., 840 F. Supp. 2d 752 (S.D.N.Y. 2012) ..........................................113

Rivero v. INTL FCStone Inc., No. 14 CIV. 3879 (PAC), 2015 WL 6128707 (S.D.N.Y. Oct. 19, 2015) .......................................................................................123

Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V., No. CIV.A. 00-5965 JCL, 2005 WL 3658006 (D.N.J. June 7, 2005) .......................................................................................116

Romano v. Kazacos, 609 F.3d 512 (2d Cir. 2010) .........................................................33, 89

Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88 (2d Cir. 2006) .................................35, 106, 108, 109

xii

**TABLE OF AUTHORITIES**

(continued)

Page

Royal Brunei Airlines v. Tan,
[1995] 2 AC 378 ......................................................................69, 70

S. Cherry St., LLC v. Hennessee Grp. LLC,
573 F.3d 98 (2d Cir. 2009) .....................................................67, 103

S.E.C. v. Syron,
934 F. Supp. 2d 609 (S.D.N.Y. 2013) ...........................................83

Saltz v. First Frontier, L.P.,
782 F. Supp. 2d 61 (S.D.N.Y. 2010), aff'd, 485 F. App'x 461 (2d
Cir. 2012) ......................................................................................104

Sango v. Plovba,
966 F. Supp. 229 (S.D.N.Y. 1997) ..............................................124

Schwartzco Enter. LLC v. TMH Mgmt., LLC,
60 F. Supp. 3d 331 (E.D.N.Y. 2014) .............................................79

Scott v. Vill. of Spring Valley,
577 F. App'x 81 (2d Cir. 2014) ....................................................114

Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
513 B.R. 222 (Bankr. S.D.N.Y. 2014)....................................109, 110

SEC v. Cohmad Secs. Corp.,
No. 09 Civ. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2,
2010) ..................................................................................................4

Seghers v. Thompson,
No. 6 Civ. 308, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006).........48

Silvana Worldwide Corp. v. Kingate Management Ltd.,
No. 09 Civ. 5470 (S.D.N.Y.) .........................................................22

State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,
921 F.2d 409 (2d Cir. 1990) .........................................................123

Top Dog Ventures, LLC v. PK Operations, Inc.,
No. 0104741/2007, 2008 WL 1881559 (N.Y. Sup. Ct. Apr. 17,
2008) ...............................................................................................112

xiii

**TABLE OF AUTHORITIES**

(continued)

Page

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,
216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...........................................................106

United States v. Atehortva,
69 F.3d 679 (2d Cir. 1995) ..............................................................................95

United States v. Macias,
789 F.3d 1011 (9th Cir. 2015) ........................................................................96

United States v. Quiroz,
22 F.3d 489 (2d Cir. 1994) ..............................................................................96

Varga v. McGraw Hill Fin. Inc.,
No. 652410/2013, 2015 WL 4627748 (N.Y. Sup. Ct. July 31,
2015) ................................................................................................................37

In re Vitamin C Antitrust Litig.,
837 F.3d 175 (2d Cir. 2016) ............................................................................34

W. Palm Beach Police Pension Fund v. Collins Capital Low Volatility
Performance Fund II, Ltd.,
No 09-80846-CIV, 2010 WL 2949856 (S.D. Fla. July 26, 2010)................37, 60

Weiss v. Nat'l Westminster Bank PLC,
176 F. Supp. 3d 264 (E.D.N.Y. 2016) .......................................95, 117, 118, 119

Winn v. Schafer,
499 F. Supp. 2d 390 (S.D.N.Y. 2007) .............................................................47

Wright v. Ernst & Young LLP,
152 F.3d 169 (2d Cir. 1998) ............................................................................53

Zurich Capital Mkts, Inc. v. Coglianese,
388 F. Supp. 2d 847 (N.D. Ill. 2004).............................................................116

**Statutes**

15 U.S.C. § 78bb(f).........................................................................................96

15 U.S.C. § 78c(a)..........................................................................................97

28 U.S.C. § 1652.............................................................................................99

xiv

## <u>TABLE OF AUTHORITIES</u>
(continued)

Page

Martin Act, N.Y. Gen Bus. Law §§ 352-c & 353 (McKinney 1996)............. xxii, 23

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109
    Stat. 737 ........................................................................................ xxiii, 97

Securities Exchange Act of 1934 .........................................................................97

Securities Investor Protection Act ......................................................... xxiv, 27, 39

Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b),
    78bb(f)(1) ...................................................................................................2

**Rules and Regulations**

CPLR
    § 301.................................................................................................116
    § 302.................................................................................................119
    § 302(a)(2) .......................................................................................120

Fed. R. App. P.
    32(a)(5) ............................................................................................127
    32(a)(7) ............................................................................................127
    32(a)(7)(B) .......................................................................................127
    32(a)(7)(B)(iii) .................................................................................127

Fed. R. Civ. P.
    Rule 9(b) ......................................................................................78, 79
    12(h)(1)(B).......................................................................................117
    Rule 15 .............................................................................................123

## TABLE OF DEFINED TERMS

| **Defined Term** | **Definition** |
|---|---|
| 2010 Pl. Opp. Br. | Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motions of the Kingate Defendants to Dismiss the Amended Consolidated Class Action Complaint dated Nov. 4, 2010 (No. 09 Civ. 5386 (DAB), ECF No. 137) |
| 2012 Pl. App. Br. | Brief for Plaintiffs-Appellants dated May 21, 2012, In re: Kingate Mgmt. Ltd. Litig., No. 11-1397 (2d Cir. May 21, 2012) (ECF No. 72) |
| Administration Agreements | June 1, 2007 Amended and Restated Administration Agreement for Kingate Global (SAC Ex. 15) and June 1, 2007 Amended and Restated Administration Agreement for Kingate Euro (Tracey Ex. 33) (A-2085 to A-2098) |
| Administrator | Citi Hedge Fund Services, Ltd. and its predecessors BISYS Hedge Fund Services Limited and Hemisphere Management Limited |
| Amended Complaint | Amended Consolidated Class Action Complaint dated May 18, 2010 (A-268 to A-423) |
| App. Br. | Brief for Plaintiffs-Appellants dated January 19, 2017 (ECF No. 73) |

| Defined Term | Definition |
|---|---|
| Auditor | PricewaterhouseCoopers Bermuda and its predecessor, Coopers & Lybrand Bermuda |
| Auditor Agreements | 1995 - 2008 Audit Engagement Letters for Kingate Global and 2000 - 2008 Audit Engagement Letters for Kingate Euro |
| Bermuda Audit Proceeding | Proceeding commenced in the Supreme Court of Bermuda on January 29, 2010 by the Funds' Joint Liquidators against PwC Bermuda |
| Bermuda Defendants | Kingate Management Limited, FIM Limited, FIM Advisers LLP, Carlo Grosso, and Federico M. Ceretti |
| Bermuda Proceeding | Proceeding commenced in the Supreme Court of Bermuda on December 22, 2010 by the Funds' Joint Liquidators for Kingate Global and Kingate Euro against, among others, the Bermuda Defendants |
| Bermuda Proceedings | Bermuda Audit Proceeding and Bermuda Proceeding |
| BLMIS | Bernard L. Madoff Investment Securities LLC |
| Bompas | Declaration of Anthony George Bompas QC dated November 4, 2010 (A-770 to A-826) |

xvii

| Defined Term | Definition |
|---|---|
| Bompas Further | Further Declaration of Anthony George Bompas QC dated May 6, 2016 (A-2256 to A-2313, CA-1 to CA-3) |
| Browne-Wilkinson | Declaration of Simon Browne-Wilkinson Q.C. dated December 18, 2015 (A-2186 to A-2214) |
| Browne-Wilkinson Reply | Reply Declaration of Simon Browne-Wilkinson Q.C. dated July 26, 2016 (A-2519 to A-2546) |
| BVI | British Virgin Islands |
| Ceretti | Federico M. Ceretti |
| Chivers | Affidavit of David Chivers QC dated December 21, 2015 (A-1403 to A-1461) |
| Chivers Reply | Declaration of David Chivers QC dated July 27, 2016 (A-2458 to A-2489, CA-171 to CA-173) |
| Citi Hedge | Citi Hedge Fund Services, Ltd. |
| Co-Management Agreement | Undated Co-Management Agreement for Kingate Global (Tracey Ex. 16) (A-1924 to A-1937) |

| Defined Term | Definition |
| --- | --- |
| Consent Order | The order issued on February 1, 2017 by the Bermuda Court in the Bermuda Proceeding, attached as Exhibit 1 to the Declaration of Jodi Kleinick dated April 20, 2017 (ECF No. 138). |
| Co-Manager | Tremont (Bermuda) Limited |
| Consultant | FIM Limited or FIM Advisers LLP |
| CSAs (a/k/a Consulting Services Agreements) | Consulting Services Agreements dated April 23, 2001 between KML and FIM Limited relating to the Funds (Tracey Exs. 17-18) (A-1938 to A-1967) |
| Decision | Decision and Order of the United States District Court for the Southern District of New York (Batts, J.) dated September 21, 2016 (SPA-1 to SPA-145) |
| Deeds of Novation | Deeds of Novation effective August 1, 2005 among KML, FIM Limited, and FIM Advisers relating to the Consulting Services Agreements (Tracey Exs. 21-22) (A-1973 to A-1983) |
| Defendants | Kingate Management Limited, Tremont (Bermuda) Limited, Tremont Group Holdings, Inc., FIM Limited, FIM Advisers LLP, FIM (USA) Inc., Carlo Grosso, Federico M. Ceretti, Sandra Manzke, Michael G. Tannenbaum, PricewaterhouseCoopers Bermuda, and Citi Hedge Fund Services Ltd. |

xix

| Defined Term | Definition |
| --- | --- |
| Diel | Declaration of Mark A C Diel dated November 4, 2010 (A-424 to A-769) |
| Distribution Agreements | Distribution Agreements between KML and FIM Limited for Kingate Euro and Kingate Global (Barrett Exs. 9-10) (A-2404 to A-2429) |
| Dohmann | Declaration of Barbara Dohmann QC on English, Bermuda and British Virgin Island Law, dated December 16, 2015 (A-2215 to A-2255) |
| Dohmann Reply | Further Declaration of Barbara Dohmann QC on English, Bermuda and British Virgin Island Law dated July 26, 2016 (A-2547 to A-2566) |
| Evans | Declaration of Richard G. Evans dated December 21, 2015 (A-2158 to A-2185) |
| Evans Reply | Reply Declaration of Richard G. Evans dated July 28, 2016 (A-2511 to A-2518) |
| Exchange Act | Securities Exchange Act of 1934 |
| FIM | FIM Limited and FIM Advisers LLP |
| FIM (USA) | FIM (USA), Inc. |
| FIM Advisers | FIM Advisers LLP |

xx

| Defined Term | Definition |
|---|---|
| FIM Defendants | FIM Limited, FIM Advisers LLP, FIM (USA), Inc., Carlo Grosso and Federico M. Ceretti |
| FIM Entities | FIM Limited, FIM Advisers LLP and FIM (USA), Inc. |
| Funds (a/k/a Kingate Funds) | Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. |
| Funds' Joint Liquidators | Joint liquidators appointed by the High Court of Justice of the BVI for Kingate Global and Kingate Euro |
| GAAS | Generally Accepted Auditing Standards |
| Grosso | Carlo Grosso |
| Hargun | Declaration of Narinder K. Hargun dated December 21, 2015 (A-2099 to A-2157) |
| Hargun Reply | Reply Declaration of Narinder K. Hargun dated July 28, 2016 (A-2490 to A-2510) |
| IMs (a/k/a Information Memoranda) | Information Memoranda issued by Kingate Global or Kingate Euro (SAC Exs. 1-6; Tracey Exs. 10-14) (A-940 to A-1311; A-1533 to A-1910) |
| Individual Defendants | Michael G. Tannenbaum, Sandra Manzke, Carlo Grosso, and Federico M. Ceretti |

| Defined Term | Definition |
|---|---|
| Information Memoranda (a/k/a IMs) | Information Memoranda issued by Kingate Global or Kingate Euro (SAC Exs. 1-6; Tracey Exs. 10-14) (A-940 to A-1311; A-1533 to A-1910) |
| Initial Complaint | Complaint dated June 10, 2009 (A-58 to A-114) |
| Investment Advisor | Bernard L. Madoff Investment Securities LLC |
| Kingate | April 23, 2015 Opinion in In re Kingate Management Ltd. Litig., 784 F.3d 128 (2d Cir. 2015) |
| Kingate Defendants | Kingate Management Limited, Michael G. Tannenbaum, Tremont (Bermuda) Limited, Tremont Group Holdings, Inc., Sandra Manzke, FIM Limited, FIM Advisers LLP, FIM (USA), Inc., Carlo Grosso, and Federico M. Ceretti |
| Kingate Euro | Kingate Euro Fund, Ltd. |
| Kingate Funds (a/k/a Funds) | Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. |
| Kingate Global | Kingate Global Fund, Ltd. |
| Kleinick | Declaration of Jodi Kleinick dated April 20, 2017 (ECF No. 138) |
| KML | Kingate Management Limited |

| Defined Term | Definition |
| --- | --- |
| KML Defendants | Kingate Management Limited and Michael G. Tannenbaum |
| Mackellar | Declaration of Stuart Mackellar dated April 4, 2017 (ECF No. 106) |
| Madoff | Bernard L. Madoff |
| Management Agreements | May 1, 2000 Kingate Euro Fund, Ltd. Management Agreement (Tracey Ex. 15) (A-1911 to A-1923); March 1, 1995 Kingate Global Fund, Ltd. Management Agreement; May 1, 2000 Kingate Global Fund, Ltd. Management Agreement; and January 1, 2006 Kingate Global Fund, Ltd. Management Agreement (SAC Ex. 7) (A-1312 to A-1325) |
| Manager | Kingate Management Limited |
| Manzke | Sandra Manzke |
| Martin Act | Martin Act, N.Y. Gen Bus. Law §§ 352-c & 353 (McKinney 1996) |
| Mov. Br. | Memorandum of Law in Support of the Joint Motion of All Defendants to Dismiss the Corrected Second Amended Consolidated Class Action Complaint dated December 21, 2015 (No. 09 Civ. 5386 (DAB), ECF No. 197) |
| NAV | Net Asset Value |

xxiii

| Defined Term | Definition |
| --- | --- |
| Opp. Br. | Plaintiffs' Memorandum of Law in Opposition to the Joint Motion of All Defendants to Dismiss the Corrected Second Amended Consolidated Class Action Complaint dated May 6, 2016 (No. 09 Civ. 5386 (DAB), ECF No. 214) |
| Plaintiffs | Criterium Capital Funds B.V.; BBF Trust; Banca Arner S.A.; Alvaro Castillo; BG Valores, S.A.; Jaques Lamac; Nitkey Holdings Corporation; and Lucien Geldzahler |
| PSLRA | Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 |
| PwC Bermuda | PricewaterhouseCoopers Bermuda |
| Reply Br. | Joint Reply Memorandum of Law in Support of All Defendants' Motion to Dismiss the Corrected Second Amended Consolidated Class Action Complaint dated July 26, 2016 (No. 09 Civ. 5386 (DAB), ECF No. 226) |
| SAC | Corrected Second Amended Consolidated Class Action Complaint dated October 6, 2015 (A-831 to A-939) |

| Defined Term | Definition |
| --- | --- |
| SAs (a/k/a Subscription Agreements) | 2000, 2003, 2004, 2006, 2007, and 2008 Subscription Agreements for Kingate Global and Kingate Euro (each attached to the associated Information Memoranda) (A-1575 to A-1578; A-1306 to A-1308; A-1628 to A-1645; A-1244 to A-1253; A-1728 to A-1748; A-1805 to A-1823; A-1194 to A-1212; A-1882 to A-1901; A-1114 to A-1133; A-1047 to A-1056; A-992 to A-1011) |
| SEC | Securities & Exchange Commission |
| Service Agreements | Management Agreements, Co-Management Agreement, Administration Agreements, Auditor Agreements, Consulting Services Agreements, and Distribution Agreements |
| Settlement Orders | Orders issued on December 7, 2016 and December 19, 2016 by the BVI and Bermuda Courts, respectively, approving the settlement reached between the Funds' Joint Liquidators and the Bermuda Defendants in the Bermuda Proceeding, attached as exhibits 1 and 2 to Mackellar (ECF No. 106) |
| SIPA | Securities Investor Protection Act |
| SLUSA | Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b), 78bb(f) |

| Defined Term | Definition |
|---|---|
| Subscription Agreements (a/k/a SAs) | 2000, 2003, 2004, 2006, 2007, and 2008 Subscription Agreements for Kingate Global and Kingate Euro (each attached to the associated Information Memoranda) (A-1575 to A-1578; A-1306 to A-1308; A-1628 to A-1645; A-1244 to A-1253; A-1728 to A-1748; A-1805 to A-1823; A-1194 to A-1212; A-1882 to A-1901; A-1114 to A-1133; A-1047 to A-1056; A-992 to A-1011) |
| Tannenbaum | Michael G. Tannenbaum |
| Tracey | Declaration of Dennis H. Tracey, III in Support of the Joint Motion of All Defendants to Dismiss the Corrected Second Amended Consolidated Class Action Complaint dated December 21, 2015 (A-1462 to A-1467) |
| Tremont | Tremont (Bermuda) Limited |
| Tremont Advisers | Tremont Advisers, Inc. |
| Tremont Defendants | Tremont (Bermuda) Limited, Tremont Group Holdings, Inc. and Sandra Manzke |
| Tremont Group | Tremont Group Holdings, Inc. |

Defendants-Appellees ("Defendants") Kingate Management Limited ("KML"),[1] Tremont (Bermuda) Limited ("Tremont"), Tremont Group Holdings, Inc. ("Tremont Group"), Citi Hedge Fund Services, Ltd. ("Citi Hedge"), PricewaterhouseCoopers Bermuda ("PwC Bermuda"), FIM Limited, FIM Advisers LLP ("FIM Advisers," together with FIM Limited, "FIM"), FIM (USA), Inc. ("FIM USA," together with FIM, the "FIM Entities"), Michael G. Tannenbaum ("Tannenbaum," together with KML, the "KML Defendants"), Sandra Manzke ("Manzke," together with Tremont and Tremont Group, the "Tremont Defendants"), Carlo Grosso ("Grosso") and Federico M. Ceretti ("Ceretti," together with Grosso and the FIM Entities, the "FIM Defendants," and together with Tannenbaum, Manzke and Grosso, the "Individual Defendants") (the KML Defendants, the Tremont Defendants and the FIM Defendants, collectively referred to as the "Kingate Defendants"), respectfully submit this brief in opposition to the appeal ("App. Br.") filed by Plaintiffs-Appellants ("Plaintiffs") from the decision and order of the United States District Court for the Southern District of New York (Batts, J.) dated September 21, 2016 (the "Decision"), which dismissed the Corrected Second Amended Consolidated Class Action Complaint dated October 6, 2015, A-831-939 (the "SAC"), in its entirety.

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Table of Defined Terms.

1

**COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.      Did the district court correctly dismiss all of Plaintiffs' common law claims because they seek to recover losses that are reflective of the Kingate Funds' losses and thus Plaintiffs lack standing to assert them under applicable British Virgin Islands ("BVI") and Bermuda law or, alternatively, do Plaintiffs lack standing under BVI/Bermuda law because the claims belong to the Funds?

2.      Did the district court correctly dismiss Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, negligence, third party breach of contract, constructive trust, mutual mistake and unjust enrichment because Plaintiffs failed to state any viable claim against any Defendant under applicable BVI/Bermuda law?

3.      Should the district court also have dismissed Plaintiffs' negligent misrepresentation claims against PwC Bermuda and Citi Hedge because Plaintiffs failed to state viable claims under applicable BVI/Bermuda law?

4.      Did the district court correctly determine that the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b), 78bb(f)(1) ("SLUSA") precludes Plaintiffs' negligent misrepresentation claims ("Group 2" claims as per In re Kingate Mgmt. Ltd. Litig., 784 F.3d 128 (2d Cir. 2015) ("Kingate")) against Citi Hedge and PwC Bermuda, notwithstanding Plaintiffs' waived argument that

2

SLUSA is inapplicable to their claims because they are governed by BVI/Bermuda law?

5.      Should the district court also have dismissed Plaintiffs' other claims as precluded by SLUSA because they are predicated on allegations that fall within Groups 1, 2 or 3 as set forth by this Court in <u>Kingate</u>?

6.      Should the district court's dismissal of the SAC be affirmed on the alternative grounds raised below, that (i) international comity warrants dismissal of the action in deference to the Funds' and KML's liquidation proceedings and the Bermuda Proceedings, (ii) the applicable contractual limitations period bars Plaintiffs' claims against the Kingate Defendants, and/or (iii) the court lacks personal jurisdiction over Citi Hedge?

7.      Having allowed Plaintiffs two prior opportunities to re-plead, did the district court properly deny Plaintiffs' request for leave to re-plead their complaint a third time?

## COUNTER-STATEMENT OF THE CASE

On December 11, 2008, Defendants learned, along with the rest of the world, that Bernard L. Madoff ("Madoff") had been operating a well-disguised Ponzi scheme concealed from regulators, various financial institutions, his own family and friends and countless sophisticated investors for decades. <u>Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.</u>, 747 F. Supp. 2d 406, 409

3

(S.D.N.Y. 2010); SEC v. Cohmad Secs. Corp., No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010); see also SAC ¶¶ 2, 47-48 (A-843, 856-57).[2] Madoff's fraud was sufficiently well-hidden that the SEC failed to uncover it, despite repeated investigations and multiple warnings. A-1468-70.[3]

Plaintiffs are sophisticated foreign investors who invested in two BVI funds, Kingate Global Fund, Ltd. ("Kingate Global") and Kingate Euro Fund, Ltd. ("Kingate Euro," together with Kingate Global, the "Funds" or "Kingate Funds"), which were among the numerous "feeder funds" that invested their assets with Madoff via his firm Bernard L. Madoff Investment Securities LLC ("BLMIS"). When the news broke about Madoff's fraud in December 2008, the Funds lost substantially all of their value and Plaintiffs' investments in the Funds became worthless. SAC ¶¶ 1, 2 (A-843). Both Funds are in liquidation in the BVI and are

---

[2] All citations to "A-__" are to the Joint Appendix (ECF No. 62-70), "SPA-__" are to the Special Appendix (ECF No. 71) and "CA-__" are to the Confidential Appendix (provided to the Court on January 19, 2017). Citations to filings from the docket in In re Kingate Mgmt. Ltd. Litig., No. 09 Civ. 5386 (DAB) (S.D.N.Y.) that are not included in these appendices shall appear hereinafter as "No. 09 Civ. 5386 (DAB), ECF No. __."

[3] The district court was and this Court is entitled to consider documents integral to and referenced in the SAC, including the Funds' information memoranda ("Information Memoranda" or "IMs") and other documents Plaintiffs otherwise relied on in framing the SAC, public documents filed with the SEC and facts that may be judicially noticed. In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), aff'd sub nom., Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005).

being operated by the Funds' joint liquidators ("Funds' Joint Liquidators")

appointed by the High Court of Justice of the BVI. See SAC ¶ 42 (A-855); Tracey

¶ 5 (A-1463); A-1471-1508.

### A. The Subscription Agreements and the Information Memoranda

Plaintiffs invested in the Funds by executing subscription agreements

("Subscription Agreements" or "SAs"), which incorporated by reference

information memoranda ("Information Memoranda" or "IMs") that provided

detailed information about the Funds.[4] The SAs required each investor to

acknowledge that they "received, reviewed, and understood" the IMs and that their

investments were "on the terms of the [IMs]."[5] Each investor further

acknowledged that it "read carefully and understands the Information

Memorandum and has consulted its own attorney, accountant or investment

advisor . . . and [] consents to every provision therein."[6] The SAs are governed by

BVI law and contain BVI forum provisions.[7]

By executing the SAs, every investor in the Funds represented and

warranted that it:

---

[4] The SAs used for each Fund are attached to the IMs.

[5] A-1306; A-1244; A-1194; A-1114; A-992; A-1575; A-1628; A-1700; A-1805; A-1882; A-1047.

[6] E.g., A-1198; A-997; A-1809; A-1049.

[7] A-1247; A-1200; A-1121; A-999; A-1634; A-1706; A-1811; A-1889; A-1050.

5

- was a professional investor with "the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund";

- was "aware of the risks inherent in investing in the assets proposed to be acquired by the Fund and the method by which the assets of the Fund are to be held and/or traded";

- could "bear the risk of loss of [their] entire investment"; and

- had the opportunity "to obtain any additional information necessary to verify the information contained in the [IM]," including the provisions of the various service agreements incorporated by reference into the IMs.[8]

The IMs plainly identified the role played by each of the Funds' service providers—KML ("Manager"), Tremont ("Co-Manager"), PwC Bermuda ("Auditor") and Citi Hedge ("Administrator")—and the material terms of their contracts with the Funds, or in the case of FIM ("Consultant" to KML), with KML. The IMs disclosed that the Manager, Co-Manager, Auditor and Administrator were engaged pursuant to written agreements with the Funds that defined the scope of services those entities would provide and that the Funds would pay for those services.[9] Similarly, the IMs disclosed that the Consultant had been engaged by KML to provide services to KML at no additional cost to the Funds, and that FIM

---

[8] See, e.g., A-1246; A-1197-98; A-1118-19; A-996-97; A-1631-32; A-1703-04; A-1809; A-1887; A-1049.

[9] See A-1286-92; A-1234-37; A-1169-70; A-1089-90, 1092; A-967-68, 970, 972; A-1559-63; A-1608-13; A-1665, 1680-85; A-1781-86; A-1858-63; A-1035-37.

6

would be paid for those services by KML.[10]  Neither FIM (USA) nor Tremont

Group is mentioned anywhere in the IMs.  The IMs mention Tremont Advisers,

Inc. ("Tremont Advisers"), but only to note that Manzke was an officer of that

entity before it became known as Tremont Group.[11]  The Individual Defendants are

identified in the IMs solely to disclose their roles as officers or directors of their

respective entities.[12]

### B. The Funds' and KML's Service Providers and Service Agreements

The agreements with the service providers (the "Service Agreements"),

which were incorporated by reference into the IMs and made available to all Fund

investors, set forth the duties that the various service providers owed to the Funds

(and in the case of FIM, to KML).  Plaintiffs do not allege that they are parties to

any agreement with any Defendant.

### 1. The Manager:  KML

KML, a Bermuda corporation with its principal place of business located in

Bermuda, SAC ¶ 24 (A-847-48), served as Co-Manager (with Tremont), and then

sole Manager, of Kingate Global from its inception through January 1, 2006,

---

[10] See A-1266, 1288-89, 1291; A-1224, 1235-36; A-1151, 1171-72, 1174; A-1091-92, 1094; A-948, 969-70, 972; A-1541, 1560-62; A-1590, 1610, 1613; A-1661, 1682-83, 1685; A-1761, 1782-83, 1785; A-1839, 1860-62; A-1025, 1036-37.

[11] A-1285.

[12] Tannenbaum is also identified at times as counsel to the Funds and KML.

pursuant to written management agreements with that Fund dated March 1, 1995, May 1, 2000, and January 1, 2006. A-1312-25. KML also served as the Manager of Kingate Euro from its inception under a written management agreement with that Fund dated May 1, 2000. SAC ¶ 24(a) (A-847-48); A-1911-23. KML's management services fees were paid by the Funds.[13] These written agreements between KML and the Funds (the "Management Agreements") are governed by Bermuda law and contain Bermuda forum provisions.[14]

All of the claims against KML are premised on Plaintiffs' assertions that KML failed to adequately monitor Madoff and turned a blind eye to information that, Plaintiffs claim, made it obvious that Madoff was a fraud. See, e.g., SAC ¶¶ 64-66, 126 (A-860-61, 881-82). The SAC alleges that KML "relied entirely on information provided solely by Madoff," SAC ¶ 73 (A-864), but should have taken steps to conduct due diligence and verify the accuracy of that information. Plaintiffs further claim that KML should have monitored Citi Hedge's verification of the trading information provided by Madoff. See SAC ¶¶ 72-73 (A-864); see also SAC ¶¶ 3, 64, 66, 73, 173, 199-215 (A-843, 860-61, 864, 898, 907-11). However, the IMs disclosed that the Manager and Co-Manager (and, ergo, their

---

[13] See SAC ¶¶ 24(b), 156(b), 158(b), 239 (A-848, 891-92, 920); A-1290-91; A-1236; A-1174; A-1093-94; A-971-72; A-1562; A-1612; A-1684-85; A-1785; A-1862; A-1037; A-1316-17 at § 5.2(a); A-1918 at § 4.1(a).

[14] E.g., A-1321 at § 5.12.

8

respective delegates) were entitled to rely on the information provided by Madoff to the Funds, and had no obligation to conduct "any due diligence to confirm the accuracy" of that information.[15] The plain language of the IMs contradicts Plaintiffs' meritless allegation that KML could not rely in good faith on information provided by Madoff. KML simply had no obligation to verify the accuracy of the information. The SAC does not allege that KML had actual knowledge of Madoff's fraud; it merely alleges that KML could have detected, but ignored the fraud by failing to heed "red flags" that purportedly made Madoff's Ponzi scheme obvious. SAC ¶¶ 198-215 (A-906-11).

### 2.	The Co-Manager:  Tremont

Tremont, a Bermuda corporation with its principal place of business located in Bermuda, SAC ¶ 25 (A-848-49), served as Co-Manager (with KML) of Kingate Global from March 1, 1995 to December 31, 2005, pursuant to a written agreement with that Fund (the "Co-Management Agreement"). SAC ¶ 25(b) (A-848); A-1924-37.[16] Under the Co-Management Agreement, all fees received by Tremont were paid by Kingate Global. SAC ¶¶ 25(c), 246, 249, 323 (A-848, 921-22,

---

[15] See SAC ¶ 77 (A-865-66); A-1283; A-1232; A-1166; A-1086; A-964; A-1556; A-1605; A-1677; A-1777; A-1854; A-1033; see also A-1551-52; A-1601; A-1673; A-1773; A-1851; A-1031.

[16] Plaintiffs allege that Tremont also was a co-manager for Kingate Euro, but the IMs for Kingate Euro demonstrate that KML was the sole Manager of that Fund. See A-1537-38, 1543; A-1559-60; A-1586, 1592, 1608-09; A-1657, 1664, 1680-81; A-1757, 1764, 1781-82; A-1835, 1842, 1858-59; A-1023, 1027, 1035-36.

935).[17]  The Co-Management Agreement is governed by Bermuda law, and contains a Bermuda forum provision.[18]

The SAC, through use of the defined term "Kingate Defendants," makes the same allegations against Tremont, in its capacity as Co-Manager, as those against KML regarding the purported failure to recognize the supposed obvious signs of Madoff's fraud and the inability to rely in good faith on information obtained from Madoff without first attempting to verify the accuracy of that information.  See SAC ¶¶ 3, 25, 64-66, 78 (A-843, 847-48, 860-61, 866).  The SAC, however, contains no non-conclusory allegations that Tremont (or the other Tremont Defendants) had actual knowledge of any wrongdoing by Madoff or his investment firm.  And, like KML, Tremont's duties were limited by express disclaimers explaining that Tremont assumed no responsibility to conduct due diligence on Madoff or verify the accuracy of the information provided by BLMIS.

While the SAC names as a defendant Tremont's parent company, Tremont Group (formerly known as Tremont Advisers), neither Tremont Group nor Tremont Advisers is party to any agreement with either Fund, neither is alleged to be the Co-Manager of either Fund, and neither is alleged to have received any fees

---

[17] A-1930 at § 5.2(a); SAC ¶¶ 156(b), 239 (A-848, 891, 920); A-1334 at § 3; A-1346 at § 3.

[18] See A-1935 at § 5.12.

10

pursuant to the Co-Management Agreement.  The SAC merely alleges that Tremont Group had "deep," "extensive ties" and a "special relationship" with Madoff because it managed other hedge funds unaffiliated with the Kingate Funds that invested with Madoff.  See SAC ¶¶ 79-84 (A-866-68).  It also accuses Tremont Group of providing "substantial assistance" to Tremont in breaching fiduciary duties purportedly owed to Plaintiffs by helping to conceal or failing to alert investors to purported deficiencies in Tremont's due diligence and risk controls.  SAC ¶¶ 85, 253 (A-868, 923).  Plaintiffs do not allege, however, that they had any relationship with Tremont Group, or any facts to show that Tremont Group assumed any responsibility to the Funds (or their shareholders).  Tremont Group is not mentioned anywhere in the IMs, and Tremont Advisers is mentioned solely to note Manzke's position as an officer of that entity at the time.

### 3.    The Consultant:  FIM

FIM Limited and FIM Advisers, both U.K. companies with their principal places of business in the U.K., SAC ¶¶ 27-28 (A-849-850), were engaged as Consultant to KML (not to the Funds—i.e., they were an additional step removed from Plaintiffs), in order to "render[] consulting advice to [KML] with respect to certain aspects of the Fund[s'] operational, administrative, marketing, accounting

11

and legal matters."[19]  FIM Limited served as Consultant to KML from December 1, 1995 through July 31, 2005, after which FIM Advisers served in that role.  SAC ¶¶ 27, 28 (A-849-50).[20]  Effective May 1, 2000, FIM Limited was Consultant to KML with respect to both Funds pursuant to a separate consulting services agreement for each Fund, both dated April 23, 2001 and amended on June 7, 2001 (the "Consulting Services Agreements" or "CSAs").[21]  Pursuant to written deeds of novation effective August 1, 2005 (the "Deeds of Novation"), FIM Advisers became party to the CSAs and replaced FIM Limited as Consultant with respect to both Funds, "releas[ing] and discharg[ing]" FIM Limited of any further obligations and all liability under the CSAs.  A-1975-76 at §§ 2.1, 3; A-1981-82 at §§ 2.1, 3.[22]  The CSAs are governed by Bermuda law, and contain Bermuda forum provisions.  A-1967 at § 25; A-1951 at § 25.

Under the IMs and the CSAs, FIM's duties to KML were limited, and KML "paid" FIM's flat monthly consulting fee at "no additional cost" to the Funds.[23]

---

[19] A-1288; A-1235; A-1171-72; A-1091-92; A-969-70; A-1560-61; A-1610; A-1682-83; A-1782-83; A-1860-61; A-1036.

[20] A-1288; A-1235; A-1171-72; A-1091-92; A-969-70; A-1560-61; A-1610; A-1682-83; A-1782-83; A-1860-61; A-1036.

[21] A-1941 at § 2.1; A-1957 at § 2.1; A-1969; A-1971; see also A-1235; A-1610.

[22] See also SAC ¶ 28(b) (A-850); A-1171-72; A-1091-92; A-969-70; A-1782-83; A-1860; A-1036.

[23] SAC ¶¶ 27, 244 (A-849, 921); A-1334; A-1288-89, 1291; A-1235-36; A-1171-72, 1174; A-1091-92, 1094; A-969-70, 972; A-1560-62; A-1610, 1613; A-1682-

12

FIM was not engaged as a manager of either Fund, and no Fund assets were "entrusted to" FIM.  The CSAs state this expressly:  "FIM will not hold cash on behalf of the [Fund]."  See A-1944-45 at §§ 4, 6, 7; A-1960-61 at §§ 4, 6, 7.  While Plaintiffs allege that FIM's responsibilities "included screening and nominating investment advisors for selection by KML and Tremont, . . . ma[king] recommendations regarding the proposed allocation of assets among investment managers, . . . [and] 'continuously monitor[ing]' the asset allocation and the investment advisor's performance," SAC ¶¶ 241, 243 (A-920), neither the IMs nor the CSAs create any such obligation, nor do they impose any obligation on FIM to monitor or perform any due diligence on BLMIS.  To the contrary, the CSAs entitled FIM to rely on the information and documents provided to it without any obligation to verify the accuracy of that information.  See A-1942-43 at § 2.4.; A-1958-59 at § 2.4.

Although Plaintiffs lump FIM (USA), a Delaware corporation with its principal place of business in New York, into their definition of "FIM Entities," the SAC merely alleges FIM (USA) is an affiliate of FIM Advisers.  SAC ¶ 29 (A-850).  FIM (USA), which was not even formed until January 2005, was not a

_____

83, 1685; A-1782-83, 1785; A-1860-62; A-1036-37; see also A-1941-44 at §§ 2.2, 3; A-1957-60 at §§ 2.2, 3; A-1968-69 ("In view of the reduced activities and functions performed by FIM Limited under the [CSAs], we propose to reduce the [consultancy] fee to US$10,000 per month effective from May 1, 2001."); A-1970-71.

13

Consultant or a party to the CSAs or any other agreement with the Funds or KML.[24]  See infra n.80.  Nor is FIM (USA) alleged to have received any fees under the CSAs.  The IMs do not even mention FIM (USA).

### 4.    The Auditor:  PwC Bermuda

PwC Bermuda, a Bermuda corporation with its principal place of business in Bermuda, SAC ¶ 37 (A-851-52), and its predecessor (Coopers & Lybrand-Bermuda) served as the Auditor of both Funds from their inception.  SAC ¶¶ 37, 86 (A-851-52, 868-69).  PwC Bermuda was engaged as Auditor for each Fund pursuant to written audit engagement letters (the "Auditor Agreements") in years 1995 through 2000.  Pursuant to the Auditor Agreements, PwC Bermuda issued audit opinions to the Funds and was paid by the Funds for its services.[25]  Each IM identified PwC Bermuda as Auditor for the Funds.[26]  The Auditor Agreements were all performed in Bermuda and contain Bermuda choice of law provisions.[27]

---

[24] See A-1262, 1270, 1288-89; A-1223, 1226, 1235; A-1147-48, 1154, 1171-72; A-1066-67, 1073, 1091-92; A-944-45, 951, 969-70; A-1538, 1543, 1560-61; A-1587, 1592, 1610; A-1658, 1664, 1682-83; A-1757-58, 1764, 1782-83; A-1835-36, 1842, 1860-61; A-1023-24, 1027, 1036.

[25] SAC ¶ 86 (A-868-69); A-1984-2084; see also Joint Memorandum of Law in Support of All Defendants' Motion to Dismiss the Corrected Second Amended Consolidated Class Action Complaint dated December 21, 2015, No. 09 Civ. 5386 (DAB), ECF No. 197 ("Mov. Br."), at 13 n.21.

[26] See A-1271; A-1226; A-1154; A-1073; A-951; A-1544; A-1593; A-1665; A-1765; A-1843; A-1027.

[27] A-1984-2084; Mov. Br. at 14 n.23.

14

The SAC alleges that PwC Bermuda failed to perform its audits in accordance with Generally Accepted Auditing Standards (GAAS), SAC ¶¶ 100-154 (A-873-904), and that, as a result, "[t]he Funds' Financial Statements [w]ere [f]alse." SAC ¶¶ 155-68 (A-890-96). But the Auditor Agreements make clear that PwC Bermuda was not the auditor of BLMIS, and the SAC does not allege otherwise. Plaintiffs allege that they relied on PwC Bermuda's audit work, SAC ¶¶ 87, 257, 263, 272, 278, 283 (A-869, 924-28), but the Auditor Agreements state that PwC Bermuda was engaged to perform audit services for the Funds—not for Plaintiffs—and the SAC does not allege that PwC Bermuda had direct contact with any Plaintiff.

### 5. The Administrator: Citi Hedge

Citi Hedge, a Bermuda corporation with its principal place of business in Bermuda, and its predecessors (BISYS Hedge Fund Services Limited and Hemisphere Management Limited) served as Administrator of the Funds. SAC ¶¶ 38(a), 178 (A-852, 900). Citi Hedge was engaged as Administrator for each Fund pursuant to written agreements effective June 1, 2007 (the "Administration Agreements") and was paid fees by the Funds pursuant to those agreements.[28] The Administration Agreements, which are governed by BVI law, make clear that Citi

---

[28] SAC ¶¶ 38(a), 156(c), 158(c), 183, 323 (A-852, 891-92, 901, 935); A-1396-97 at ¶ 7; A-2092-93 at ¶ 7.

Hedge's responsibilities were ministerial, including maintaining the Funds' shareholder registries, processing investors' subscriptions and redemptions, and calculating and disseminating each Fund's net asset value ("NAV").[29] Citi Hedge had "no discretionary authority or control with respect to the management or disposition of financial instruments" of the Funds.[30]

The IMs explained that the Funds' "Investment Advisor" (i.e., Madoff) invested in "large-capitalization S&P 100 stocks."[31] The IMs disclosed that for purposes of NAV calculation, "[s]ecurities are valued at the last sale price reported on the principal securities exchange or market on which the securities are traded," "as of the close of business on the last Business Day of each calendar month."[32] Under the IMs and Administration Agreements, Citi Hedge was entitled to rely on, and assumed no liability for the accuracy of, the information provided to it for purposes of calculating the NAV.[33]

### 6.    The Individual Defendants

The Individual Defendants, who reside in Florida (Manzke), New York (Tannenbaum) and the U.K. (Grosso and Ceretti), were directors and officers of the

---

[29] A-1392-95 at ¶ 4; A-2088-91 at ¶ 4; A-970; A-1036.

[30] A-1398 at ¶ 10.7; A-2094 at ¶ 10.7.

[31] E.g., A-957; A-1029.

[32] E.g., A-978; A-1040.

[33] A-1398 at ¶ 10.6; A-2094 at ¶ 10.6; see also A-965; A-1034.

16

various service providers to the Funds (or, as to Grosso and Ceretti, of the Consultant to KML). Manzke was a Kingate Global director from 1995 through 2003. She was also Chairman and co-CEO of Tremont Group when Tremont co-managed Kingate Global with KML from approximately 1994 through December 31, 2005. SAC ¶¶ 25(b), 33 (A-848, 850-51). Tannenbaum was a director of KML. SAC ¶ 34 (A-851). Grosso founded the FIM Entities and was a director and officer of FIM. Ceretti co-founded FIM Advisers with Grosso and was an officer of FIM Advisers. SAC ¶¶ 30-31 (A-850).

The SAC alleges that the Individual Defendants "exercise[d] control over," "directed," "controlled," "oversaw" or "had knowledge of and participated in activities" of the respective entities for which they served as officers or directors. SAC ¶¶ 30, 31, 33-35 (A-850-51). Importantly, none of the Individual Defendants is alleged to be a party to any of the agreements with the Funds; none is alleged to have received any fees pursuant to the Service Agreements between the Funds (or KML) and the respective entities for which they served as officers or directors; and none is alleged to have had any contact with Plaintiffs.

### C. The Risk Disclosures and Exculpatory Provisions in the Information Memoranda

The IMs contain pointed disclosures regarding the risks associated with investments with the Funds, and specifically with respect to the Funds' investments with Madoff. For example, the IMs informed all prospective investors

17

that substantially all of the Funds' assets had been and would continue to be invested with a single Investment Advisor.[34]  The IMs disclosed, among other things, that the Manager and Co-Manager had delegated all investment management duties to the Investment Advisor and that the Investment Advisor would be managing all of the assets of the Funds and had physical custody of the Funds' assets.[35]  The IMs further explained that investors should not invest in the Funds unless they were willing to entrust all of the Funds' assets to the selected Investment Advisor, and had evaluated <u>for themselves</u> whether the Investment Advisor was capable of performing these functions.[36]

The IMs warned of the risk that the Investment Advisor could misappropriate the Funds' assets, and could provide information to the Funds that was "inaccurate or even fraudulent":

> **Possibility of Fraud or Misappropriation**.  Neither the Fund nor the Custodian has actual custody of the assets. Such actual custody rests with the Investment Advisor

---

[34] A-1278-79, 1283; A-1230, 1232; A-1161-62, 1166; A-1081-82, 1086; A-959-60, 964; A-1551-52, 1556; A-1600-01, 1605; A-1672-73, 1677; A-1772-73, 1777; A-1850-51, 1854; A-1031, 1033.

[35] A-1278, 1283; A-1230, 1232; A-1162, 1166; A-1082, 1086; A-960, 964; A-1551-52, 1556; A-1600-01, 1605; A-1673, 1677; A-1772-73, 1777; A-1850, 1854; A-1031, 1033.

[36] A-1278; A-1230; A-1162; A-1082; A-960; A-1551-52; A-1601; A-1673; A-1773; A-1850; A-1031.

18

> [i.e., Madoff[37]] and its affiliated broker-dealer.  Therefore,
> there is the risk that the custodian could abscond with
> those assets.  There is always the risk that the assets with
> the Investment Advisor could be misappropriated.[38]

The IMs further disclosed that Defendants were entitled to rely on the information provided by the Investment Advisor and had no obligation to undertake due diligence to confirm the accuracy of the information provided by the Investment Advisor.[39]

The Service Agreements, which were all incorporated by reference into the IMs and Subscription Agreements, also contain provisions exculpating many of the defendants from liability.  For example, the Management Agreements and Co-Management Agreement included the following provision exculpating the Manager and Co-Manager:

> *Scope of Liabilities.*  Neither the Manager nor its
> directors, officers, shareholders and employees, shall be

---

[37] Although Plaintiffs allege that Madoff was not identified in the IMs by name, SAC ¶ 53 (A-857-58), the fact that Madoff was the Investment Advisor was no secret.  The IMs invited all potential investors to review the Management Agreements and Co-Management Agreement, which identified BLMIS as the Investment Advisor and repeated that the Investment Advisor had custody of the Funds' assets.  A-1301; A-1242; A-1190; A-1110; A-987; A-1623; A-1696; A-1801; A-1878; A-1045; A-1314 at § 2.2, 1321 at § 5.9(d)(i); A-1914-15 at §§ 2.3, 2.6; A-1927 at § 2.2, 1935 at §5.9(d)(i); see also, e.g., A-1854-55.

[38] A-1283; A-1232; A-1166; A-1086; A-964; A-1556; A-1605; A-1677; A-1777; A-1854; A-1033.

[39] A-1283; A-1232; A-1086; A-964; A-1551-52, 1556; A-1601, 1605; A-1673, 1677; A-1773; A-1851, 1854-55; A-1031, 1033.

19

> liable to the Fund or its Shareholders for any losses, damages, expenses or claims occasioned by any act or omission of the Manager or directors, officers, shareholders or employees in connection with the performance of its services hereunder, other than as a result of its own gross negligence, bad faith, or willful or reckless malfeasance, [in] disregard of any of its obligations under this Agreement.

A-1317 at § 5.4; A-1931 at § 5.4 (same as to Co-Manager Tremont); see also A-1919 at § 4.3.  The IMs disclosed this limitation on liability.[40]

The Consulting Services Agreements contained a similar provision exculpating FIM:

> 13.1 In the absence of gross negligence, fraud or wilful default on the part of FIM, or failure to comply with instructions of the Co-Manager pursuant to clause 4.2 . . . FIM shall not be liable to [KML] or the [Fund] for any act or omission in the course of, or in connection with, the services rendered by it hereunder or for any decline in the value of the assets of the [Fund] or any loss whatsoever that may result to the [Fund] or [KML].

A-1947 at § 13.1; A-1963 at § 13.1.

And the Administration Agreements, also made available to all Fund investors, contained a similar provision exculpating Citi Hedge:

> 10.3 The Administrator shall not, in the absence of gross negligence, willful default or fraud on its part be liable to the Company [i.e., the Fund] or to any Shareholder for an act or omission, in the course of, or in connection with, the services rendered by it under this Agreement or for

---

[40] See, e.g., A-1282; A-963, 970; A-1776, 1782.

20

> any loss or damage which the Company may sustain or
> suffer as the result of, or in the course of, the discharge
> by the Administrator of its duties under or pursuant to
> this Agreement.

A-1398 at ¶ 10.3; A-2094 at ¶ 10.3.  By executing the SAs, every investor in the Funds consented to these terms.

The IMs also shortened an investor's time to commence any action against the Funds, KML or FIM to "six (6) months from the date of the first to occur of (i) the original occurrence allegedly giving rise to such claim, action or proceeding or (ii) the Shareholder's redemption of any Shares."[41]  In the SAs, each investor "represent[ed] and warrant[ed]" that it had reviewed the IMs and "acknowledge[d] and agree[d] to the shortening of the statute of limitations (i.e., the period within which to bring a claim) as discussed in the [IM]."[42]  In the SAs, each investor also agreed to a six-month limitations period for any claim against the Funds' "Board of Directors or other officers."[43]

---

[41] A-1293; A-1237; A-974; A-1096; A-1176; A-1614; A-1687; A-1787; A-1864; A-1038; see also A-1555; A-1033 (similarly providing that, "[b]y subscribing for the Shares, the Shareholder is agreeing to shortening the period during which a claim may be made against the Fund, the Manager or the Consultant with regard to any matter relating to such Shareholder's investment in the Fund").

[42] See, e.g., A-1307; A-1577; see also, e.g., A-1246; A-1198; A-1632; A-1809 ("The Subscriber has read carefully and understands the Information Memorandum and . . . consents to every provision therein.").

[43] A-1247; A-1200; A-1121; A-999; A-1634; A-1706; A-1811; A-1889; A-1050.

21

**D.     Relevant Procedural History**

Plaintiffs filed their initial complaint ("Initial Complaint") in June 2009 on behalf of a putative class of Fund investors against various service providers to the Funds and KML and certain officers and directors of those entities, seeking to impose responsibility for the Funds' losses on virtually everyone that had any connection, direct or indirect, to the Funds.  A-58-114.  Importantly, for purposes of statute of limitations, the Initial Complaint did not name FIM Limited, FIM (USA), PwC Bermuda, Grosso or Ceretti as defendants.   Those Defendants were not named until June 12, 2009 with the filing of the complaint in Silvana Worldwide Corp. v. Kingate Management Ltd., No. 09 Civ. 5470 (S.D.N.Y.), ECF No. 1.  A-115-267.  On January 22, 2010, the district court ordered that these cases be consolidated under the current caption.  No. 09 Civ. 5386 (DAB), ECF No. 48.  Plaintiffs filed an amended complaint (the "Amended Complaint") in May 2010, No. 09 Civ. 5386 (DAB), ECF No. 53, asserting claims against all of the current Defendants plus several others.  A-268-423.

On July 19, 2010, Defendants each moved to dismiss the Amended Complaint.  No. 09 Civ. 5386 (DAB), ECF Nos. 57-61, 66-71, 73-74, 79-83, 85-92, 94-102, 105, 108-113, 119, 134-41, 152-73.  Plaintiffs and Defendants filed foreign law expert declarations with their briefs to the district court.  No. 09 Civ. 5386 (DAB), ECF Nos. 59, 80, 88-89, 95, 119, 134-35, 161, 165-66, 168, 171.

22

Shortly thereafter, Plaintiffs voluntarily dismissed all of their federal securities laws claims, and retained only the common law claims.  No. 09 Civ. 5386 (DAB), ECF No. 128.  On March 30, 2011, the district court granted Defendants' motion to dismiss the Amended Complaint, holding that all of Plaintiffs' remaining claims were precluded by SLUSA and preempted under the Martin Act, N.Y. Gen. Bus. Law §§ 352-c & 353 (McKinney 1996) (the "Martin Act"), but did not address Defendants' other grounds for dismissal.  No. 09 Civ. 5386 (DAB), ECF No. 173.

Plaintiffs appealed.[44]  On appeal, this Court established a framework for analyzing SLUSA preclusion and remanded to the district court with instructions to "determine, on full briefing, which allegations of the Complaint fall into which of the [SLUSA] categories," Kingate, 784 F.3d at 152, noting that Defendants' "alternate grounds for dismissal" remained open on remand.  Id. at 154 n.26.

On remand, the district court granted Plaintiffs another opportunity to amend their complaint to plead additional details against each Defendant and to conform to this Court's guidance.  No. 09 Civ. 5386 (DAB), ECF No. 183.  At the same time, the district court set a briefing schedule for Defendants' anticipated motion to

---

[44] Before Plaintiffs perfected their first appeal, the New York Court of Appeals decided Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Mgmt. Inc., 18 N.Y.3d 341, 939 N.Y.S.2d 274 (2011), which clarified the scope of preclusion under the Martin Act.  Based on that decision, Defendants agreed that the Martin Act no longer provided a basis upon which to dismiss the Amended Complaint, so Plaintiffs only pursued the SLUSA portion of their appeal.

dismiss the new complaint, including the submission by all parties of updated declarations setting forth the foreign law applicable to the claims.  Id.

Plaintiffs filed the SAC on October 6, 2015, acknowledging, *inter alia*, that Counts 1-4, 8, 14, 20 and 27[45] were precluded by SLUSA in light of Kingate.  See SAC at pp. 72, 77, 81, 87, 93 (A-914, 919, 923, 929, 935).  The twenty remaining counts in the SAC—for breach of fiduciary duty (Counts 7 and 21), aiding and abetting breach of fiduciary duty (Counts 13, 19 and 26), gross negligence (Counts 5, 15 and 22), negligence (Counts 6, 16 and 23), negligent misrepresentation (Counts 17 and 24), third party beneficiary breach of contract (Counts 9, 10, 18 and 25), constructive trust (Count 11), mutual mistake (Count 12) and unjust enrichment (Count 28)—seek damages for the diminished value of Plaintiffs' shares in the Funds and to recover management, administration and auditing fees that Plaintiffs allege were improperly paid by the Funds (or, in the case of FIM, consulting fees paid by KML).  No Plaintiff alleges any contractual or other direct relationship with any Defendant.  Nonetheless, the SAC alleges that Defendants

---

[45] These were claims against the Kingate Defendants for fraud (Counts 1 and 2), negligent misrepresentation (Counts 3 and 4) and constructive fraud (Count 8), and against Tremont Group, PwC Bermuda and Citi Hedge for aiding and abetting fraud (Counts 14, 20 and 27, respectively).

are liable to Plaintiffs because they did not uncover Madoff's fraud on the Funds and did not alert Plaintiffs to Madoff's fraud before Madoff confessed to it.[46]

Ignoring the district court's instruction to plead specific allegations as to each Defendant, the SAC continues to use a defined term, the "Kingate Defendants," to lump together six entities and four individuals without specifying the alleged wrongdoing of any particular defendant included in that group. See, e.g., SAC ¶¶ 3-4, 54, 64-66, 75-78, 220-23, 225-28, 230-34, 246-47, 249-50 (A-843-44, 858, 860-61, 865-66, 915-19, 921-22). Plaintiffs also use the term "Defendants" to lump together sixteen defendants without any attempt to specify what, if anything, any of them did to Plaintiffs. See, e.g., SAC ¶¶ 3-4, 198-202, 204-07, 210, 215, 323-26 (A-843-44, 906-11, 935-36). Such group pleading is

---

[46] See, e.g., SAC ¶¶ 64 (A-860-61) ("Kingate Defendants . . . had overwhelming information indicating that Madoff's operation was a fraud—evidence they knew about or should have discovered . . ."), 65 (A-861) ("the Kingate Defendants should have made follow up inquiries . . ."), 126 (A-881-82) (inability to obtain electronic confirmations "should have raised significant questions"), 161 (A-893-94) ("PwC [Bermuda] knew or should have known about articles . . ."), 171 (A-897) ("These suspicions also should have been obvious"), 181 (A-900-01) ("If Citi Hedge had taken steps to independently verify the information being provided by Madoff, it would have discovered the manifest errors contained in the statements provided by Madoff to Citi Hedge."), 194 (A-905) ("Citi Hedge blindly and recklessly relied solely on information provided by Madoff to calculate and disseminate the Funds' NAV, and to perform other duties, even when that information was manifestly incorrect."), 201 (A-908) (Defendants "knew or should have known the obvious reasons" not to rely on Madoff's accounting firm), 222 (A-915) (had the "Kingate Defendants" "not been grossly negligent, Plaintiffs and the Class would not have invested, reinvested and held investments in the Funds.").

25

plainly insufficient.  See, e.g., Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (a plaintiff cannot merely "lump[] all the defendants together" and "provid[e] no factual basis to distinguish their conduct"); Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), aff'd, 530 F. App'x 19 (2d Cir. 2013) (dismissing complaint where plaintiffs "lumped" defendants together and failed to "isolate the key allegations against each defendant").

## E.     The District Court's Decision

Defendants moved to dismiss the SAC, and on September 21, 2016, the district court issued its thorough, 145-page Decision dismissing each of Plaintiffs' claims as follows:  Plaintiffs' negligent misrepresentation claims against PwC Bermuda (Count 17) and Citi Hedge (Count 24) as precluded by SLUSA, SPA-72-75, 78, 144, and for lack of standing, SPA-104-15, 144, and Plaintiffs' remaining claims (Counts 5-7, 9-13, 15-16, 18-19, 21-23, 25-26 and 28) for lack of standing, SPA-104-15, 144, and failure to state claims under BVI/Bermuda law, SPA-118-45.

The district court's dismissal of the SAC, with prejudice, should be affirmed in its entirety as to all Defendants.

26

### F.    Other Relevant Proceedings

In 2009, both Funds were placed into liquidation in the BVI, and the Funds'

Joint Liquidators were appointed to act on behalf of the Funds in, among other

things, pursuing any claims the Funds may have against third parties.  SAC ¶ 42

(A-855); Tracey ¶ 5 (A-1463); A-1471-1508.  KML is also in liquidation and was

subject to a winding-up order.  The Supreme Court of Bermuda appointed

Bermuda's Official Receiver to serve as KML's liquidator.  Tracey ¶ 6 (A-1463).

On July 2, 2009, the Funds' Joint Liquidators filed customer claims in the

SIPA proceeding for the Madoff liquidation pending in U.S. bankruptcy court to

recover the value of the Funds' investments with BLMIS.  Tracey ¶ 14 (A-1465);

A-1509-32.  The Funds' Joint Liquidators are actively pursuing those claims.  See

generally In re Bernard L. Madoff Inv. Secs. LLC., Adv. Pro. No. 08-01789 (SMB)

(Bankr. S.D.N.Y.).

In January 2010, the Funds' Joint Liquidators commenced proceedings in

Bermuda on behalf of the Funds against PwC Bermuda (the "Bermuda Audit

Proceeding").  Tracey ¶¶ 11-12 (A-1464-65).  There, the Funds asserted claims for

breach of contractual and/or tortious duties of care, negligent misstatements and/or

negligence.  Like this action, the Bermuda Audit Proceeding seeks damages for the

Funds' investment losses, and recovery of management and administration fees,

redemptions, brokerage fees and audit fees.  The Bermuda Audit Proceeding was

27

actively litigated. Tracey ¶ 13 (A-1465). In April 2016, the parties to the Bermuda Audit Proceeding reached a settlement, which was to become effective upon the dismissal of Plaintiffs' claims against PwC Bermuda in this action. CA-164-70. Pursuant to the settlement, *inter alia*, the Funds agreed to release all claims against PwC Bermuda. Id. This agreement was modified on July 15, 2016 to allow for additional time for the district court to rule on Defendants' motion to dismiss and for the resolution of any subsequent appeal. Id.

In December 2010, the Funds' Joint Liquidators commenced a second action on behalf of the Funds against KML, FIM Limited, FIM Advisers, Grosso, Ceretti and others (together, the "Bermuda Defendants") (the action, the "Bermuda Proceeding" and, together with the Bermuda Audit Proceeding, the "Bermuda Proceedings"). The Bermuda Proceeding asserted claims for unjust enrichment, breaches of contractual and/or tortious duties of care, and/or negligent misrepresentation, seeking to recover the fees paid by the Funds and damages for the Funds' investment losses, relief duplicative of the relief Plaintiffs seek here against those defendants. Tracey ¶¶ 7-13 (A-1463-65). The Bermuda Proceeding was also actively litigated: discovery had been completed and the case was proceeding to trial. Tracey ¶ 10 (A-1464). In September 2016, the parties agreed to a full settlement of the Bermuda Proceeding. Declaration of Stuart Mackellar

28

dated April 4, 2017 ("Mackellar") ¶ 4, Apr. 5, 2017, ECF No. 106.[47]  The BVI and

Bermuda courts presiding over the Funds' liquidation proceedings approved the

settlement agreement by orders dated December 8, 2016 and December 19, 2016,

respectively (the "Settlement Orders"), authorizing the Funds to proceed with the

settlement on the terms presented to the courts.  Id. ¶¶ 5-6, Exs. 1-2.  On February

1, 2017, the Bermuda Court issued a final order (the "Consent Order") noting that

the Bermuda Proceeding was settled pursuant to the settlement agreement

approved by the Bermuda Court, with the court retaining jurisdiction for the sole

purpose of carrying the terms into effect.  Declaration of Jodi Kleinick dated April

20, 2017 ("Kleinick") Ex. 1, ECF No. 138.

## SUMMARY OF THE ARGUMENT

The Decision dismissing the SAC should be affirmed on multiple

independent grounds.

First, the district court correctly dismissed all of Plaintiffs' claims because

the losses Plaintiffs seek to recover are "reflective" of losses suffered by the Funds,

and such claims belong to the Funds, not Plaintiffs.  BVI/Bermuda law bars such

claims by shareholders for lack of standing.  And here, the Funds already brought

---

[47] On April 5, 2017, certain defendants moved this Court to take judicial notice that
the Bermuda Proceeding was settled with the approval of the BVI and Bermuda
courts.  Id.; see also ECF Nos. 132 and 138.  That motion is sub judice.  ECF No.
122.

direct claims in Bermuda against many of the Defendants to recover these losses, and recently settled those cases with the approval of the foreign courts presiding over their liquidation proceedings.

Second, the district court correctly dismissed Plaintiffs' claims on the additional ground that Plaintiffs had failed to state claims under the relevant BVI/Bermuda law. The court held that the provisions of the Service Agreements, including the exculpatory provisions, between Defendants and the Funds (or between KML and FIM) inform the scope of duty owed to the Funds and apply equally to Plaintiffs. The court further held that:

- Plaintiffs did not sufficiently allege that the "Kingate Defendants" or Citi Hedge owed or breached fiduciary duties to them;

- Plaintiffs did not sufficiently allege that Tremont Group, Citi Hedge or PwC Bermuda aided and abetted any breaches of fiduciary duties to Plaintiffs;

- Gross negligence is not a tort recognized in BVI/Bermuda;

- Plaintiffs did not sufficiently allege that any Defendant acted negligently towards Plaintiffs;

- Plaintiffs did not state a viable claim for third-party beneficiary breach of any of the Service Agreements because, as a matter of BVI/Bermuda law, Plaintiffs—non-parties to the Service Agreements—have no right to recover damages for alleged breaches of those contracts; and

- Plaintiffs did not sufficiently allege that any Defendant must restitute Plaintiffs because, to the extent certain Defendants did receive fees, those fees were paid by the Funds (and in the case of FIM, by

30

KML)—not Plaintiffs, and Plaintiffs do not allege a total failure of consideration.

Moreover, while not decided by the district court, Plaintiffs' negligent misrepresentation claims against Citi Hedge and PwC Bermuda, like their duty-based claims, fail because the SAC lacks sufficient allegations to demonstrate the existence of a special relationship necessary to state such a claim.

Third, applying this Court's Kingate framework, the district court dismissed Plaintiffs' claims of negligent misrepresentation against Citi Hedge and PwC Bermuda under SLUSA. This conclusion was clearly correct given that "allegations in Group 2 premise liability on Defendants' negligent misrepresentations and misleading omissions in connection with the Funds' investments with Madoff and with oversight of Madoff's operations," which "the district court should therefore dismiss." Kingate, 784 F.3d at 151. Indeed, the district court should have gone further, holding that the rest of Plaintiffs' claims (except mutual mistake) are precluded by SLUSA under Groups 2 or 3 because they are all premised on the same underlying allegations of inducement or that Defendants aided and abetted Madoff's fraud. Further, Plaintiffs' waived argument that SLUSA does not apply to their claims, which they now concede are governed by foreign law, is foreclosed by this Court's mandate in Kingate and is in any event wrong on the merits.

31

Fourth, the district court's dismissal of the action should be affirmed on grounds of international comity. These foreign Plaintiffs seek to recover from mostly foreign Defendants on claims that they concede are governed by foreign law, even while the Funds are involved in insolvency proceedings in Bermuda and the Funds' Joint Liquidators have already pursued claims against many of these same Defendants. U.S. courts should defer to such parallel proceedings, which would also ensure that U.S. law does not interfere with the correct application of foreign insolvency law.

Fifth, the district court's decision should be affirmed as to the claims against the KML Defendants, the FIM Defendants and Manzke because those claims are time-barred under the six-month contractual limitations period expressly agreed to by every Fund investor when they executed the SAs. As the district court concluded, the contractual limitations period is enforceable and binding on Plaintiffs. However, the district court mistakenly failed to hold that Plaintiffs had filed their claims more than six months after the "original occurrence" and were therefore time-barred.

Sixth, the district court lacked personal jurisdiction over Citi Hedge. Citi Hedge did not forfeit this argument by failing to move on jurisdictional grounds in 2010, because any such argument would have been contrary to this Court's then-existing precedent. Citi Hedge moved to dismiss for lack of personal jurisdiction

32

at the first available opportunity—the motion to dismiss the SAC—after the

Supreme Court's intervening change in law, <u>Daimler AG v. Bauman</u>, 134 S. Ct.

746 (2014).

Finally, Plaintiffs' request for leave to re-plead their complaint for the third

time should be denied. Plaintiffs have already had multiple opportunities to state

viable claims against Defendants. The district court properly denied Plaintiffs'

request and correctly determined that re-pleading would be futile.

## STANDARD OF REVIEW

The district court's dismissal of all of Plaintiffs' claims for lack of standing

is subject to *de novo* review. <u>Baltus-Michaelson v. Credit Suisse First Boston,</u>

<u>LLC</u>, 116 F. App'x 308, 309 (2d Cir. 2004). Dismissal for failure to state a claim

is also reviewed *de novo*, "accept[ing] as true all of the allegations contained in a

complaint," but not "legal conclusions," and should be affirmed where, as here, the

allegations of the complaint do not "state a plausible claim for relief." <u>Harris v.</u>

<u>Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009) (internal quotation marks and citation

omitted). Similarly, *de novo* review applies to dismissal based on SLUSA,

regardless of whether such dismissal is framed as failure to state claims or lack of

subject matter jurisdiction. <u>Kingate</u>, 784 F.3d at 135 n.9, 136 n.11 (SLUSA

dismissal under 12(b)(6) reviewed *de novo*); <u>Romano v. Kazacos</u>, 609 F.3d 512,

33

520-21 (2d Cir. 2010) (SLUSA dismissal treated as jurisdictional issue and reviewed *de novo*).

Plaintiffs also appeal the district court's denial of leave to amend a third time, which this Court reviews for abuse of discretion, Grace v. Rosenstock, 228 F.3d 40, 54 (2d Cir. 2000), but "where the denial was based on an interpretation of law, such as futility," the Court reviews *de novo*. DeLollis v. Friedberg, Smith & Co., P.C., 600 F. App'x 792, 794 (2d Cir. 2015).

Defendants seek this Court's review of certain grounds that the district court incorrectly rejected. The district court's denial of Defendants' motion to dismiss on the basis of comity is reviewed for abuse of discretion. In re Vitamin C Antitrust Litig., 837 F.3d 175, 183 (2d Cir. 2016). However, in evaluating the district court's exercise of discretion, the court reviews its conclusions of law *de novo*. JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 423 (2d Cir. 2005). Denial of a motion to dismiss for lack of personal jurisdiction or based on timeliness is also reviewed *de novo*. Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 421 (2d Cir. 2005); Novella v. Westchester Cnty., 661 F.3d 128, 143 (2d Cir. 2011).

## ARGUMENT

**I. THE DISTRICT COURT CORRECTLY DISMISSED ALL OF PLAINTIFFS' CLAIMS FOR LACK OF STANDING UNDER BVI/BERMUDA LAW**

The district court properly held that Plaintiffs lack standing under

BVI/Bermuda law to pursue any of their remaining claims.[48]  All of Plaintiffs'

claims are barred by the principles of Johnson v. Gore Wood & Co. [2002] 2 AC 1,

because any alleged loss Plaintiffs incurred, as shareholders in the Funds, is a

result of the diminution in the values of their shares and is reflective of the Funds'

losses.  SPA-104-115.  Nor have Plaintiffs alleged the narrow exception to the

reflective loss rule, that Defendants incapacitated the Funds from suing to recover

the Funds' losses.  Nor could they:  the Funds' Joint Liquidators sued many of the

Defendants in the Bermuda Proceedings, actively litigated both proceedings and

settled the Bermuda Proceeding with approval of the BVI and Bermuda courts

presiding over their liquidation proceedings.  A settlement—which was to become

effective on dismissal of the claims against PwC Bermuda in this action—has also

been reached in the Bermuda Audit Proceeding.  CA-164.  Moreover, to the extent

that Plaintiffs' claims could somehow avoid application of the reflective loss

---

[48] While Plaintiffs suggest that the negligent misrepresentation claims were not dismissed under the reflective loss rule, App. Br. at 19, the district court explicitly granted Defendants' motion to dismiss "as to Plaintiffs' standing to assert all claims."  SPA-144 (emphasis added).

doctrine, all of their claims except negligent misrepresentation are based on alleged

wrongs done to the Funds (not Plaintiffs), so Plaintiffs are not the "proper

plaintiffs" under BVI/Bermuda law to assert them.

### A. Plaintiffs' Claims Are Barred By The Rule Against Reflective Loss

The reflective loss rule prohibits shareholders from suing to recover losses

for the "diminution in the value of a shareholding." Johnson, [2002] 2 AC 1, at

36B-D; see also Hargun ¶¶ 87-99 (A-2132-37); Evans ¶¶ 45-46 (A-2170); Chivers

¶¶ 38-47 (A-1414-17); Browne-Wilkinson ¶¶ 15-22 (A-2189-94); Dohmann ¶¶ 42-

61 (A-2224-33).  That is precisely what Plaintiffs seek:  they claim losses because

"they have lost their investments in the Funds."  SAC ¶ 14 (A-846).[49]  Regardless

of how Plaintiffs frame these claims, those losses are "by definition reflective of

the diminished value of the Funds' assets."  SPA-108.  All of Plaintiffs' claims—

including their claims against Citi Hedge and PwC Bermuda for negligent

misrepresentation—"are barred by the reflective loss principle."  Evans ¶ 61 (A-

2174); see also id. ¶¶ 59-62, 73, 81, 107 (A-2174, 2176, 2178, 2183); Hargun ¶¶

119-23, 135, 143, 169 (A-2144, 2148, 2149, 2154); Chivers ¶¶ 51-66, 159, 162,

---

[49] See SAC ¶¶ 46-47 (A-855-56) ("Madoff and B[L]MIS purported to manage the Funds' assets . . .  Rather than investing the Funds' assets in actual securities, Madoff fraudulently used the assets for his personal benefit . . . .") (emphases added); see also SAC ¶¶ 1, 4, 198, 216, 234, 247, 249, 325 (A-843-44, 906-07, 911-12, 918-19, 921-22, 936).

165, 168, 173, 176 (A-1418-23, 1452-54); Browne-Wilkinson ¶ 31 (A-2197) ("It is

therefore the case that the losses claimed by the Plaintiffs in the Complaint are

reflective of the Funds' losses"), ¶¶ 23-31 (A-2195-97); Dohmann ¶¶ 7, 92 (A-

2216, 2245); Browne-Wilkinson Reply ¶¶ 4-5, 18-21, 41-49 (A-2521-22, 2526-28,

2537-42).[50]

Plaintiffs' arguments to avoid application of the reflective loss doctrine all

fail. It makes no difference whether Plaintiffs' claims are characterized as

"mismanagement claims arising out of Defendants' services to the Funds" or based

on duties Defendants purportedly owed to Plaintiffs "in connection with marketing

and valuing the Funds." App. Br. at 22.[51] The reflective loss principle turns on the

---

[50] See also Hau Yin To v. HSBC Holdings PLC, No. 15CV3590-LTS-SN, 2017 WL 816136, at *8 (S.D.N.Y. Mar. 1, 2017) (foreign investors in Madoff feeder fund lacked standing under the BVI's reflective loss principle to bring claims against the feeder fund's service providers); W. Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd., No 09-80846-CIV, 2010 WL 2949856, at *3 (S.D. Fla. July 26, 2010) (hedge fund investor claims based on Madoff's theft of fund assets barred under the reflective loss principle); Varga v. McGraw Hill Fin. Inc., No. 652410/2013, 2015 WL 4627748, at *14-15 (N.Y. Sup. Ct. July 31, 2015) (Cayman law reflective loss doctrine bars claim for fraudulent misrepresentation).

[51] In light of the district court's holding that Plaintiffs' framing of their claims in terms of "inducement" triggers the application of SLUSA, SPA-105-07, Plaintiffs now avoid using that term, substituting arguments that Defendants purportedly owed independent duties to Plaintiffs "in connection with marketing and valuing the Funds." App. Br. at 22. But the SAC includes no allegations that any Defendant directly marketed shares to Plaintiffs. The conclusory allegations that "Defendants" breached unspecified duties purportedly owed directly to shareholders, see, e.g., SAC ¶¶ 4-5 (A-844), are insufficient under Bell Atlantic

37

nature of the loss, not whether the relevant duties were "separate and apart from those owed to the Funds." SPA-107; <u>see also</u> Browne-Wilkinson Reply ¶¶ 18, 20 (A-2526-27) ("the rule is concerned with the nature of the shareholder's loss, as opposed to its cause of action"); Chivers Reply ¶¶ 15-18 (A-2464-67) (reflective loss bars shareholders from bringing suit even where the shareholders' cause of action is different from the companies' cause of action and even if interpreted under an "inducement" theory); Hargun Reply ¶¶ 5-7 (A-2491-92); Evans Reply ¶¶ 6-8 (A-2512-13); Dohmann Reply ¶ 11 (A-2551).

Plaintiffs' argument that the reflective loss rule is inapplicable because their losses are alleged to be "asymmetrical" with the Funds' damages and "not all shareholders were damaged to the same degree" is not grounded in BVI/Bermuda law. App. Br. at 23-24. Instead, Plaintiffs rely solely on two cases from this Court and the district court—neither of which apply BVI/Bermuda law—in arguing their "asymmetrical" injury warrants departure from the reflective loss rule.[52] App. Br.

---

<u>Corp. v. Twombly</u>, 550 U.S. 544 (2007) and regardless do not demonstrate any separate relationship between any Defendant and any shareholder in the Funds under BVI/Bermuda law. Hargun ¶ 139 (A-2148); Evans ¶ 77 (A-2177); Chivers ¶¶ 93-94 (A-1431-32); Browne-Wilkinson ¶ 38 (A-2199); Hargun Reply ¶ 52.3 (A-2504); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶ 50 (A-2480).

[52] In <u>Anwar v. Fairfield Greenwich Ltd.</u>, 728 F. Supp. 2d 372, 402 (S.D.N.Y. 2010) ("<u>Anwar II</u>"), the case from which Plaintiffs find their "asymmetrical" language, the district court analyzed standing to assert direct claims under New York law. Similarly, to support their argument that their "losses are measured on a 'net-equity' basis," App. Br. at 23, Plaintiffs quote <u>In re Bernard L. Madoff Inv.</u>

38

at 23.  The method for calculating damages in a SIPA proceeding in the Second

Circuit is irrelevant here because, as Plaintiffs concede, their claims are governed

by BVI/Bermuda law, which includes the reflective loss rule and the BVI/Bermuda

method for calculating damages.  Under BVI/Bermuda law, Plaintiffs may not

bring a direct claim, "regardless of whether the company will actually make a

recovery and regardless of whether any of that recovery will be received by

shareholders."  Chivers Reply ¶¶ 19-20 (A-2467-68); see also Hargun ¶ 96 (A-

2136); Evans ¶ 46 (A-2170); Hargun Reply ¶¶ 18-21, 30 (A-2494-96, 2498); Evans

Reply ¶¶ 3, 12-13 (A-2512, 2514); Browne-Wilkinson Reply ¶¶ 38-40 (A-2536);

Chivers Reply ¶¶ 13-14 (A-2462-63) ("[T]he inability of the company to remedy

the loss is not a ground for allowing the shareholder to bring a direct claim.").

Plaintiffs' reliance on Giles v. Rhind, discussed further infra, for their

conclusion that they are entitled to "recover the excess above what the Funds could

collect," is misplaced.  App. Br. at 23.  Rather than establishing that the reflective

loss rule is inapplicable when losses are asymmetrical, Giles quotes the third

Johnson principle and explains that it considers whether a claim would be "made

good if the company had enforced its full rights against the party responsible"—

---

Securities LLC, 654 F.3d 229, 233 (2d Cir. 2011), where this Court addressed the
procedures for calculating customer's damages set forth in SIPA, a federal statute.
These cases have no application here because they do not consider standing under
BVI/Bermuda law.

39

without stating that a shareholder is not "made good" if their losses are greater than the Funds' recovery.  Giles v. Rhind, [2003] (Ch.) 618 at ¶ 67.

The "purpose of the rule is to protect the creditors of the company," and it applies even "in some circumstances [where] the company's claim may not wholly 'make good' the shareholder-plaintiff's loss."  Browne-Wilkinson Reply ¶ 40 (A-2536) (quoting Johnson, [2002] 2 AC 1, at 62), ¶ 33(2) (A-2533) (funds' claims to recover investors' losses trump those that can be brought by shareholders); see also Hargun Reply ¶¶ 18-21, 30 (A-2494-96, 2498); Evans Reply ¶¶ 3, 12-13 (A-2512, 2514); SPA-109-11.

Plaintiffs' suggestion that the reflective loss rule need not bar their claims because the district court can provide safeguards against double recovery misses the point.  App. Br. at 25; SPA-115.  Under BVI/Bermuda law, the reflective loss doctrine is substantive—not procedural—and its application is mandatory.  Thus, when the rule applies "there simply is no claim that can be brought by a shareholder."  Chivers Reply ¶ 3 (A-2459) (citing Johnson, [2002] 2 AC 1, at 35), ¶ 24 (A-2469) (clarifying the reflective loss rule is mandatory, rendering other "safeguards against double recovery" inappropriate); Hargun ¶¶ 90, 94 (A-2133-35); Hargun Reply ¶¶ 9-12 (A-2493), Evans ¶ 46 (A-2170); Chivers ¶ 45 (A-1416); Dohmann ¶¶ 49, 56 (A-2227-28, 2230); Evans Reply ¶ 10 (A-2513-14); Browne-

40

Wilkinson Reply ¶ 23 (A-2528).[53]  Here, moreover, there can be no recovery by the Plaintiffs against the Bermuda Defendants because those claims have all been released.

Plaintiffs also imply that their claims should move forward because a Commonwealth court would not "strike out" their claims, the equivalent of dismissal, at this stage of the proceeding, and that "Defendants bear the onus of establishing that the reflective loss rule applies."  App. Br. at 19-20.  Even if true, this is wholly irrelevant:  federal procedural rules, not the pleading standards of BVI/Bermuda, apply to actions brought in U.S. courts.  In re Fosomax Products Liab. Litig., 707 F.3d 189, 193 (2d Cir. 2013) (federal court sitting in diversity "appl[ies] state substantive law" "and federal procedural law").[54]  Under the Federal Rules, in order to avoid dismissal, the burden is on Plaintiffs to "provide

---

[53] Plaintiffs' expert conceded this by acknowledging that the rule is a "part of the law of companies."  Bompas ¶ 14 (A-773-74); Bompas Further ¶ 26 (A-2264-65); see also Dohmann ¶ 49 (A-2227-28) (quoting Johnson and noting that "[t]his is a matter of principle; there is no discretion involved."); Hargun Reply ¶¶ 9-12 (A-2493); Evans Reply ¶ 10 (A-2513-14).

[54] As to the majority of the claims that Plaintiffs are pursuing now (i.e., the "non-misrepresentation claims"), the best that Plaintiffs' expert could offer is that these claims are "not . . . necessarily" barred by the reflective loss doctrine.  Bompas ¶ 53.4 (A-789).  Plaintiffs' expert is also wrong regarding Commonwealth law in any event—none of Plaintiffs' remaining claims would survive a "strike out motion" in a Commonwealth court based on the reflective loss doctrine.  See, e.g., Hargun Reply ¶¶ 31-32 (A-2498); Evans Reply ¶¶ 15-16 (2514-15); Chivers Reply ¶¶ 3-5 (A-2459-60); Browne-Wilkinson Reply ¶ 49 (A-2542).

41

the grounds of [their] entitle[ment] to relief," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## B. The Giles v. Rhind Exception Does Not Apply

As the district court also correctly held, Plaintiffs cannot escape the reflective loss rule through the Giles v. Rhind exception, SPA-111-15, which permits a shareholder to bring a claim belonging to the corporation only upon a showing that the defendant wrongdoer has "made it impossible" for the company to sue. Chivers ¶ 48(c) (A-1417-18) (quoting Kazakhstan Kagazy v. Arip [2014] 1 C.L.C. 451) (emphasis added); see also Webster Sanderson Solicitors (a firm) [2009] PNLR 37; Dohmann Reply ¶¶ 18-19 (A-2553) (citing Peak Hotels and Resorts Ltd. v. Tarek Inv. Ltd. [2015] EWHC 3048 (Ch), at ¶¶ 41-42); Browne-Wilkinson ¶ 21 (A-2194); Hargun ¶¶ 97-99 (A-2137); Evans ¶ 46 (A-2170); Chivers ¶¶ 48-49 (A-1417-18); Chivers Reply ¶¶ 6-11 (A-2460-62) (for the exception to apply, the company must be unable to pursue its claim due to defendant's wrongdoing, and not "because the company's claim might not succeed").

Clearly, it was not "impossible" for the Funds to sue: the Funds' Joint Liquidators asserted substantially similar claims in the Bermuda Proceedings, seeking the same damages Plaintiffs pursue here against many of the same Defendants. The Funds vigorously pursued those claims and, after 7 years of

42

litigation, achieved a settlement in the Bermuda Proceeding that was approved by both the BVI and Bermuda courts presiding over the Funds' liquidation proceedings. Tracey ¶¶ 7-13 (A-1463-65); Hargun Reply ¶ 25 (A-2497); Evans Reply ¶ 14 (A-2514); Chivers Reply ¶¶ 6-11 (A-2460-62); Browne-Wilkinson Reply ¶ 26(1)(a) (A-2530); Dohmann Reply ¶¶ 12-19 (A-2551-53); Mackellar Exs. 1-2, Apr. 5, 2017, ECF No. 106.; Kleinick Ex. 1, April 20, 2017, ECF No. 138. A settlement of the Bermuda Audit Proceedings has also been reached, but has not yet taken effect. CA-164-170.

Application of the reflective loss rule is particularly appropriate under these circumstances. As Johnson makes clear,

> [The policy considerations] preclude the shareholder from going behind the settlement of the company's claim. If he were allowed to do so then, . . . if [the company's action] were brought by the liquidator, it would make it difficult for him to settle the action and would effectively take the conduct of the litigation out of his hands.

SPA-111 (quoting Johnson, [2002] 2 AC 1, at 66). This principle applies even though the Funds' Joint Liquidators elected to sue most, but not all, of the Defendants. See Johnson, [2002] 2 AC 1, at 66D-E ("[I]f the company chooses not to exercise its remedy, the loss to the shareholder is caused by the company's decision not to pursue its remedy and not by the defendant's wrongdoing"). The rule also "applies regardless of whether the company will actually make a recovery

43

and regardless of whether any of that recovery will be received by the shareholders." Chivers Reply ¶¶ 19-20 (A-2467-68).

Plaintiffs' reliance on Rehman v. Jones Lang LaSalle Ltd. [2013] EWHC 1339, at ¶ 86 (QB) is misplaced. App. Br. at 27. In Rehman, the reflective loss rule was held to be inapplicable because, unlike here, the company did not exist at the time that certain of the allegedly negligent conduct occurred and, therefore, the company had no cause of action to redress that wrong. Plaintiffs' argument here, that the company was in existence at the time of the appeal, is irrelevant because it did not exist at the time the cause of action accrued and could not pursue any claim. See Hargun Reply ¶ 25 (A-2497); Dohmann Reply ¶ 27 (A-2557-58).

Plaintiffs try to salvage their claims by mischaracterizing BVI/Bermuda law to expand the Giles exception to cases where defendants have "created roadblocks" that make it "exceedingly difficult" for the corporation to achieve a full recovery. App. Br. at 26-28. Such arguments to expand the exception have been flatly rejected under BVI/Bermuda law. Hargun Reply ¶ 24 (A-2496); Evans Reply ¶ 14 (A-2514); Chivers Reply ¶¶ 7-9 (A-2460-61). As the district court correctly recognized, the Giles exception is "very limited," applying only when the company is completely incapacitated from suing, not merely because a defendant has viable

44

defenses or the company's likelihood of recovering is remote.  SPA-113[55] (quoting Kazakhstan, [2014] 1 C.L.C. 451, at ¶ 33).

Moreover, even if the SAC did allege (which it does not) that the Funds were incapacitated from suing despite seven years of active litigation and their recoveries in Bermuda, the Giles exception still would not apply because Plaintiffs do not allege in the SAC that any such "incapacitation" was due to the Defendants' wrongdoing.  SPA-113-15; see also Hargun Reply ¶ 24 (A-2496); Chivers Reply ¶¶ 6-11, 21 (A-2460-62, 2468); Browne-Wilkinson Reply ¶ 26(1) (A-2530) ("If there is no causative link between defendant's wrongdoing and the company's inability to bring its claim, the exception will not apply"); Evans Reply ¶ 14 (A-2514).[56]  The supposed wrongdoing that the undifferentiated "Kingate Defendants"

---

[55] See Dohmann Reply ¶ 16 (A-2552) (the rule against reflective loss applies even when the company's claim is a "difficult one" or when the defendant "has a complete defence"); Hargun Reply ¶¶ 22-30 (A-2496-98); Evans Reply ¶ 14 (A-2514); Chivers ¶ 48 (A-1417-18); Chivers Reply ¶¶ 7-9 (A-2460-61); Browne-Wilkinson Reply ¶ 26(1)(b) (A-2530).

[56] Similarly, and contrary to Plaintiffs' argument, App. Br. at 27, Kazakhstan Kagazy v. Arip holds that a shareholder's claim to recover the company's loss is barred under the reflective loss doctrine even if the company is "procedurally barred" from recovering that loss—a defense to a lawsuit is different from rendering it impossible for the entity to bring a lawsuit in the first place.  Hargun Reply ¶ 27 (A-2497) (citing Kazakhstan, [2014] 1 C.L.C. 451, at ¶ 30).  It does not matter whether the reason for the defense was statutory (as in Kazakhstan) or contractual (like the disclaimers at issue here).  Hargun Reply ¶¶ 24-29 (A-2496-98); Browne-Wilkinson Reply ¶ 26(1)(b) (A-2530); Evans Reply ¶ 14 (A-2514); Dohmann Reply ¶ 27 (A-2557-68).  Plaintiffs' other distinction, that the plaintiffs in Kazakhstan conceded there was complete overlap between the claims of the

45

"intentionally fortified" the Service Agreements[57] with exculpatory provisions that "effectively insulate" the Defendants from liability, App. Br. at 28, is not found in the SAC. Further, as the district court recognized, the inclusion in the Service Agreements of routine disclaimers found in countless commercial agreements does not constitute "wrongdoing" to trigger the Giles exception. SPA-114 (citing Gardner v. Parker [2004] EWCA Civ 781, at 54, 57-58 (rejecting claim that company's settlement releasing defendant from liability warranted Giles exception where pleading lacked allegations that defendants forced company to release it)); see also Hargun Reply ¶ 24 (A-2496). Moreover, because any defenses applicable to the Funds based on these exculpation clauses would apply equally to the Plaintiffs, declining to apply the reflective loss rule gets Plaintiffs nowhere. SPA-115.[58] Lastly, none of the defendants in the Bermuda Proceeding raised an *in pari delicto* defense or the equivalent as Plaintiffs suggest.[59] Even if they had, it would

---

company and the shareholders, is irrelevant and meaningless. Complete overlap between the claims is not necessary for the doctrine to apply and, moreover, the claims of the Funds and Plaintiffs completely overlap here.

[57] Plaintiffs do not allege or argue that Citi Hedge or PwC Bermuda participated in the drafting of these documents, and FIM (USA) and Tremont Group are not party to any agreements.

[58] Conversely, if Plaintiffs are correct that the disclaimers are ineffective, App. Br. at 31, Plaintiffs' argument that those very same disclaimers "effectively incapacitated" the Funds from successfully suing necessarily fails.

46

not provide a basis for the <u>Giles</u> exception as to those Defendants, let alone to the Defendants not named in that proceeding.  Chivers Reply ¶¶ 10-12, 21-23 (A-2461-62, 2468-69).

> **C.      Most of Plaintiffs' Claims Are Also Barred Under the "Proper Plaintiff" Principle**

In addition to the fact that Plaintiffs' losses are reflective of the Funds' losses, under BVI/Bermuda law, the "proper plaintiff" in any action arising out of a wrong allegedly done to a company is the company itself, and no individual shareholder can maintain an action to redress any such wrong.  <u>See</u> <u>Foss v. Harbottle</u>, 2 Hare 461, 67 E.R. 189 (1843); Evans ¶¶ 37-44 (A-2168-69); Chivers ¶¶ 23-28 (A-1409-10); Dohmann ¶¶ 41-62 (A-2224-34); Hargun ¶¶ 80-86 (A-2129-31); <u>see also</u> <u>Winn v. Schafer</u>, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007) (discussing proper plaintiff rule).  As set forth below, while the district court did not dismiss on this ground, the "proper plaintiff" doctrine provides an additional basis for affirmance of dismissal of most of Plaintiffs' claims.

---

[59] Plaintiffs cited to a document filed by defendants in the Bermuda Proceeding as support for their assertion that the defendants in that case raised an *in pari delicto* defense to the claims asserted against them by the Funds.  App. Br. at 29 (citing CA-85 at ¶ 208).  No such defense was raised.  Those defendants merely argued that they did not breach any contractual or other duties by failing to detect any supposed "red flags" of Madoff's fraud because, if those flags were as obvious as the Funds suggested, anyone else (including the Funds or their directors) could have detected them.  The defense is premised on a parity of knowledge, not a parity of wrongdoing, and is not a defense of *in pari delicto* under Bermuda law.  Chivers Reply ¶¶ 22-23 (A-2468-69).

Counts 5-7, 9-13, 15, 16, 18, 19, 21-23, 25, 26 and 28 in the SAC are all based on alleged wrongs by the Defendants in providing services, not to Plaintiffs, but to the Funds (or, in the case of FIM, to KML). For example, Plaintiffs allege that Defendants failed to manage the Funds' investments properly, failed to conduct proper audits of the Funds' finances, and failed to properly calculate the Funds' NAV.[60] These are quintessential examples of corporate claims belonging to the Funds and are barred by the proper plaintiff principle. See Hargun ¶¶ 80-86, 119-23, 135, 143, 169 (A-2129-31, 2144, 2148-49, 2154); Evans ¶¶ 37-44, 59-62, 73, 81, 107 (A-2168-69, 2174, 2176, 2178, 2183); Chivers ¶¶ 33-37, 160, 163, 166, 169, 172, 175 (A-1412-13, 1452-54); Dohmann ¶¶ 41, 61 (A-2224, 2233-34); see also Seghers v. Thompson, No. 6 Civ. 308, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (dismissing shareholder claims for, *inter alia,* breach of contract and breach of fiduciary duty pursuant to Foss v. Harbottle).

---

[60] See, e.g., SAC ¶¶ 65 (A-861) (Kingate Defendants "should have made follow up inquiries" regarding "trades for the Funds"), 75 (A-865) (Kingate Defendants should have verified the Funds' counterparties), 76 (A-865) (Kingate Defendants should have conducted due diligence), 78 (A-866) (Kingate Defendants failed to monitor and evaluate Madoff and the information he provided), 215 (A-911) (Defendants should have conducted due diligence and "the Funds would have ceased transferring investor funds to Madoff"), 218(c) (A-912-13) (listing alleged common questions framed as mismanagement questions); see also SAC ¶¶ 221, 226, 238, 243-44) (A-915-16, 919-21).

Although the district court noted that the proper plaintiff principle "in its simplest form" does not apply to "direct claims,"[61] implicit in the Decision is a determination that Plaintiffs failed to assert any "direct claims." See SPA-105 (emphasis added). As the district court correctly held, Plaintiff's "non-fraud" claims are premised on alleged breaches of "tort, contractual, or fiduciary duties to conduct due diligence and exercise care in providing services to the Funds" and do not "differ from the Funds' mismanagement claims." SPA-106-07 (emphasis added).

Contrary to Plaintiffs' argument on appeal, App. Br. at 22, the SAC does not contain any factual allegations to support their assertion that any Defendant "assumed fiduciary duties and duties of care owed directly to Plaintiffs" that are "separate and distinct" from duties owed to the Funds. Plaintiffs' claims rest on either (i) the contractual agreements (to the extent they even exist) between Defendants, on one hand, and either the Funds or other parties, on the other, or (ii)

---

[61] Derivative actions are clearly prohibited under Foss v. Harbottle, absent limited exceptions not present here. Hargun ¶¶ 84-86 (A-2130-31); Evans ¶¶ 41-44 (A-2169). Moreover, as Plaintiffs' expert acknowledged, any direct claim must comply with the proper plaintiff rule and be based on duties a particular Defendant owed directly to Plaintiffs that are separate and apart from any duties such Plaintiffs owed to the Funds (or to KML). Bompas Further ¶ 11 (A-2259) (proper plaintiff principle must be considered in connection with the principle in Johnson v. Gore Woods); see also Chivers ¶¶ 22-37 (A-1409-13); Hargun ¶ 83 (A-2130) (citing an example where the proper plaintiff principle was applied to a "personal claim" for fraud); Evans ¶ 38 (A-2168); Evans Reply ¶ 7 (A-2513) (noting there is "no material difference between the experts" regarding the proper plaintiff rule).

the corporate relationships between the entity Defendants and their own officers and directors. See, e.g., SAC ¶¶ 24-38 (A-847-53). Plaintiffs are not party to any agreement, and none of the agreements establish any relationship between any of the Defendants and the Plaintiffs, much less a fiduciary relationship that goes beyond the duties undertaken by Defendants to the Funds (or in the case of FIM to KML). Hargun ¶ 139 (A-2148); Evans ¶ 77 (A-2177); Chivers ¶¶ 93-94 (A-1431-32); Browne-Wilkinson ¶ 38 (A-2199); Hargun Reply ¶¶ 52.3, 57 (A-2504, 2506); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶¶ 50, 52 (A-2480-81), Brown-Wilkinson Reply ¶ 53 (A-2543); SPA-106, 119-23.

Plaintiffs also argue that the SAC alleges that "Defendants assumed duties and duties of care owed directly to Plaintiffs in connection with marketing and valuing the Funds." App. Br. at 22. However, the SAC does not allege that any Defendant "marketed" shares to Plaintiffs or assumed any duties during any supposed communications with any Plaintiff. It has only conclusory allegations that "Defendants" breached unspecified duties purportedly owed directly to shareholders, e.g., SAC ¶¶ 4-5 (A-844), which are insufficient as a matter of law to demonstrate any separate relationship between any Defendant and any shareholder in the Funds under BVI/Bermuda law. Hargun ¶ 139 (A-2148); Evans ¶ 77 (A-2177); Chivers ¶¶ 93-94 (A-1431-32); Browne-Wilkinson ¶ 38 (A-2199); Hargun Reply ¶ 52.3 (A-2504); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶ 50 (A-2480).

50

Finally, even had Plaintiffs alleged actual communications with any Defendant, an entity that markets or sells investments on behalf of a fund is acting for the fund (or for themselves) and does not undertake any duty to the prospective purchaser. Hargun Reply ¶ 57 (A-2506); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶ 52 (A-2481). Moreover, disseminating monthly performance reports to investors is a routine administrative service and does not create any duty to those investors. Hargun Reply ¶ 57 (A-2506); Evans Reply ¶ 27 (A-2516); Browne-Wilkinson Reply ¶ 53 (A-2543). The only "proper plaintiff" for the claims being asserted is the Funds. See Hargun ¶¶ 80-86 (A-2129-31); Evans ¶¶ 37-44 (A-2168-69); Chivers ¶¶ 23-37 (A-1409-14); Dohmann ¶¶ 42-62 (A-2224-34). The district court's decision dismissing Plaintiffs' claims (other than negligent misrepresentation) should be affirmed on this basis as well.

## II. THE DISTRICT COURT CORRECTLY DISMISSED COUNTS 5-7, 9-13, 15-16, 18-19, 21-23, 25-26 AND 28 FOR FAILURE TO STATE CLAIMS UNDER BVI/BERMUDA LAW AGAINST ANY DEFENDANT

The district court also correctly dismissed all of Plaintiffs' claims (except Counts 17 and 24, which were dismissed as precluded by SLUSA and for lack of standing) because Plaintiffs failed to state viable causes of action under BVI/Bermuda law against any Defendant.

**A.** **The District Court Correctly Held that Plaintiffs Cannot Avoid the Limited Scope of Duties, Including the Exculpation Provisions, Limitations on Liability Clauses and Disclaimers Found in the Subscription Agreements, Information Memoranda and Service Agreements**

The district court correctly analyzed Plaintiffs' claims in light of the provisions of the relevant Service Agreements, including the exculpatory provisions. See SPA-114-15, 121-23. Those agreements by and large exculpated the service providers from liability in the "absence of gross negligence, fraud or willful default." A-1398 at § 10.3, A-2094 at § 10.3.[62] In order to purchase shares in the Funds, Plaintiffs signed Subscription Agreements that incorporated by reference the terms of the IMs. Each IM, which itself described the exculpatory provisions of the Service Agreements, was "qualified in its entirety by . . . the documents and agreements referred to herein," including the Management Agreements, Co-Management Agreement, Auditor Agreements, Administration Agreements, and Consulting Service Agreements. See, e.g., A-943. The Service Agreements were explicitly defined in, and referenced throughout, the IMs.

Each Plaintiff similarly represented and warranted that it "read carefully and understands the Information Memorandum and has consulted its own attorney,

---

[62] See also A-1963 at § 13.1 (same); A-1947 at § 13.1 (same); A-1317 at § 5.4 ("gross negligence, bad faith, or willful or reckless malfeasance"); A-1931 at § 5.4 (same); A-1919 at § 4.3 (same).

52

accountant or investment advisor with respect to the investment contemplated

herein," and also affirmed at the time of subscribing that:

> [R]epresentatives of the Fund, the Manager, Investment Advisor, Administrator and Consultant have made available to the Subscriber . . . the opportunity to ask questions of and receive answers from them concerning the terms and conditions of the offering described in the Information Memorandum, and to obtain any additional information necessary to verify the information contained in the Information Memorandum . . . .

A-1198; A-997; A-1809; A-1049.

The Service Agreements explicitly limited the duties and liabilities of the

service providers, which are enforceable as to Plaintiffs under BVI/Bermuda law.

See Hargun ¶¶ 68-79, 133-34 (A-2125-28, 2148); Chivers ¶¶ 118-26 (A-1441-44)

(noting the applicability of a disclaimer where "it would self-evidently not be fair

just and reasonable to impose the very duty it purports to negative") (citing In

Barclays Bank Plc v Grant Thornton UK LLP [2014] EWHC 320 (Comm)), 158

(A-1452); Browne-Wilkinson ¶¶ 53-54 (A-2204-05).

Plaintiffs' attempt to broaden the duties of service providers beyond

anything set forth in the governing agreements fails. App. Br. at 30-31. As an

initial matter, Plaintiffs failed to plead that they lacked familiarity with or access to

the Service Agreements, and Plaintiffs cannot amend their complaint to now add

these allegations through motion papers. Wright v. Ernst & Young LLP, 152 F.3d

169, 178 (2d Cir. 1998). In any event, Plaintiffs represented and warranted that

53

they were sophisticated investors with the "knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund" and that they were "aware of the risks inherent in investing in the assets proposed to be acquired by the Fund and the method by which the assets of the Fund are held and/or traded." See, e.g., A-996.  Plaintiffs further represented that they "received, reviewed and understood" the IMs and that their investments were "on the terms of the [IMs]," which incorporated the Service Agreements, and that they "consent[ed] to every provision therein."  See, e.g., A-992, 997; see also SPA-92 n.35, 114, 121.  Plaintiffs cannot now feign ignorance by arguing they elected not to inspect the Service Agreements or that the summaries in the IMs obviated their need to review the exculpatory clauses.  App. Br. at 30-31.

Plaintiffs' reliance on Interfoto Picture Library Ltd. v. Stiletto Visual Programmes Ltd., [1989] QB 433, is misplaced.  There, the court noted that a particularly "onerous" and "unusual" condition (a putative additional surcharge) may not be part of a contract with an unsophisticated counterparty where the condition was not drawn to the purchaser's attention.  Here, the IMs specifically stated that the Service Agreements contained exculpatory provisions, and that each IM was "qualified in its entirety" by the Service Agreements, see, e.g., A-943, and as noted above, Plaintiffs represented they reviewed the IMs, which incorporated the Service Agreements, and that they "consent[ed] to every provision

54

therein." See, e.g., A-992, 997. These provisions are valid and enforceable under BVI/Bermuda law, and are not regarded as "unusual." See Chivers ¶ 124 (A-1444). Thus, the provisions of the SAs, IMs and Service Agreements, including the disclaimers, exculpatory clauses and limitations on liability clauses are binding on Plaintiffs.

**B.    The District Court Correctly Held That Plaintiffs' Breach of Fiduciary Duty Claims Against the Kingate Defendants (Count 7) and Citi Hedge (Count 21) Fail**

The district court correctly concluded that Plaintiffs failed to state fiduciary duty claims against any of the Kingate Defendants (including the Individual Defendants) or Citi Hedge. Under BVI/Bermuda law, which all parties agree applies to Plaintiffs' claims, a fiduciary relationship arises only where one party agrees to act for another in circumstances which give rise to a relationship of trust and confidence. Hargun ¶¶ 47, 48, 65, 118 (A-2115, 2123, 2143); Evans ¶¶ 31, 35, 58 (A-2166-67, 2173-74); Chivers ¶¶ 81-84, 86-90 (A-1426-30).[63] The SAC includes no allegations that these Defendants agreed to any fiduciary relationship with Plaintiffs. SPA-119. Moreover, the only fiduciary duty recognized under BVI law in this context is a duty of loyalty, Hargun ¶¶ 37, 42-44, 117, 142 (A-2113-14, 2143, 2149); Evans ¶¶ 30-31, 57, 80 (A-2166, 2173, 2178); Chivers ¶¶

---

[63] See also Hargun Reply ¶ 52.2 (A-2504); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶¶ 48, 50-51 (A-2479-81); SPA-118.

55

95-96 (A-1432-33); Browne-Wilkinson ¶ 35-36 (A-2198-99), which Plaintiffs have not alleged and cannot show.

> **1.** **The SAC Fails to State a Breach of Fiduciary Duty Claim Against Any of the Kingate Defendants**

After considering the relationships between the parties set forth in the IMs and the Service Agreements and the allegations in the SAC, the district court dismissed the fiduciary duty claims against the Kingate Defendants, correctly holding that: (1) "KML, Tremont and FIM" did not undertake to provide services to Plaintiffs—as opposed to the Funds—so there was no "relationship of trust and repose" directly with Plaintiffs; (2) the Service Agreements disclaimed the very duties that Plaintiffs allege form the basis of their claim; and (3) the SAC fails to allege any personal contacts between any of the Individual Defendants and any Plaintiff, let alone any allegations that any of the Individual Defendants assumed any fiduciary duty to Plaintiffs. SPA-119-23.

Plaintiffs complain that the district court "overlooked" allegations of the "pivotal marketing role" played by the Kingate Defendants that "inevitably involved direct contact" with them, thereby creating a fiduciary duty. App. Br. at 32. However, none of this is alleged in the SAC.[64] Allegations of "inevitable"

---

[64] The SAC merely makes a conclusory assertion that the undifferentiated "Kingate Defendants" "solicited investments" and "had substantial discretion and control over . . . the marketing of those Funds, and communications to Plaintiffs and the

56

contacts and theoretical marketing do not show that any Kingate Defendant

actually communicated with any Plaintiff. [65]

In any event, marketing and soliciting investments do not give rise to a

fiduciary duty to investors under BVI/Bermuda law.  Chivers Reply ¶¶ 52-53 (A-

2481-83); Hargun Reply ¶ 57 (A-2506); Evans Reply ¶ 27 (A-2516).  To the

contrary, such a marketer acts for the Fund, or for himself or herself, not for

investors.

Plaintiffs' argument that the IMs and Service Agreements supposedly gave

"various Kingate Defendants" responsibilities to distribute reports concerning the

---

Class."  SAC ¶¶ 3, 230 (A-843, 917).  These allegations are insufficient to
establish that any of the Kingate Defendants assumed a fiduciary duty of loyalty to
shareholders in the Funds.  Chivers Reply ¶¶ 52-53 (A-2481-83); Hargun Reply ¶
57 (A-2506); Evans Reply ¶ 27 (A-2516).

[65] Plaintiffs cannot rely on allegations lifted from an unrelated complaint to amend
their complaint on appeal.  Plaintiffs cite to paragraphs 16, 20 and 42 of Picard v.
FIM Advisers LLP & Ors. (Chancery Div. Case No. 80/10, Decision 27 May
2010), to support their assertion that the "FIM Entities" supposedly undertook a
fiduciary duty to them.  App. Br. at 32.  There, the court merely recounted
allegations made by the BLMIS Trustee in the context of a pre-action discovery
motion.  The district court correctly determined that it could not take judicial
notice of such allegations for their truth.  See Kramer v. Time Warner Inc., 937
F.2d 767, 774 (2d Cir. 1991) (courts will not take judicial notice of documents
filed in other courts "for the truth of the matters asserted in the other litigation, but
rather to establish the fact of such litigation").  Moreover, all of these allegations
relate only to supposed marketing of shares in the Funds by FIM Limited pursuant
to Distribution Agreements it had with KML.  The Distribution Agreements are not
mentioned in the SAC and, again, marketing or distributing shares does not create
any fiduciary relationship.

Funds, and thereby interact with Plaintiffs, similarly fails to create a fiduciary relationship. App. Br. at 32. Under BVI/Bermuda law, merely providing reports to shareholders on the Funds' performance or updating investors on that performance does not create any fiduciary duty of loyalty from the Funds' service providers to shareholders. Hargun Reply ¶ 57 (A-2506); Evans Reply ¶ 27 (A-2516).[66] Moreover, Plaintiffs' argument that the IMs stated that investors should direct any questions regarding the purchase of shares to KML is contradicted by the IMs, and does not demonstrate that KML undertook any fiduciary duty by responding to any theoretical questions that may have been posed. App. Br. at 33 (citing A-958).

None of the cases cited by Plaintiffs has any bearing on whether any Defendant assumed a fiduciary duty to them under BVI/Bermuda law. App. Br. at 33-34. These cases merely hold that a defendant cannot avoid a claim for misrepresentation, under federal or state law, based on general disclaimers where that defendant knowingly makes false statements. Plaintiffs' reliance on Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 416 (S.D.N.Y. 2010) ("Anwar II"),

---

[66] Moreover, Plaintiffs make no individualized assertions that Tremont Group, FIM (USA) or any of the Individual Defendants had any responsibility to provide reports to shareholders. Tremont Group and FIM (USA) are not mentioned in the IMs nor were they parties to contracts with the Funds. FIM's only obligations were to provide consulting services to KML, not to provide any information or reports to shareholders. SPA-132; see, e.g., A-970 (the "Consultant renders consulting advice to the Manager").

is similarly misplaced.  See App. Br. at 42-43, 46.  What creates a fiduciary duty under New York law is irrelevant to what gives rise to a duty under BVI/Bermuda law, which Plaintiffs concede applies to their claims.  App. Br. at 7.

The remainder of Plaintiffs' arguments are similarly contradicted by the agreements on which they rely.  Plaintiffs contend that the "Kingate Defendants" were obligated "to monitor and safeguard Plaintiffs' investments," App. Br. at 33,[67] but the IMs make clear that only the Investment Advisor (Madoff) had actual custody of the assets in the Funds' portfolios, and neither the Manager or Co-Manager of the Funds (let alone any other Defendants) had any obligation—fiduciary or otherwise—to independently verify the existence of those assets or the accuracy of the trading information provided by Madoff and BLMIS pertaining to them.[68]  See supra n.15 & n.39; see also SPA-121-22 (Service Agreements "made

---

[67] See also SAC ¶¶ 24(a), 70 (A-847-48, 862-63) (alleging KML, as Manager, was responsible for "selection," "evaluation," "oversight," and "monitor[ing]" of Madoff, and "evaluating and coordinating" services performed by others).

[68]  The IMs disclosed that KML and Tremont were entitled to rely on the information provided by Madoff, and had no duty to conduct "any due diligence to confirm the accuracy" of that information.  See SAC ¶ 77 (A-865-66); A-1283; A-1232; A-1166; A-1086; A-964; see also A-1551-52, 1556; A-1601, 1605; A-1673, 1677; A-1773, 1777; A-1850, 1854; A-1031, 1033.  With respect to FIM, the CSAs make clear that FIM did not undertake any obligation to monitor or safeguard Plaintiffs' investments, and contained a corresponding provision entitling FIM to rely on the information and documents provided to it pursuant to the CSAs without any obligation to verify its accuracy.  See A-1958-59 at § 2.4; A-1942-43 at § 2.4.

clear that the service providers could delegate their duties, and did not provide services directly to Plaintiffs," and even if KML or Tremont owed duties to the Funds (or FIM to KML), "the allegations do not support extension of those duties to Plaintiffs"); see also W. Palm Beach Police Pension Fund, 2010 WL 2949856, at *3 (noting that "the adviser [to the fund] owes fiduciary duties only to the fund, not to the fund's investors" and dismissing claim of breach of fiduciary duty against the manager of a BVI-domiciled hedge fund that invested with Madoff).

Plaintiffs' assertions that the "Kingate Defendants" owed them a fiduciary duty because these Defendants allegedly had access to information that Plaintiffs did not have, causing Plaintiffs to "repose their trust" in them, App. Br. at 33, 37 (citing SAC ¶¶ 230-31 (A-917-18)), have no basis in BVI/Bermuda law. See SPA-121 ("generalized allegations that the Defendants 'occupied a superior position' over Plaintiffs, had 'superior access to confidential information about Madoff,' and that "Plaintiffs relied upon the Defendants when deciding whether to invest and retain their investments in the Funds, are insufficient to create a relationship of trust and repose directly with Plaintiffs" under BVI/Bermuda law (citing SAC ¶¶ 231, 252, 287-88 (A-917, 922, 929)); see also Hargun ¶ 139 (A-2148); Evans ¶ 77 (A-2177); Chivers ¶¶ 93-94 (A-1431-32); Browne-Wilkinson ¶ 38 (A-2199).

As the district court correctly held, the fiduciary duty claim against the Individual Defendants is even more strained. The SAC does not allege any

60

relationship whatsoever, let alone a fiduciary one, between any Plaintiff and any of these four individuals. None of the Individual Defendants undertook any obligations to Plaintiffs, contractual or otherwise. The Individual Defendants merely functioned as officers and directors of their own companies, and only owed fiduciary duties to those companies (Tannenbaum to KML, Manzke to Tremont Group, and Grosso and Ceretti to the FIM Entities)—not to the shareholders of those companies or to the shareholders of another company. SPA-118-20; Chivers ¶¶ 85, 90 (A-1428, 1430); Bompas ¶¶ 130-31 (A-814)); see also Mov. Br. at 71-73; Joint Reply Memorandum of Law in Support of All Defendants' Motion to Dismiss the Corrected Second Amended Consolidated Class Action Complaint at 50-53, No. 09 Civ. 5386 (DAB), ECF No. 226 ("Reply Br.").[69]

Plaintiffs argue on appeal that the SAC alleges the "Individual Defendants" had "frequent and continuous contacts with investors," and that these "interactions led Plaintiffs to make new or subsequent investments." App. Br. at 35.[70] This is

---

[69] Directors and officers of a company cannot be held liable for the breach of any supposed fiduciary duty owed by those entities to the Funds, much less to investors. Nor may a parent company like Tremont Group or other affiliates such as FIM (USA) be held responsible for any such duties. Chivers ¶¶ 85, 90 (A-1428, 1430); Hargun ¶¶ 28-31, 48, 118, 137-39, 141 (A-2108-10, 2115, 2418-49); Evans ¶¶ 24-25, 31, 58, 75-77, 79 (A-2165-66, 2173-74, 2177).

[70] Plaintiffs cite to SAC ¶¶ 3, 5, 38, 68, 198, 230-33, 262-74, 286-91, 304-08 (A-843-44, 852-53, 862, 906-07, 917-18, 924-26, 929-30, 932). However, SAC ¶¶ 5, 38, 262-74, 286-291 and 304-08 (A-844, 852, 924-26, 929-30, 932) only relate to Citi Hedge or PwC Bermuda, do not allege interactions between Plaintiffs and

61

frivolous. The paragraphs cited by Plaintiffs do not allege the Individual

Defendants had any "personal contact" with any Plaintiff; instead, they allege

interactions between the Individual Defendants and the other Defendants or with

Madoff. See SAC ¶¶ 58, 61-63, 81 (A-859-60, 867); see also SPA-120. Plaintiffs'

attempt to amend their SAC on appeal by incorporating allegations made in an

unrelated complaint, App. Br. at 35 n.14, is (again) improper, as described supra,

and is also misplaced: allegations that Grosso or Ceretti (as representatives of

FIM) prepared materials for KML and/or participated in preparing public filings

(as KML's Consultant) for the Funds do not suggest any contact with Plaintiffs,

nor create any fiduciary relationship with them.[71] Plaintiffs' argument that Manzke

those Defendants, and do not even mention the Individual Defendants. App. Br. at 35. Further, Plaintiffs' characterization of SAC ¶¶ 68 (A-862) and 198 (A-906-07) is disingenuous. SAC ¶ 68 (A-862) merely alleges that an unnamed potential investor contacted a representative of KML for information regarding the Funds, and that KML's representative advised (among others) Grosso and Ceretti that KML did not have the information. SAC ¶ 198 (A-906-07) alleges that a prospective investor contacted Hemisphere to discuss Madoff, and Ceretti responded to the Hemisphere representative to refrain from further contact with this supposed potential investor. As the district court correctly recognized, the absence of communication with a potential investor cannot create a fiduciary duty to that potential investor, let alone to all actual shareholders in the Funds. SPA-120.

[71] Hargun ¶¶ 42-47 (A-2114-15); Evans ¶ 31 (A-2166); Chivers ¶¶ 88-90 (A-1429-30); Chivers Reply ¶¶ 48, 53 (A-2479, 2482-83). Moreover, Plaintiffs' assertion that Grosso and Ceretti are "identified as the contact persons in the IMs" is false. They are merely identified as "founder members of the Consultant" and listed in the "Directory" in FIM's mailing address. See, e.g., A-1782-83, 1764. This creates no fiduciary duty.

62

was "personally involved in marketing solicitation and investor relations," App. Br. at 35, is not supported by any allegations in the SAC. <u>See</u> SPA-120 (citing SAC ¶ 58). And again, marketing and soliciting investments in the Funds do not give rise to a fiduciary duty to investors under BVI/Bermuda law. Moreover, Plaintiffs appear to have waived any claims against Tannenbaum. As the district court noted, the SAC "contains no specific allegations whatsoever regarding Tannenbaum's conduct," SPA-121, and on appeal, Plaintiffs do not even mention him.

Finally, though the district court did not reach this issue because it was obvious the "Kingate Defendants" owed no fiduciary duties to Plaintiffs, SPA-123-24 n.48, there are no allegations in the SAC that any Kingate Defendant breached such a duty. The district court correctly noted that allegations of mismanagement are insufficient to show a breach claim under BVI/Bermuda law. SPA-122. To state such a claim, at a minimum, Plaintiffs were required to plead facts demonstrating that these defendants acted with "disloyalty" or "infidelity." SPA-123 n.48; <u>see also</u> Hargun Reply ¶ 59 (A-2507); Evans Reply ¶ 27 (A-2516). They clearly did not.

**2. The SAC Fails to State a Breach of Fiduciary Duty Claim Against Citi Hedge**

BVI/Bermuda law is clear that a fiduciary relationship arises where, unlike here, someone "has undertaken to act for or on behalf of another in a particular

matter in circumstances which give rise to a relationship of trust and confidence." Browne-Wilkinson ¶ 35 (A-2198) (citing Bristol & W. Bldg. Society v. Mothew [1998] Ch. 1, at 18A-F). The district court was accordingly correct to dismiss the fiduciary duty claim as to Citi Hedge, holding that: (1) any duties that Citi Hedge owed to the Funds (and not Plaintiffs) were limited by the Administration Agreements, which, *inter alia*, did not establish a fiduciary relationship with Plaintiffs; and (2) that Citi Hedge was not obligated to oversee Madoff's operations or check his underlying data. SPA-122-23; A-1398 at ¶ 10.6 ("The Administrator is not liable for the accuracy of the underlying data provided to it."); A-2094 at ¶ 10.6 (same); A-1398 at ¶ 10.3 (disclaiming liability in the absence of gross negligence, willful default or fraud, and acknowledging that Citi Hedge had no discretionary authority or control with respect to management, and was not a fiduciary); A-2094 at ¶¶ 10.3, 10.7 (same).

Plaintiffs mischaracterize the district court's holding in arguing that Citi Hedge's ministerial responsibilities imposed on it fiduciary duties to Plaintiffs. App. Br. at 36. As an initial matter, nothing in the Administration Agreements or IMs required Citi Hedge to "market shares" and there are no well-pleaded allegations that Citi Hedge in fact marketed shares to Plaintiffs. Otherwise, allegations that Citi Hedge complied with its contractual duties to market shares, communicated with shareholders when processing Fund subscriptions and

64

redemptions and disseminated the Funds' monthly performance reports do not show that Citi Hedge owed (or somehow breached) any fiduciary duties to investors. Browne-Wilkinson Reply ¶ 53 (A-2543).[72]

Plaintiffs also selectively quote the language of the IMs to try to impose on Citi Hedge duties that it never undertook, App. Br. at 36, ignoring the IM language specifying Citi Hedge's obligations with respect to calculating the NAV:

> The Administrator will determine the net asset value of the Fund's Portfolio assets attributable to the USD Shares as of the close of business on the last Business Day of each calendar month. See "CERTAIN RISK FACTORS". The Administrator verifies the prices attributed to the securities held by the USD Shares of the Fund by reference to pricing sources independent of the Investment Advisor whenever reasonably possible[.]

E.g., A-978. Plaintiffs argue that Citi Hedge "was on notice of inconsistencies and inaccuracies in the trading information provided by Madoff" and should have monitored and investigated Madoff's operation. App. Br. at 36-37. But nothing in the Administration Agreements imposed any duties on Citi Hedge to monitor or investigate Madoff. See generally A-1398, 2094 at ¶ 10.6.

---

[72] Although the district court acknowledged that Plaintiffs pleaded "more direct contact between Plaintiffs and the Administrator than the other Defendants," SPA-135, it did not recognize that such allegations suggested an "agency" relationship or that such allegations established an assumption of fiduciary duties by Citi Hedge. Contra App. Br. at 36.

Plaintiffs place much emphasis on the Administration Agreements' references to "pricing sources independent of the Investment Advisor whenever reasonably possible," App. Br. at 36, but there are no well-pleaded allegations in the SAC that Citi Hedge failed to identify any errors as to month-end pricing, the only time when Citi Hedge determined the Funds' NAV. Nor do Plaintiffs explain how purported errors in month-end pricing would have alerted Citi Hedge that Madoff was in fact running a Ponzi scheme. Indeed, contrary to Plaintiffs' incorrect assertion that Citi Hedge "had a duty to verify this information from a source independent from Madoff," SAC ¶ 181 (A-900-01), the IMs explicitly allowed Citi Hedge to rely on "information provided by the Investment Advisor." See, e.g., A-965, 978; see also A-1398 at ¶ 10.6; A-2094 at ¶ 10.6. There is no basis in BVI/Bermuda law to impose on Citi Hedge duties besides those set forth in the Administration Agreements, much less create out of whole cloth the "fiduciary duties" asserted by Plaintiffs to support their claims. See Hargun ¶ 45 (A-2115) ("[e]quity will not impose a fiduciary obligation which is inconsistent with the terms agreed").

Implicit in Plaintiffs' argument that Citi Hedge should have investigated Madoff is the presumption that had Citi Hedge undertaken such an investigation, it would have been the only institution in the world to learn that Madoff was a Ponzi scheme, rescuing shareholders that invested in the Funds after this proposed date of

66

discovery. This proposition ignores the "most compelling inference as to why Madoff's fraud went undetected for two decades"—"his proficiency in covering up his scheme and deceiving the SEC and other financial professionals." Meridian Horizon Fund, LP v. KPMG (Cayman), 487 F. App'x 636, 640-41 (2d Cir. 2012) (red flags "were not only plainly disclosed to plaintiffs . . . but also to, *inter alios*, investors in and auditors of other Madoff feeder funds, and the SEC, none of whom discovered the Madoff scheme"); see also DeLollis v. Friedberg, Smith & Co., P.C., 600 F. App'x 792, 796 (2d Cir. 2015) ("Numerous actions brought against auditors and investment advisors by victims of Madoff's fraud have been dismissed despite the presence of 'red flags,' which in hindsight arguably should have called attention to Madoff's illegal conduct."); S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 112 (2d Cir. 2009) (allegations that defendants "would" have learned the truth if they had performed more due diligence are insufficient to prove fraud or recklessness).[73]

---

[73] Plaintiffs further mischaracterize the district court's holding by suggesting that the court "concluded that the disclaimer in the Administration Agreement gave blanket immunity to Citi Hedge." App. Br. at 36. The district court imposed no such "blanket immunity." Rather, it gave meaning to the contractual provisions governing Citi Hedge's relationship with the Funds in which Plaintiffs, sophisticated investors with appropriate "knowledge, expertise and experience in financial matters," invested. See, e.g., A-996; SPA-122-23.

**C.     The District Court Correctly Held That Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claims Against Tremont Group (Count 13), PwC Bermuda (Count 19) and Citi Hedge (Count 26) Fail**

Plaintiffs reiterate their arguments, rejected below, to support claims for "dishonest assistance" (the BVI/Bermuda equivalent of aiding and abetting breach of fiduciary duty) against Tremont Group, PwC Bermuda and Citi Hedge. But the district court correctly dismissed these claims. Plaintiffs failed to plead the elements of "dishonest assistance" under BVI/Bermuda law as to any Defendant, which requires pleading (1) a primary breach of fiduciary duty owed by a defendant or third party to Plaintiffs, (2) assistance provided by other defendants to the primary wrongdoer to commit the breach, and (3) that those defendants acted with a dishonest state of mind when assisting the primary wrongdoer. See Hargun ¶ 160 (A-2152); Evans ¶ 98 (A-2181); Browne-Wilkinson ¶¶ 68-70 (A-2208); Dohmann ¶ 88 (A-2242-43).

First, as described above, the SAC does not state that there were any underlying breaches of fiduciary duties to Plaintiffs by Tremont, the KML Defendants or the FIM Defendants, a necessary predicate for a claim of dishonest assistance. See, e.g., Hargun ¶¶ 160-63 (A-2152-53); Evans ¶¶ 98-101 (A-2181); Dohmann ¶¶ 84-89 (A-2241-43); Browne-Wilkinson ¶ 69 (A-2208).

Second, Plaintiffs fail to sufficiently allege that Tremont Group, PwC Bermuda or Citi Hedge assisted any Defendant alleged to have breached such

68

duties.  App. Br. at 39-40.  The mere fact that Tremont Group owned Tremont, SAC ¶ 25 (A-848-49), does not mean that Tremont Group assisted Tremont in any conduct.  See Hargun ¶ 164 (A-2153); Evans ¶ 102 (A-2182); Hargun Reply ¶ 64 (A-2508); Evans Reply ¶ 31 (A-2517).  Plaintiffs merely allege that Citi Hedge and PwC Bermuda performed services under their respective agreements with the Funds, not that either participated in any supposed breach by any other defendant. Browne-Wilkinson ¶¶ 69, 71 (A-2208-09); Dohmann ¶¶ 88-89 (A-2242-43).  This remains true despite Plaintiffs' conclusory allegation that Citi Hedge performed these services "[w]ith knowledge that the Kingate Defendants were breaching their fiduciary duties."  SAC ¶ 320 (A-934-35).  Under BVI/Bermuda law, mere awareness that the Kingate Defendants were supposedly in breach of their fiduciary duties is insufficient to support a claim of dishonest assistance.  Browne-Wilkinson ¶ 71 (A-2209).

Finally, the SAC does not allege how or why Tremont Group, Citi Hedge or PwC Bermuda acted dishonestly.  Plaintiffs did not allege that these defendants had "actual knowledge" of any supposed breach of fiduciary duty.  See Hargun ¶¶ 165-66 (A-2153-54); Evans ¶¶ 103-04 (A-2182); Browne-Wilkinson ¶¶ 70-71 (A-2208-09); Dohmann ¶¶ 88-89 (A-2242-43); Browne-Wilkinson Reply ¶ 60 (A-2545-46); see also Royal Brunei Airlines v. Tan, [1995] 2 AC 378 (discussing dishonest state of mind requirement).  At most, Plaintiffs have pleaded that these

69

defendants had constructive knowledge, which is insufficient to plead dishonesty as a matter of BVI/Bermuda law.  See Hargun ¶¶ 165-66 (A-2153-54); Evans ¶¶ 103-04 (A-2182); Browne-Wilkinson ¶¶ 70-71 (A-2208-09); Dohmann ¶¶ 88-89 (A-2242-43); Browne-Wilkinson Reply ¶ 60 (A-2545); Royal Brunei Airlines, [1995] 2 AC 378.

### D. The District Court Correctly Held That Plaintiffs' Gross Negligence Claims Against All Defendants (Counts 5, 15 and 22) Fail

As Plaintiffs conceded, and the district court correctly noted, "BVI/Bermuda law does not recognize a cause of action for gross negligence."  SPA-126; see also App. Br. at 40 ("gross negligence is not recognized as a formal cause of action"); Bompas ¶ 121 (A-811); Bompas Further ¶ 110 (A-2296); Diel ¶ 44 (A-448); Hargun ¶¶ 125-26 (A-2146); Evans ¶¶ 63-64 (A-2175); Chivers ¶ 98 (A-1433); Browne-Wilkinson ¶ 43 (A-2200-01); Dohmann ¶¶ 63-68 (A-2234-36); Hargun Reply ¶¶ 49-50 (A-2503); Evans Reply ¶¶ 23-24 (A-2516); Chivers Reply ¶ 41 (A-2477); Dohmann Reply ¶¶ 32-33 (A-2562).

Plaintiffs nevertheless ask this Court to expand BVI/Bermuda law to recognize a claim for gross negligence.  App. Br. at 41.  That request is clearly improper.  Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 491 (S.D.N.Y. 2006), aff'd, 233 F. App'x 83 (2d Cir. 2007) (federal courts should be "hesitant . . . when [applying foreign law] would necessarily involve expanding, extending, or

70

departing from well-settled and long established principles of foreign law").[74] The district court's decision dismissing this claim as to all Defendants should be affirmed.

### E. The District Court Correctly Held That Plaintiffs' Negligence Claims Against All Defendants (Counts 6, 16 and 23) Fail

The district court correctly dismissed Plaintiffs' negligence claims against the Kingate Defendants, Citi Hedge and PwC Bermuda. SPA-131, 135-36, 139-40. As the court noted, the negligence claims "largely mirror those made with respect to the breach of fiduciary duty claims." SPA-131. Plaintiffs do not dispute this and because, as described supra, Plaintiffs fail to state breach of fiduciary duty claims, they also fail to state claims for negligence, which likewise require Plaintiffs to allege that Defendants owed Plaintiffs a duty of care, breached that duty and proximately caused injury to Plaintiffs by that breach. See Hargun ¶ 49 (A-2116); Evans ¶ 32 (A-2166-67); Chivers ¶ 99 (A-1433-34); Dohmann ¶¶ 63, 69-75 (A-2234-39).

---

[74] Moreover, Plaintiffs' "gross negligence" claim would fail even under their newly-created BVI/Bermuda cause of action because Defendants did not act negligently, see infra Section II.E, let alone with "serious negligence." App. Br. at 41.

### 1. Kingate Defendants

The district court correctly held that, under applicable BVI/Bermuda law, Plaintiffs failed to allege that any of the Kingate Defendants assumed any duty to them, let alone the "special relationship" required to state a negligence claim. SPA-131-35. Any duties owed by the Kingate Defendants were owed to their respective entities or to the Funds (or in the case of FIM, to KML)—not to Plaintiffs. See Hargun ¶¶ 52, 62, 65 (A-2118, 2122-23); Evans ¶¶ 33-36 (A-2167-68); Chivers ¶¶ 99-125, 157-60 (A-1433-44, 1451-52); Hargun Reply ¶ 55A (A-2505-06); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶ 40A (A-2476-77). The district court also correctly held that the scope of any duty owed by any Kingate Defendant to the Funds or KML was informed by the Service Agreements between those parties, which make explicit any obligations being undertaken by these Defendants. SPA-131-35. As the district court explained, given the relationships between the parties, the disclosures in the IMs and the disclaimers in the Service Agreements, the determination that any Kingate Defendant assumed a duty to Plaintiffs fails for lack of foreseeability, proximity and fairness. See Hargun ¶¶ 50, 131 (A-2116, 2147); Evans ¶¶ 33, 69 (A-2167, 2176); Chivers ¶¶ 100-01 (A-1434); see also Mov. Br. at 81.

Plaintiffs nevertheless claim that the "Kingate Defendants" all solicited them to invest in the Funds and Plaintiffs relied on supposed "misrepresentations" by

72

these Defendants.  App. Br. at 41-42.[75]  Again, however, this fails for two reasons: (1) none of this was pleaded in the SAC, and (2) a marketer of shares in a Fund does not assume any duty to investors under BVI/Bermuda law.  Chivers Reply ¶¶ 52-53 (A-2481-83); Hargun Reply ¶ 57 (A-2506); Evans Reply ¶ 27 (A-2516).  Nor is any duty created because Plaintiffs unilaterally determined to rely on the Kingate Defendants' alleged superior knowledge—BVI/Bermuda law is to the contrary.  Hargun Reply ¶ 52.3 (A-2504); Evans Reply ¶ 27 (A-2516); Chivers Reply ¶¶ 45-46, 50 (A-2478-79, 2480).

The district court also correctly rejected Plaintiffs' assertions that the exculpation provisions and disclaimers of duty in the IMs and Service Agreements somehow <u>create</u> rather than <u>negate</u> a duty to them.  SPA-132-34; App. Br. at 43.  Simply put, Plaintiffs have it backwards.  Under BVI/Bermuda law, no duty is assumed by virtue of disclaiming any such duty.  <u>See</u> Hargun ¶¶ 68-79, 133-34 (A-2125-28, 2148); Evans ¶¶ 36, 71-72 (A-2168, 2176); Chivers ¶¶ 118-26, 158 (A-

---

[75] To the extent that Plaintiffs' negligence claim against the Kingate Defendants is premised on misrepresentations and inducement, it is a Group 2 claim and would be precluded under SLUSA.  <u>See</u> <u>infra</u> Section III.  Plaintiffs concede this by quoting <u>Anwar II</u>, 728 F. Supp. 2d at 416, where the court was considering inducement allegations in the context of a claim for negligent misrepresentation— not a claim for negligence—which the <u>Anwar</u> court later determined was precluded by SLUSA after this Court's decision in <u>Kingate</u>.  <u>Anwar v. Fairfield Greenwich Ltd.</u>, 118 F. Supp. 3d 591, 606 (S.D.N.Y. 2015).  Moreover, <u>Anwar II</u> (which considered only New York law) is irrelevant to whether any Kingate Defendant owed any duty under BVI/Bermuda law.

73

1441-44, 1452); Hargun Reply ¶ 47 (A-2502); Evans Reply ¶ 21 (A-2515);

Chivers Reply ¶¶ 37-40 (A-2475-76); see also SPA-132-34.[76]

Nor, as the district court held, do Plaintiffs allege that the "Kingate

Defendants" breached any duty of care.  Plaintiffs' negligence claims are premised

on their assertion that the Kingate Defendants should have undertaken due

diligence and verified the information provided by Madoff.  But KML and

Tremont, and FIM as KML's Consultant, had no obligation to oversee Madoff or

verify his underlying data.  See Hargun ¶¶ 75-79, 133-34 (A-2127-28, 2148);

Evans ¶¶ 36, 71-72 (A-2168, 2176); Chivers ¶¶ 118-26, 158 (A-1441-44, 1452);

Browne-Wilkinson ¶¶ 55-56 (A-2205); see also A-1283 (Managers were

contractually entitled to "rely on such information" received from Madoff and

were "not required to undertake any due diligence to confirm the accuracy

thereof"); A-1957-60 at §§ 2.2, 2.4, 3 (FIM was entitled to rely on the "authenticity

and completeness" of all documents it received in relation to the Fund); A-1941-44

at §§ 2.2, 2.4, 3 (same); A-1945 at § 9; A-1961 at § 9.  The district court correctly

concluded that these Defendants did not "assum[e] responsibility for checking the

---

[76] Plaintiffs do not even articulate how the Service Agreements give rise to any duty from Tremont Group, FIM (USA) or the Individual Defendants.  Although these Defendants are included in the scope of the exculpation provisions in the Service Agreements between their respective affiliates and entities, the mere fact that an exculpation provision covers affiliates, officers and directors of an entity does not give rise to any special relationship.  See SPA-133 n.53; Hargun Reply ¶ 47 (A-2502); Evans Reply ¶ 21 (A-2515); Chivers Reply ¶¶ 37-40 (A-2475-76).

information provided by Madoff" and therefore breached no duty by failing to do so.  SPA-134-35; see also A-1232; A-1556; A-1605; Hargun Reply ¶ 44 (A-2501-02); Chivers Reply ¶ 67 (A-2489); contra. App. Br. at 33-34.[77]

### 2.     Citi Hedge

Plaintiffs likewise fail to establish that Citi Hedge entered into a special relationship with them, as is required to sufficiently allege negligence under BVI/Bermuda law.  Browne-Wilkinson ¶¶ 45-46 (A-2201).  Citi Hedge's duties were to the Funds.  Although Plaintiffs suggest that Citi Hedge's direct contacts with shareholders created a special relationship, App. Br. at 44, the SAC is devoid of a single allegation of any specific communication between Citi Hedge and any Plaintiff.  Nor are Plaintiffs correct when they try to locate the source of Citi Hedge's purported duties in the Administration Agreements.  See Browne-Wilkinson ¶¶ 53-54 (A-2204-05); see also SPA-135.

And again, despite Plaintiffs' assertion to the contrary, App. Br. at 44, Citi Hedge had no duty to oversee Madoff or review his underlying data.  See, e.g., A-1087 (Citi Hedge entitled to "rely upon appropriate pricing services and information provided by the Investment Advisor."); A-965; A-1398 at ¶¶ 10.3,

---

[77] The SAC fails to allege how Tremont Group, FIM (USA), or the Individual Defendants breached any supposed duties to the shareholders.

75

10.6 (Citi Hedge "not liable for the accuracy of the underlying data provided to it.").

To the extent Citi Hedge had any duties with respect to the calculation of the NAV, such pricing obligations were limited to the calculation of the NAV "as of the close of business on the last Business Day of each calendar month." E.g., A-978. There is no well-pleaded allegation that errors existed as to month-end pricing or that Citi Hedge failed to identify any errors as to month-end pricing. Unable to identify any act by Citi Hedge in violation of a duty allegedly owed to Plaintiffs, Plaintiffs try to subject Citi Hedge to liability based on "knowledge that Citi Hedge had to the effect that Madoff was likely engaged in improprieties." App. Br. at 44. But this is nothing more than a lawyer's argument. Nothing in the SAC supports this purported knowledge by Citi Hedge of Madoff's "improprieties," and the district court was correct to hold that Citi Hedge had no generalized investigative duty to discover Madoff's fraud. SPA-135-36; see also Browne-Wilkinson ¶¶ 52-56 (A-2204-05).

### 3. PwC Bermuda

As the district court concluded, the same is true with respect to PwC Bermuda.

As an auditor, PwC Bermuda "does not owe any general duty of care" to Plaintiffs under BVI/Bermuda law. A-2237; A-2559. Absent a showing of a

special or fiduciary relationship between PwC Bermuda and any Plaintiff, the firm's duty is owed solely to the Funds. Id. This is true even if PwC Bermuda had "grounds to believe" that the Funds might encourage shareholders to rely on the audit reports in making investment decisions. A-2560-62.

Like Citi Hedge, Plaintiffs failed to establish that PwC Bermuda entered into a special relationship with them. The SAC does not identify any direct communications between PwC Bermuda and any Plaintiff, nor does it even allege that PwC Bermuda knew of the identity of any particular Plaintiff. Plaintiffs' negligence claim rests entirely on audit opinions prepared by PwC Bermuda that were delivered by PwC Bermuda to the Funds. SAC ¶¶ 262-66 (A-924-25). However, the Auditor Agreements precluded any duties to the Funds' shareholders, expressly stating that the firm's audit reports were "intended for the benefit of the Funds" and that the audits "were not planned or conducted in contemplation of reliance by any third party with respect to any specific transaction." A-1997; SPA-136-38.

Moreover, even assuming the existence of some duty from PwC Bermuda to any particular Plaintiff, the district court correctly concluded that the scope of such duty was limited by the disclaimers in the Auditor Agreements. SPA-137-38. Each Auditor Agreement expressly limited PwC Bermuda's liability to acts of "willful misconduct" or "fraudulent behavior." E.g., A-2000. Thus, to state any

77

negligence claim, Plaintiffs were required to plead facts showing breach of the duty of loyalty—not the duty of care. Like Citi Hedge, PwC Bermuda had no duty to oversee Madoff or review his underlying data. See, e.g., A-1997-99 (PwC Bermuda entitled to rely on information provided by the Funds in forming its opinions on the Funds' financial statements). As a result, in dismissing the negligence claim against PwC Bermuda, the district court correctly concluded that PwC Bermuda had no duty to verify information provided to it by the Funds or conduct checks on the internal controls at Madoff, nor did it breach any duty to Plaintiffs by failing to do so. SPA 137-38.

**F. Plaintiffs Fail to State Claims for Negligent Misrepresentation Against PwC Bermuda (Count 17) and Citi Hedge (Count 24)**

In addition to affirming the district court's dismissal of Plaintiffs' negligent misrepresentation claims against PwC Bermuda (Count 17) and Citi Hedge (Count 24) on standing and SLUSA grounds, see supra Section I.A and infra Section III.A, this Court should also dismiss Counts 17 and 24 because they fail to state viable negligent misrepresentation claims under BVI/Bermuda law—an argument the district court did not address in light of its other holdings.

Under the Rule 9(b) pleading standard, Plaintiffs fail to state a claim for negligent misrepresentation against Citi Hedge or PwC Bermuda for several reasons. See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566,

583 (2d Cir. 2005) (applying Rule 9(b) to negligent misrepresentation claims).[78]

First, as discussed above, neither Citi Hedge nor PwC Bermuda owed any duty to

Plaintiffs because no special relationship was pleaded. Second, there are no

allegations in the SAC describing which communication(s) from either of these

Defendants to any Plaintiff was false, or where and when any Plaintiff received

such "misrepresentation." See, e.g., Anschutz Corp. v. Merrill Lynch & Co., Inc.,

690 F.3d 98, 108 (2d Cir. 2012). Third, BVI/Bermuda law does not impose a duty

to protect another from suffering financial loss caused by the deliberate acts of a

third party. Browne-Wilkinson ¶¶ 49-50 (A-2203). Fourth, as discussed above,

the IMs, Administration Agreements and Auditor Agreements did not impose any

duty on PwC Bermuda or Citi Hedge to verify the underlying information on

which any "representations" were based. And, finally, the Administration and

Auditor Agreements exculpate PwC Bermuda and Citi Hedge for representations

made in reliance on data received from Madoff or the Funds, which do not rise to

the level of "gross negligence, willful default or fraud" in the case of Citi Hedge or

---

[78] The district court incorrectly held that, besides mutual mistake, none of Plaintiffs' claims were subject to the 9(b) standard, even though all of their claims sound in dishonesty and recklessness. SPA-117 n.45; contra Schwartzco Enter. LLC v. TMH Mgmt., LLC, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (non-fraud claims are subject to 9(b) because the complaint branded defendants "as liars, not thieves"). Regardless of whether 9(b) applies to all of Plaintiffs' non-mistake claims, this Court has definitively held that the heightened standard applies to negligent misrepresentation. Aetna, 404 F.3d at 583.

the level of "willful misconduct" or "fraudulent behavior" in the case of PwC Bermuda. A-1398, A-2094, at ¶ 10.3; see Browne-Wilkinson ¶¶ 53-54 (A-2204-05); A-2000.

>    **G.**     **The District Court Correctly Held That Plaintiffs' Claims For Third Party Beneficiary Breach of Contract Against KML and Tremont (Count 9), the FIM Entities (Count 10), PwC Bermuda (Count 18) and Citi Hedge (Count 25) Fail**

Plaintiffs' third-party beneficiary breach of contract claims were properly dismissed because non-parties to a contract have no right to recover damages for an alleged breach of that contract under existing BVI/Bermuda law. SPA-140; Hargun ¶¶ 32-33, 109-10, 144-49 (A-2110, 2141, 2149-50); Evans ¶¶ 26-27, 49-50, 82-87 (A-2165, 2171, 2178-79); Chivers ¶¶ 129-30 (A-1445); Browne-Wilkinson ¶ 63 (A-2207); Dohmann ¶¶ 78-83 (A-2240-41). Plaintiffs concede this, but argue the district court should have allowed their claims to proceed on the theory that BVI/Bermuda might at some point in the future follow other Commonwealth jurisdictions and eliminate the "strict privity" requirement. App. Br. at 48. However, the district court correctly determined that it was required to apply current foreign law, and was not at liberty to expand, extend or depart from it. SPA-140; see Gilstrap v. Radianz Ltd., 443 F. Supp. 2d at 491 (courts should be hesitant to "expand[], extend[], or depart[] from well-settled and long established principles of foreign law").

80

Plaintiffs' newfound reliance on Bermuda's Contracts (Rights of Third Parties) 2016 statute, which they claim is a "reflection" on Bermuda common law that allows non-parties to assert breach of contract claims, App. Br. at 49, is disingenuous. First, the statute, which was enacted in March 2016 (yet Plaintiffs and their expert failed to mention in their submissions below) expressly states that it only applies prospectively and not retroactively, so it would not apply to any of the Service Agreements since they were all entered into years before the statute's enactment. Bermuda Contracts (Right of Third Parties) Act 2016 at § 3. Second, the statute maintains the strict privity requirement, unless parties expressly contract to benefit third parties. Id. at § 4 (non-parties can sue for breach if: (a) "the third party is expressly identified in the contract" and (b) "the contract expressly provides in writing that the third party may enforce such term of the contract"). In other words, even were the Court to consider this prospective statute as a reflection of "current" Bermuda law, the law does not apply because the Service Agreements do not identify Plaintiffs expressly (or at all), and all contain anti-assignment and no-third-party beneficiary clauses.[79] Plaintiffs' third-party beneficiary breach of contract claims fail for several additional reasons that the district court did not

_____

[79] A-2453 at § 5.11; A-1935 at § 5.11; see also A-1921-22 at § 4.12, 4.15; A-1949 at § 17; A-1400 at ¶ 17; A-2082 ("The Funds agree that they will not, directly or indirectly, agree to assign or transfer any claim"); Hargun ¶¶ 109-10, 147 (A-2141, 2150); Evans ¶¶ 49-50, 85 (A-2171, 2178); Chivers ¶¶ 130-31 (A-1445-46); Dohmann ¶¶ 78-83 (A-2240-41); Mov. Br. at 87-89; Reply Br. at 65-66.

81

reach, but would also require affirmance.  See Mov. Br. at 87-89; Reply Br. at 65-68.[80]

> **H.     The District Court Correctly Held That Plaintiffs' Claims For Constructive Trust and Mutual Mistake Against the Kingate Defendants (Counts 11 and 12) and Unjust Enrichment Against All Defendants (Count 28) Fail**

BVI/Bermuda law does not recognize constructive trust as a "claim" for "restitution."  Hargun ¶¶ 150-51 (A-2150); Evans ¶¶ 88-89 (A-2179); Chivers ¶¶ 134-37 (A-1446-47).[81]  Plaintiffs conceded this below, and thus waived any argument as to their "claim" for constructive trust (Count 11).  See Plaintiffs' Memorandum of Law in Opposition to the Joint Motion of All Defendants to Dismiss the Corrected Second Amended Consolidated Class Action Complaint

---

[80] For example, even if Plaintiffs could properly assert a third-party beneficiary breach of contract claim (which they cannot), Plaintiffs failed to plead any facts demonstrating that KML, Tremont, FIM or Citi Hedge breached their respective agreements.  Mov. Br. at 89-92; Reply Br. at 66-68.  Moreover, there is no basis under BVI/Bermuda law to assert a breach of contract claim against FIM (USA), which was not a party to any agreement at all and was not even formed until January 2005, long after the CSAs were executed.  Chivers ¶ 132 (A-1446); SAC ¶¶ 27, 28(b), 29 (A-849-50); see generally A-1956 at ¶ 1, A-1262 (identifying "Consultant" as either FIM Limited or FIM Advisers).

[81] The district court dismissed all three of these claims, but the court and Plaintiffs apparently confused the SAC counts.  See SPA-141 (referencing mutual mistake and constructive trust (instead of mutual mistake and unjust enrichment) as the two restitution claims); App. Br. at 49-50 (referencing Counts 11 (constructive trust) and 28 (unjust enrichment) as "unjust enrichment and restitution," and omitting any reference to mutual mistake (Count 12)).  As the foreign law declarations make clear, only mutual mistake and unjust enrichment are considered restitution "claims."  See infra 83.

82

dated May 6, 2016 at 145-46, No. 09 Civ. 5386 (DAB), ECF No. 214 ("Opp. Br.");

Reply Br. at 75; S.E.C. v. Syron, 934 F. Supp. 2d 609, 631 (S.D.N.Y. 2013); SPA-

141 n.57.[82]

BVI/Bermuda law considers mutual mistake and unjust enrichment as claims

for restitution. SPA-141; Hargun ¶¶ 102 n.20, 103-05, 122, 124, 153.4, 169 (A-

2138-39, 2144-45, 2151, 2154); Evans ¶¶ 48, 62, 91.4, 107 (A-2170, 2174, 2180,

2183); Chivers ¶¶ 140, 150 (A-1447, 1449-50); Browne-Wilkinson ¶¶ 73-76 (A-

2209-10); Dohmann ¶ 91 (A-2243-44). The district court analyzed these as such,

and correctly determined, *inter alia*, that the SAC did not allege two critical

requirements of a restitution claim against any Defendant: that the Plaintiffs were

the "payors" of the amounts they seek to recover, and that there was a total failure

---

[82] While BVI/Bermuda law permits a constructive trust to be imposed as an equitable remedy under certain circumstances, Plaintiffs are not entitled to that remedy here because: (1) there are no allegations of a fiduciary relationship between them and any of the KML Defendants, the Tremont Defendants or the FIM Defendants under BVI/Bermuda law, Hargun ¶¶ 152-53 (A-2150-51); Evans ¶¶ 90-91 (A-2179-80); Chivers ¶ 136 (A-1446); (2) they are not the "payors" of any management or consulting fees paid under the Service Agreements, Hargun ¶ 153 (A-2151); Evans ¶ 91 (A-2179-80); Chivers ¶ 137 (A-1447); Mov. Br. at 94 n.91; (3) a constructive trust cannot be imposed over fees paid pursuant to valid contractual arrangements, which would preclude recovery of all fees paid here, Hargun ¶ 153 (A-2151); Evans ¶ 91 (A-2179-80); and (4) Tremont Group, FIM (USA) and the Individual Defendants are not alleged to have received any fees from the Funds (or Plaintiffs) so there are no amounts over which any such trust could be imposed as to them, Hargun ¶¶ 152-53 (A-2150-51); Evans ¶¶ 90-91 (A-2179-80); Chivers ¶¶ 136-37 (A-1446-47); SPA-141-42.

83

of consideration in exchange for the payments.  SPA-141-43.  The absence of either is fatal to their claim, and here both are missing.

Plaintiffs were not the contracting party that made the purportedly mistaken or unjust payments; they are not party to any of the Service Agreements, and the payments they seek to recover (i.e., the management, administration, auditing and consulting fees) were made by the Funds or, in the case of FIM, by KML.  SPA-141; Hargun ¶¶ 102 n.20, 103-05, 122, 124, 153.4, 169 (A-2138-39, 2144-45, 2151, 2154); Evans ¶¶ 48, 62, 91.4, 107 (A-2170, 2174, 2180, 2183); Chivers ¶¶ 140, 150 (A-1447-48, 1449-50); Browne-Wilkinson ¶¶ 73-76 (A-2209-10).[83]

---

[83] SPA-142 n.58 (as to FIM, the IM "forecloses this argument altogether, because it indicates that [KML] paid fees directly to FIM at no additional cost to the Funds (and therefore, to the Plaintiffs)").  See also Hargun ¶¶ 105, 124, 153, 168-69 (A-2139, 2145, 2151, 2154); Evans ¶¶ 48, 91, 106-07 (A-2170, 2179-80, 2182-83); Chivers ¶¶ 137, 140-44 (A-1447-48); see, e.g., A-967-70 (describing agreements and payments "from the Fund[s]"); A-1286-92; A-1236; A-1174; A-1094; A-972; A-1562; A-1612-13; A-1684-85; A-1785; A-1862; A-1037; A-1316-17 at § 5.2(a); A-1918 at § 4.1(a) (Manager was paid management fees by each Fund pursuant to the Management Agreements); A-1930 at § 5.2(a) (Tremont was paid management fees by Kingate Global pursuant to the Co- Management Agreements); e.g., A-1236; A-1174; A-1613; A-1685; e.g., A-1334 at § 3 (FIM Limited was paid consulting fees by KML pursuant to the CSAs); A-1346 at § 3; A-1359 at § 3; A-1396-97 at ¶ 7; A-1292-93 at ¶ 7; A-1986-87; A-2001-02; A-2012-13; A-2023-24; A-2033-34; A-2043-44; A-2055; A-2064; A-2072-73; A-2082; SAC ¶¶ 24(b), 25(c), 27 (acknowledging that KML paid FIM under the CSAs), 156(b), 158 (referring to the Funds' financial statements, which show that the Funds paid all the management fees, administration fees and auditor fees), 183, 239, 241, 244, 250 (A-848-49, 891-92, 901, 920-21, 922); see also Initial Complaint ¶ 5 (A-60) ("Defendants wrongfully collected the fees from the Funds"), ¶ 59 (A-90) ("The Funds paid Kingate Management . . . fees").

84

Indeed, as the district court also noted, once Plaintiffs purchased shares in the Funds, they no longer had interests in those assets and could not be considered the "payors" of any fees paid by the Funds under the Service Agreements.  SPA-142; see also Hargun ¶¶ 102-05, 124, 168-69 (A-2138-39, 2145, 2154); Evans ¶¶ 48, 91.4, 106-07 (A-2170, 2180, 2182-83); Chivers ¶¶ 139-44, 150 (A-1447-50), 170 (A-1453); Browne-Wilkinson ¶¶ 73-76 (A-2209-10); Dohmann ¶ 91 (A-2243-44); Chivers Reply ¶ 62 (A-2486).[84]

The restitution claims also fail because, as the district court concluded, Plaintiffs allege not a total failure of consideration, but that Defendants' performance under those Agreements was "substandard" or inadequate for the payments received.  Indeed, the SAC demonstrates that services were provided by every Defendant that contracted to provide services in exchange for the payments, instead alleging that the services were somehow not adequate because Defendants did not uncover Madoff's fraud.  See, e.g., SAC ¶¶ 27, 28(b), 63, 65, 86-93, 189,

---

[84] Plaintiffs' restitution claim as to the fees paid under the Service Agreements fails for two other reasons.  First, the CSAs make clear that KML paid FIM a flat fee for consulting services under that agreement, so there could be no "mistake" about the amount FIM was to be paid for those services, and therefore no basis for a restitution claim.  A-1952; A-1969; A-1971; Chivers ¶ 144 (A-1448).  Second, Tremont Group, FIM (USA) and the Individual Defendants are not parties to the Service Agreements and are not alleged to have received any fees for services under those agreements.  Thus, there cannot be a restitution claim against those Defendants under any theory.  Hargun ¶ 168 (A-2154); Evans ¶ 106 (A-2182); Chivers ¶ 150 (A-1449-50).

193, 198, 239, 244 (A-849-50, 860-61, 868-71, 903-04, 906-07, 920-21). Because

Defendants allegedly provided at least some services to the Funds (or, in the case

of FIM, to KML), Plaintiffs cannot maintain restitutionary claims. SPA-142-43;

see Hargun ¶¶ 106-08, 170 (A-2139-40, 2155); Evans ¶¶ 48, 108 (A-2170, 2183);

Chivers ¶¶ 152-53 (A-1450-51); Browne-Wilkinson ¶ 76 (A-2210); Bompas, *in*

*passim* (A-2256-2307).

Plaintiffs have changed their theory of defendant's liability from that alleged

in the SAC, abandoning any argument that they are entitled to restitution of

management, auditing, administration and consulting fees under the Service

Agreements. See App. Br. at 49-50. Instead, they argue that they were "payors"

of "Subscription Charges" supposedly made when investing their capital with the

Funds. As the district court recognized, this theory of liability was not pleaded

anywhere in the SAC,[85] and Plaintiffs were not entitled to amend their complaint

through briefing. SPA-142; Reply Br. at 76. This argument fails in any event.

First, the SAC does not allege that any Plaintiff paid any Subscription

Charges at all, let alone that these charges were paid to each (or any) Defendant

---

[85] See SAC ¶¶ 249-50 (A-922) (demanding recovery of fees purportedly paid to those Defendants "under a mutual mistake of the parties as to the amount and value of the assets under management and amount of profits"), 323 (A-935) (claiming unjust enrichment, seeking to recover the "commissions and other fees" paid for "purported management and administration" services rendered to the Funds or (in the case of FIM, to KML); Hargun Reply ¶ 68 (A-2509); Evans Reply ¶ 34 (A-2517-18); Chivers Reply ¶ 61(A-2486).

86

named in these counts.  The Manager and Co-Manager had the discretion to waive any Subscription Charges, see, e.g., A-946, 973, and Plaintiffs do not allege that these charges were included in the share price paid by any Plaintiff.  Moreover, the IMs make clear that Subscription Charges, if any, could be paid directly to the Funds rather than to the Manager or Co-Manager.[86]  For Tremont Group, FIM (USA) and the Individual Defendants, none of which are party to any of the relevant agreements, any suggestion that Plaintiffs paid Subscription Charges to them strains credulity.  Moreover, a claim in restitution under BVI/Bermuda law cannot be maintained against a non-party entity or individual who may have ultimately "benefitted" from a payment made by one party to another.  Hargun Reply ¶ 68 (A-2509); Evans Reply ¶ 34 (A-2517-18); Chivers Reply ¶¶ 59, 60 (A-485-86).

Second, Plaintiffs were not "payors" of any "Subscription Charges" to KML or Tremont.  The SAs between the Funds and Plaintiffs and the IMs state that all "Subscription Payments" (including any subscription charges paid) were included in the share price charged by the Funds and were for the benefit of the Funds as

---

[86] See A-968 ("Such other, non-affiliated, authorized dealers may receive sales commissions either directly from the Fund (but payable . . . only to the extent of the permitted five percent (5%) subscription charge as described herein) or from the Manager.") (emphases added); A-1859 (same).

87

consideration for the shares.[87]  The Funds are thus the "payors" of any Subscription

Charges maintained by KML or Tremont or paid to authorized dealers, and KML

or Tremont are the "payors" of any amounts those entities elected to share with

third parties.  Hargun ¶¶ 103-05, 122 (A-2138-39, 2144); Evans ¶¶ 48, 62 (A-2170,

2174); Hargun Reply ¶ 68 (A-2509); Evans Reply ¶ 34 (A-2517-18); Chivers

Reply ¶¶ 56, 58 (A-2483-85).

Third, Plaintiffs cannot allege a total failure of consideration in exchange for

any Subscription Charges paid.  Those charges, if any, were included in the Share

Price in exchange for shares in the Funds, and Plaintiffs' entire case rests on their

purchase of Kingate shares.  See Opp. Br. at 143 n.41;[88] Chivers Reply ¶¶ 56(v),

57, 60 (A-2484-86).  Whether KML, Tremont or any other Defendant adequately

performed management, administration, auditing or consulting services in

exchange for fees for services under the Service Agreements is irrelevant to a

restitution claim premised on Subscription Charges.

Lastly, Plaintiffs did not plead any "mutual mistake" as to the amount due

for Subscription Charges.  The IMs demonstrate that Subscription Charges were to

---

[87] See A-973 ("The USD Shares may be purchased . . . at a price equal to the New
Asset Value per USD Share . . . plus any applicable subscription charges."); A-
1863 (same); A-990; A-1574; A-1292; A-1237; A-1175; A-1095; A-973; A-1564;
A-1614; A-1686; A-1786; A-1864.

[88] SAC ¶¶ 39(a), 40(a) (A-853-54); see, e.g., A-1065, 1067-68, 1095-96; A-1880;
see also Chivers Reply ¶¶ 56(v), 57, 60 (A-2484-86).

88

be calculated, to the extent charged, as a percentage of the "total dollar amount subscribed" by a subscribing shareholder,[89] and the SAC alleges no mistake of fact in connection with any such calculation.  Hargun Reply ¶ 69 (A-2509); Evans Reply ¶ 34 (A-2517-18); Chivers Reply ¶ 62 (A-2486).  Under BVI/Bermuda law, there can be no restitution claim where the payments are made in accordance with the parties' contract.

**III.   SLUSA PRECLUDES PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION AGAINST PWC BERMUDA (COUNT 17) AND CITI HEDGE (COUNT 24), AS THE DISTRICT COURT CORRECTLY HELD, AND ALSO REQUIRES PRECLUSION OF ADDITIONAL CLAIMS**

As this Court has explained, claims are precluded by SLUSA if brought in a "(1) . . . covered class action (2) based on state statutory or common law that (3) allege[] that defendants made a misrepresentation or omission of a material fact or used or employed any manipulative device or contrivance in connection with the purchase or sale (4) of a covered security."  Romano v. Kazacos, 609 F.3d 512, 518 (2d Cir. 2010).  In Kingate, this Court described categories of allegations for purposes of analyzing the applicability of SLUSA preclusion and instructed the district court on remand "to determine, on full briefing, which allegations of the Complaint fall into which of the [SLUSA] categories."  784 F.3d at 152. Following this Court's instruction, the district court held that Counts 17 and 24—

---

[89] A-1292; A-1237; A-1175; A-1095; A-973; A-1686; A-1038.

89

for negligent misrepresentations against Citi Hedge and PwC Bermuda—are Group 2 claims precluded by SLUSA.  SPA-72-79.  Plaintiffs' arguments challenging the district court's straightforward application of Kingate fail.  As to Plaintiffs' remaining claims (besides mutual mistake), the district court incorrectly denied Defendants' motion to dismiss because those claims are all Group 2 or Group 3 claims precluded by SLUSA.

**A.    The District Court Properly Dismissed Plaintiffs' Negligent Misrepresentation Claims Against PwC Bermuda (Count 17) and Citi Hedge (Count 24) as Precluded by SLUSA**

On remand, the district court classified Counts 17 and 24 for negligent misrepresentations—namely PwC Bermuda's "false[] represent[ations]" in its audit reports, SAC ¶ 269 (A-926), and Citi Hedge "issuing false NAV," SAC ¶ 305 (A-932)—as Group 2 claims and dismissed them as precluded by SLUSA.  SPA-72-79.  The district court's conclusion is unsurprising given this Court's holding that "allegations in Group 2 premise liability on Defendants' negligent misrepresentations and misleading omissions in connection with the Funds' investments with Madoff and with oversight of Madoff's operations," which "the district court should therefore dismiss."  Kingate, 784 F.3d at 151.

On appeal, Plaintiffs argue that Counts 17 and 24 "are not precluded because they are based on mis-statements concerning uncovered securities."  App. Br. at 15; see also Opp. Br. at 39-41.  However, the district court correctly recognized

90

that this argument is foreclosed by <u>Kingate</u>, in which this Court held that the "in connection" requirement is met because Plaintiffs "purchased the uncovered shares of the offshore Funds, expecting that the Funds were investing the proceeds in S & P 100 stocks, which are covered securities." 784 F.3d at 142; SPA-73-75, 77-78 (rejecting Plaintiffs' arguments that negligent misrepresentation claims are not in connection with covered securities); <u>see also</u> <u>Anwar v. Fairfield Greenwich Ltd.</u>, 118 F. Supp. 3d 591, 605-06 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claims against service providers to Madoff feeder fund as precluded by SLUSA "[e]ven though the misrepresentations do not, on their face, discuss covered securities").  This Court should affirm the dismissal of Counts 17 and 24 as Group 2 claims precluded by SLUSA.

**B.      Plaintiffs' Argument that SLUSA Does Not Apply to Foreign Law Claims is Foreclosed by Kingate and This Court's Mandate, and In Any Event Fails**

Plaintiffs also argue that this Court's entire <u>Kingate</u> analysis—and its instructions to the district court—are irrelevant because SLUSA has no application whatsoever to this case because their claims are governed by foreign law, which is not "state law" under SLUSA.  App. Br. at 9-15.  This argument fails.

First, Plaintiffs' argument is foreclosed by <u>Kingate</u>.  In light of the parties' dispute over whether New York or BVI/Bermuda law governed Plaintiffs'

91

common law claims,[90] Plaintiffs presented the precise issue of whether SLUSA

applied to foreign law claims to this Court in Kingate. App. Br. at 10 (citing 2012

Pl. App. Br.). While the Kingate opinion was silent on choice of law and the

SLUSA/foreign law issue, this Court held that SLUSA precluded all of Plaintiffs'

claims that are predicated on allegations falling into the first three categories

described in the decision, and the district court "should therefore dismiss" such

claims. 784 F.3d at 151-52. Because "the Court [] was squarely presented with

plaintiffs' [] argument," and a determination that Plaintiffs had alleged "state" law

claims covered by SLUSA is "analytically antecedent" to concluding that certain

categories of allegations are in fact precluded by SLUSA, "a natural reading" of

this Court's decision that SLUSA precluded any of Plaintiffs' claims "suggests that

[Plaintiffs' argument] was rejected." Meacham v. Knolls Atomic Power Lab., 358

F. App'x 233, 235-36 (2d Cir. 2009).

---

[90] See, e.g., Pl.-Appellants' Br., In re: Kingate Mgmt. Ltd. Litig., No. 11-1397 (2d Cir. May 21, 2012), ECF No. 72 ("2012 Pl. App. Br."), at 55; Brief of Def.-Appellee PricewaterhouseCoopers LLP, In re: Kingate Mgmt. Ltd. Litig., No. 11-1397 (2d Cir. Aug. 20, 2012), ECF No. 125, at 9-27; Brief of Def.-Appellee Pricewaterhousecoopers Bermuda, In re: Kingate Mgmt. Ltd. Litig., No. 11-1397 (2d Cir. Aug. 20, 2012), ECF No. 120, at 8 n.4; Mem. Law Supp. Def. Citi Hedge's Mot. Dismiss Am. Consol. Class Action Compl., No. 09 Civ. 5386 (DAB), ECF No. 97; Mem. Law Supp. KML's Mot. Dismiss, No. 09 Civ. 5386 (DAB), ECF No. 102; Pls.' Consol. Mem. Law Opp. to Kingate Defs.' Mots. Dismiss Am. Consol. Class Action Compl., No. 09 Civ. 5386 (DAB), ECF No. 137 ("2010 Pl. Opp. Br."), at 13.

Second, this Court specifically instructed the district court "to determine, on full briefing, which allegations of the Complaint fall into which of the [SLUSA] categories." Kingate, 784 F.3d at 152. Accepting Plaintiffs' argument that SLUSA is inapplicable to foreign law claims would render this Court's mandate ineffective, which would be inconsistent with this Court's well-established principle that a "mandate impliedly decides at least enough issues to allow it to be effective, even if not all issues are made explicit." In re Coudert Bros. LLP, 809 F.3d 94, 101-02 (2d Cir. 2015) (mandate rule "extend[s] beyond express holdings" and "precludes re-litigation of . . . issues impliedly resolved by the appellate court" (internal quotation marks and citations omitted)); see also Call Ctr. Techs., Inc. v. Interline Travel, 622 F. App'x 73, 75 (2d Cir. 2015) (declining to allow defendant to present argument that "would potentially unravel [the Court's] prior decision, a result that cannot be consistent with the mandate"). Indeed, following the reasoning in the Kingate mandate, Plaintiffs withdrew certain fraud-based claims from the SAC as precluded by SLUSA, subject only to "subsequent changes in the law [that] make such claims viable." SAC at p. 72 (A-864).[91]

---

[91] SAC ¶¶ 72-94 (A-864-71) (Counts 1-4, 8, 14, 20, 27 withdrawn as precluded by SLUSA). To the extent Plaintiffs seek to re-assert their withdrawn counts in the event this Court were to determine that SLUSA is inapplicable here, Plaintiffs lack standing to assert such claims because they seek to redress harm that is reflective of the Funds' losses. See supra Section I.A.

93

Third, Plaintiffs have long since waived the argument that SLUSA does not apply to foreign law claims, as the district court correctly held. SPA-49 n.23. This argument was not included in Plaintiffs' opposition in 2010 to Defendants' motion to dismiss the Amended Complaint, even though Defendants had asserted that foreign law applied to Plaintiffs' common law claims and moved to dismiss on SLUSA grounds, but Plaintiffs asserted various other arguments to avoid SLUSA preclusion. 2010 Pl. Opp. Br. at 38-48. Plaintiffs "had every incentive to put its best case forward prior to the initial appeal," yet they failed to raise the SLUSA/foreign law issue despite its relevance to whether SLUSA precluded their claims. Call Ctr. Techs., 622 F. App'x at 75 (finding waiver where defendant had "an opportunity and incentive" to raise "issue in the district court prior to the first appeal," but failed to do so); see also Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp., 671 F.3d 261, 270 (2d Cir. 2012) (where mandatory abstention was litigated below, defendant waived alternative argument to avoid its application that "had not been raised with the District Court"). In light of this Circuit's "uncompromising rule that lower courts may not hear arguments that could have been raised prior to the entry of judgment," Plaintiffs' failure to raise the SLUSA/foreign law issue amounted to waiver. Coudert Bros., 809 F.3d at 100.

Moreover, this Court need not accept Plaintiffs' invitation, App. Br. at 11-12, to exercise its discretion to "consider waived arguments" "where necessary to

94

avoid manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir. 2006). The case relied upon by Plaintiffs in arguing for SLUSA's inapplicability to foreign law claims—LaSala v. Bordier et Cie, 519 F.3d 121 (3d Cir. 2008)—was decided more than two years before Plaintiffs filed their opposition to the Defendants' first motion to dismiss in the district court in 2010. Tellingly, Plaintiffs have offered no reason for their failure to raise the argument then. See Patterson v. Balsamico, 440 F.3d 104, 113 (2d Cir. 2006) (declining to exercise discretion to consider forfeited defense because there was "no justification for [defendant's] failure to pursue it . . . at a time when the issue could have been resolved"); In re Johns-Manville Corp., 759 F.3d 206, 219 (2d Cir. 2014) (declining to exercise discretion to hear waived arguments where necessary to avoid manifest injustice since arguments "were available" below and party "has not offered any reason for its failure to raise these issues in a timely manner in that court"). While Plaintiffs argue that this issue was "purely academic"[92] because

---

[92] The cases on which Plaintiffs rely are inapposite because, unlike here, the arguments at issue were not waived because they were not available under applicable law and, thus, were "purely academic." See United States v. Atehortva, 69 F.3d 679 (2d Cir. 1995) (where there was "no reason to consider" grounds for departure from sentencing guidelines because court was required to apply statutory maximum sentence, government was permitted to assert departure grounds at resentencing); Weiss v. Nat'l Westminster Bank PLC, 176 F. Supp. 3d 264 (E.D.N.Y. 2016) (corporation did not waive "purely academic" specific personal

"the district court decided the first motion under New York law," App. Br. at 9-10, that does not excuse their failure to present the issue to the district court in the first instance.

Plaintiffs' "waiver of waiver" argument, App. Br. at 11, fares no better. To the extent this Court has recognized such a discretionary exception to its normal waiver doctrine, it has only done so in criminal cases, United States v. Quiroz, 22 F.3d 489 (2d Cir. 1994), or where the "argument involves a constitutional right." Mazzei v. Money Store, 829 F.3d 260, 266 n.5 (2d Cir. 2016); see also United States v. Macias, 789 F.3d 1011, 1024 (9th Cir. 2015) (Wardlaw, J., separate opinion) (criminal case mentioned by Plaintiffs). Moreover, although the Court may exercise its discretion to consider a waived question that is purely legal, it has declined to do so where, as here, the issue is one of first impression in this Circuit. Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 159 (2d. Cir. 2003) (quoting Singleton v. Wulff, 428 U.S. 106, 120-21 (1976)).

Finally, were this Court to reach the merits of Plaintiffs' argument, it should hold that SLUSA's prohibition of covered class actions "based upon the statutory or common law of any State," 15 U.S.C. § 78bb(f), encompasses claims governed

---

jurisdiction defense because there was general jurisdiction under the existing law at the time).

by foreign law.  Plaintiffs advocate for a contrary interpretation, arguing that the Securities Exchange Act of 1934 (the "Exchange Act") limits the definition of "State" to territories of the United States, and "[t]here is no textual basis for judicial expansion of the word 'State' to cover claims arising under the law of a foreign nation."  App. Br. at 12-15.  But, that argument entirely ignores that the Exchange Act definitions begin with the phrase "unless the context otherwise requires," 15 U.S.C. § 78c(a), and the textual analyses in the cases upon which Plaintiffs rely similarly overlook this important language.  See, e.g., Bordier, 519 F.3d at 138-39; In re Petrobras Sec. Litig., 169 F. Supp. 3d 547, 521-22 (S.D.N.Y. 2016).

Here, consideration of SLUSA's legislative purpose makes clear that the context requires a broader definition of "State" that captures foreign law.  SLUSA was enacted to address the loophole created by the PSLRA and mandates that "class actions alleging fraud in the sale of certain covered securities" be "governed exclusively by federal law."  Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2d Cir. 2001) (emphasis added); see also H.R. Conf. Rep. No. 105-803, at *13; S. Rep. 105-182, at *3 (recognizing purpose of SLUSA was to rectify "the dangers of maintaining differing federal and state standards of liability").  If SLUSA does not cover common law claims governed by foreign law, a new loophole will exist allowing class action plaintiffs to assert claims under foreign

97

law that would have been precluded by SLUSA if they were governed by the laws of a U.S. territory.  See LaSala v. UBS, AG, 510 F. Supp. 2d 213, 237-38 (S.D.N.Y. 2007) (foreign law claims satisfied SLUSA's state law element because "Congress's intention . . . would be frustrated if actions that would otherwise be preempted if brought under state law were permitted to proceed . . . by virtue of being brought under foreign law"); see also LaSala v. TSB Bank, PLC, 514 F. Supp. 2d 447, 472 (S.D.N.Y. 2007) (foreign law claims satisfied SLUSA's state law element); Feiner Family Tr. v. Xcelera Inc., No. 10-cv-3431 (RPP), 2010 WL 3184482, at *4 (S.D.N.Y. Aug. 9, 2010) (same).[93]

Indeed, even courts that have declined to extend SLUSA preclusion to foreign law claims (which notably omit the contextual analysis required by the "State" definition) recognize the inconsistency of this result with SLUSA's goal. See In re Petrobras, 169 F. Supp. 3d at 551 (noting "how well a ban on foreign law claims might fit within [SLUSA's] larger statutory scheme"); In re BP p.l.c. Sec. Litig., 109 F. Supp. 3d 946, 960 (S.D. Tex. 2014) (noting "[d]efendants may

---

[93] Plaintiffs assert that cases holding "State" law to include foreign law claims predate Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247 (2010).  App. Br. at 14-15.  But this ignores Feiner, 2010 WL 3184482, which was decided after the Supreme Court issued its Morrison opinion on June 24, 2010.  Moreover, Plaintiffs' previous attempt to incorporate Morrison into the SLUSA analysis was rejected by this Court's Kingate mandate.  See 2012 Pl. App. Br. at 1 (squarely presenting issue of whether Morrison is relevant to SLUSA analysis); Kingate, 784 F.3d 128 (2d Cir. 2015) (silent on relevance of Morrison to SLUSA).

98

indeed be correct that SLUSA should preclude foreign law claims" and "[t]his may indeed be a loophole which threatens the vitality of SLUSA").

This Court should also hold that Plaintiffs' claims are subject to SLUSA because the district court held that foreign law governs by applying New York's choice of law rules. SPA-36-49. New York's choice of law rules constitute the "statutory or common law of any State" under SLUSA, similar to how "[t]he laws of the several states," which are "regarded as rules of decision in civil actions" under 28 U.S.C. § 1652, include the choice of law principles of the relevant states. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

### C. The District Court Incorrectly Determined that Additional Claims Are Not Precluded by SLUSA

#### 1. All Claims Against Citi Hedge (Counts 21-26 and 28) and PwC Bermuda (Counts 15-19 and 28) Are Group 2 or 3 Claims Precluded by SLUSA

Plaintiffs characterize all of their duty-based claims in terms of Defendants' inducement of Plaintiffs to invest or hold shares in the Funds, SAC ¶ 1 (A-843),[94] and allege that they were so-induced by Citi Hedge "issuing false NAV and account balance statements," SAC ¶ 305 (A-932),[95] and by PwC Bermuda "falsely representing" that its audit and the Funds' financial statements complied with

---

[94] See also Opp. Br. at 59, 67.

[95] See also SAC ¶¶ 38(b), 286, 294-95, 299-300, 305-06, 315, 320 (A-852, 929-32, 934-35) (claims against Citi Hedge based on miscalculating the NAV and failing to responsibly discharge its responsibility to accurately calculate the NAV).

industry standards.  SAC ¶ 269 (A-926).[96]  Thus, Plaintiffs accept that all of their duty-based claims against Citi Hedge and PwC Bermuda are premised on the same misrepresentations underlying Counts 17 and 24, which, as explained supra and the district court held below, plainly fall under Group 2 and are precluded by SLUSA. Kingate, 784 F.3d at 151.

In concluding that SLUSA does not preclude Plaintiffs' duty-based claims against Citi Hedge and PwC Bermuda, Plaintiffs and the district court misunderstood Kingate, incorrectly focusing on whether false conduct is an "essential element" of each cause of action.  See, e.g., Opp. Br. at 16; SPA-71 (holding negligence claim not precluded by SLUSA because fraud not an "essential element").  As this Court explained, claims are precluded by SLUSA if "the success of a class action claim depends on a showing that the defendant committed false conduct conforming to SLUSA's specifications," regardless of Plaintiffs' attempts to artfully plead claims "under a state law theory that does not include false conduct as an essential element." Kingate, 784 F.3d at 149 (emphasis added).

Such is the case here.  The success of Plaintiffs' duty-based claims requires a showing that Defendants' purported breaches actually caused Plaintiffs' losses.

---

[96] See also SAC ¶¶ 37(a), 151, 155, 157, 256, 262, 268-70, 283 (A-851-52, 889-92, 923-26, 928) (claims against PwC Bermuda based on false statements and omissions in the audit reports).

100

As Plaintiffs' "inducement" theory is based on their position that any losses Plaintiffs suffered due to Citi Hedge's or PwC Bermuda's purported breaches were caused by Plaintiffs' alleged reliance on the misstated NAV, SAC ¶¶ 305-06 (A-932), and the misrepresentations and/or omissions in the audit reports, SAC ¶¶ 270-71 (A-926), respectively, since the SAC does not identify any other purported misconduct by Citi Hedge or PwC Bermuda.  Thus, Plaintiffs' duty-based claims "premise liability on Defendants' negligent misrepresentations and misleading omissions in connection with the Funds' investments with Madoff and with oversight of Madoff's operations" and are therefore Group 2 precluded claims. Kingate, 784 F.3d at 152.  Further, once the Group 2 allegations regarding Citi Hedge's and PwC Bermuda's misrepresentations are disregarded as required by this Court's mandate, id. ("On remand, the district court should therefore dismiss any allegations of the type defined as Group 2"), the remaining claims against Citi Hedge and PwC Bermuda must be dismissed for failure to state a claim because the SAC is devoid of additional allegations to support Plaintiffs' legal theories. See supra Section II.

Alternatively, to the extent Plaintiffs' claims rest on allegations that Citi Hedge and PwC Bermuda were aware of and purposely or recklessly ignored information about BLMIS, they are merely claims that these Defendants "aided and abetted . . . the frauds" of Madoff, and are Group 3 claims precluded by

101

SLUSA.  Kingate, 784 F.3d at 151; see also In re Herald, 730 F.3d 112, 117-19 (2013) ("Herald I").

> **2.** **All Claims Against the Kingate Defendants (Except Mutual Mistake) (Counts 5-7, 9-11, 13 and 28) Are Group 2 or 3 Claims Precluded by SLUSA**

All of Plaintiffs' claims against the Kingate Defendants are based on the theory that they supposedly "had overwhelming information indicating that Madoff's operation was a fraud—evidence they knew about or should have discovered, but instead ignored."  SAC ¶ 64 (A-860).[97]  These are precisely the types of claims that fall under Group 3, where the "realities underlying" the claims are allegations that "Defendants aided and abetted (rather than directly committed) the frauds described in Group 1."  Kingate, 784 F.3d at 140, 151; see also Herald I, 730 F.3d at 119 n.7 ("[defendants'] liability, under any claim, is premised on their participation in, knowledge of, or, at a minimum, cognizable disregard of Madoff Securities' securities fraud") (emphasis added).

As with the claims against PwC Bermuda and Citi Hedge discussed supra, in determining that SLUSA does not preclude the claims against the Kingate Defendants, the district court improperly considered whether "required knowledge

---

[97] See also, e.g., SAC ¶¶ 1, 3, 64, 198-215, 219, 221-22, 224, 226, 229, 232-33, 235, 238-40, 243-47, 251-53, 322, 324 (A-843, 860-61, 906-11, 915-23, 935) (alleging that the "Kingate Defendants" breached duties to Plaintiffs, assisted in such breaches, or improperly earned fees by ignoring Madoff's fraud and failing to disclose the fraud).

102

or complicity" is an essential legal element of each cause of action. SPA-67. This is inconsistent with Kingate. See supra Section III.A.

Furthermore, while the district court sought to distinguish Herald I on the basis that defendants there were "accused of more than failing to exercise due care, but knowledge of and complicity in the third party's fraud," SPA-68 n.31, that is precisely what Plaintiffs allege here as to the Kingate Defendants.[98] Accordingly, each of those claims is a Group 3 claim precluded by SLUSA and should be dismissed. See, e.g., Marchak v. JPMorgan Chase & Co., 84 F. Supp. 3d 197, 212-14 (E.D.N.Y. 2015) (under Herald I, SLUSA precluded knowing participation in breach of trust, aiding and abetting breach of fiduciary duty, unjust enrichment and negligence claims where plaintiffs alleged that defendants "knew, or at least consciously avoided knowing that [a third party] did not purchase securities but instead stole customers' money").[99]

---

[98] Compare Herald I, 730 F.3d at 117 (discussing allegations that the defendants in that action "ignored the evidence of [Madoff's] fraud and failed to disclose the fraud") with e.g., SAC ¶¶ 64, 67 (A-861) (alleging the FIM Entities "knew" or "were willfully blind" to signs of Madoff's fraud), 69 (A-862) (alleging that FIM representative "believed BMIS was a scam"), 232-33, 238, 243, 246, 253, 324 (A-918-21, 923, 935) (alleging that the "Kingate Defendants" improperly earned fees by ignoring evidence of Madoff's fraud and failing to disclose it). See also App. Br. at 34-35, 44, 50.

[99] All claims alleging that Defendants were reckless or grossly negligent in their monitoring of Madoff should be deemed to allege intentional misconduct because, in this context, recklessness and gross negligence are equivalent states of mind. See, e.g., S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir.

103

Alternatively, to the extent Plaintiffs' claims are based on an inducement theory, they are precluded for the reasons discussed above with respect to Citi Hedge and PwC Bermuda. In the wake of Morrison v. Nat'l Australia Bank, 561 U.S. 247 (2010) and Kingate, Plaintiffs re-pleaded to eliminate explicit allegations of fraud in order to avoid being categorized as Groups 1, 2 or 3 claims precluded by SLUSA. However, as discussed supra, because this exposed Plaintiffs' lack of standing to assert these claims, Plaintiffs improperly sought in their opposition brief to recast their remaining claims in the SAC against the Kingate Defendants in terms of direct inducement.[100] As the district court recognized, such a characterization amounts to a misrepresentation claim and would bring all of Plaintiffs' claims against the Kingate Defendants into Groups 1 and/or 2, requiring

2009) (reckless disregard for the truth is a "state of mind approximating actual intent, not merely a heightened form of negligence," and is pled by allegations "that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (citations omitted); Saltz v. First Frontier, L.P., 782 F. Supp. 2d 61, 75 (S.D.N.Y. 2010) (explaining that gross negligence is "conduct that evinces reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" and is similarly pled by allegations "that the danger was either known to the defendant or so obvious that the defendant must have been aware of it") (citations omitted), aff'd, 485 F. App'x 461 (2d Cir. 2012). See also Dohmann ¶¶ 67-68 (A-2235-36); Hargun Reply ¶ 50 (A-2503) (such allegations are closer to allegations of intentional misconduct rather than heightened negligence, which is not a recognized mental state in Bermuda); Evans Reply ¶¶ 3, 24 (A-2512, 2516); Chivers ¶ 98 n.21 (A-1433).

[100] See, e.g., Opp. Br. at 1 ("Defendants recklessly induced Plaintiffs to make and retain investments").

104

dismissal under SLUSA.  SPA-105-06;  see Marchak, 84 F. Supp. 3d at 213-14

(SLUSA precludes allegations, either implicit or explicit, that plaintiff was misled

into purchasing or holding securities).

## IV.    IN THE ALTERNATIVE, INTERNATIONAL COMITY ALSO REQUIRES DISMISSAL OF ALL CLAIMS

Defendants established below that, if the SAC were not dismissed on the

merits or on one of the other threshold issues, it should be dismissed on comity

grounds.  The district court denied that aspect of Defendants' motion, holding that

there were "no exceptional circumstances warranting abstention from the exercise

of jurisdiction" and because the Bermuda Proceedings "are not perfectly identical

to this action."  SPA-96-98.

The district court's decision on this point was in error for three reasons.

First, the court applied the wrong standard to the question of whether a court

should abstain on comity of courts grounds in deference to foreign bankruptcy

proceedings.  Second, comity of courts does not require perfect parity of parties or

claims.  Third, the court failed to consider that comity of nations also warrants

dismissal of this action.

As Defendants' briefs to the district court made clear, this Court has

recognized:  (i) comity of courts, which determines when a court will abstain from

hearing a case in deference to a parallel foreign proceeding, and (ii) what is

sometimes called "comity of nations," which determines when courts will decline

105

to apply U.S. law in deference to the law of other countries. See Diorinou v. Mezitis, 237 F.3d 133, 139 & n.9 (2d Cir. 2001); see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 210 (S.D.N.Y. 2002). The district court conflated the two doctrines, applied the wrong legal standard for dismissal based on comity of courts, and failed to even consider comity of nations. Both doctrines apply and warrant dismissal here.

### A. Comity of Courts Warrants Dismissal

Comity of courts relates to the court's discretion "to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction." JP Morgan Chase Bank v. Altos Horns de Mexico, 412 F.3d 418, 424 (2d Cir. 2005). While parallel proceedings do not always require the exercise of restraint by a U.S. court, the Second Circuit has recognized "one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions—foreign bankruptcy proceedings." Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 92-93 (2d Cir. 2006). Importantly, deference to foreign insolvency proceedings serves as a basis for dismissal even where plaintiffs have standing to bring their claims. See, e.g., Allstate Life Ins. Co. v. Linter Grp. Ltd., 994 F.2d 996, 999 (2d Cir. 1993) (dismissing federal and state securities fraud action in favor of foreign insolvency proceeding). Allowing actions in the United States in the face of foreign

106

bankruptcy proceedings could interfere with the "equitable and orderly distribution of [the] debtor's property," which "requires assembling all claims against the limited assets in a single proceeding." JP Morgan, 412 F.3d at 424 (citation and quotation marks omitted); see also Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 457-58 (2d Cir. 1985) ("The extending of comity to a foreign bankruptcy proceeding . . . enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

This action must be dismissed based on comity of courts in light of the Funds' and KML's foreign liquidation proceedings. Long before Plaintiffs filed their Initial Complaint, the Funds were in liquidation and the BVI court had appointed the Funds' Joint Liquidators to act on their behalf to pursue claims and distribute any proceeds to their creditors. See Tracey ¶ 5 (A-1463). KML was in liquidation in 2012 and the Official Receiver of Bermuda was appointed to serve as KML's liquidator. Tracey ¶ 6 (A-1463). The Funds' Joint Liquidators sued PwC Bermuda and the Bermuda Defendants in the Bermuda Proceedings, asserting similar claims and seeking the same damages that Plaintiffs seek here. Tracey ¶¶ 7, 11-12 (A-1463-65). With the approval of the BVI and Bermuda courts presiding over the Funds' liquidation proceedings, the Funds reached a complete settlement with the Bermuda Defendants. The Funds separately reached a complete

107

settlement with PwC Bermuda. The BVI court has the authority to—and will—determine the appropriate distribution of the Funds' assets (including the settlement proceeds) to shareholders and other creditors.

The district court erroneously considered whether there were "exceptional circumstances" that justified abstention on comity grounds. SPA-97-98. While abstention based on comity of courts is "the exception" for non-bankruptcy parallel proceedings, abstention based on comity is required where, like here, there are foreign bankruptcy proceedings.[101] See Royal & Sun, 466 F.3d at 92-93; Allstate, 994 F.2d at 999 ("comity is particularly appropriate where, as here, the court is confronted with foreign bankruptcy proceedings"). Moreover, there are "exceptional circumstances" here—not only are the Funds in liquidation, SPA-97-98, but so is KML (which the district court overlooked). Tracey ¶ 6 (A-1463). The only way to ensure "equitable and orderly distribution of [the Funds' and KML's] property" under BVI/Bermuda law is to defer to those proceedings. Royal & Sun, 466 F.3d at 93.

_____

[101] The district court relied on Royal & Sun for the "exceptional circumstance" standing. However, the Court there only considered whether there were "exceptional circumstances" that justified abstention on comity grounds because the parallel proceedings were "[o]utside the bankruptcy context." Royal & Sun, 466 F.3d at 93. The district court erred in applying that standard here where foreign bankruptcy proceedings are at issue.

108

The district court also erroneously denied Defendants' comity argument because the Bermuda Proceedings and this action are "not identical." SPA-97. Comity of courts requires dismissal whenever the parties are "substantially the same" and "litigating substantially the same issues in both actions." Royal & Sun, 466 F.3d at 94. The Funds brought suit in Bermuda against KML, FIM Limited, FIM Advisers, Grosso and Ceretti, and separately against PwC Bermuda, seeking to recover the fees paid to these entities plus damages for the Funds' investment losses. CA-90-147, 164-70; Tracey ¶ 7 (A-1463). The Funds allege breach of contractual and fiduciary duties, negligence, and misrepresentation. Those are "substantially the same" defendants, damages sought and legal theories as in this action. Tracey ¶¶ 7, 9 (A-1464-65); Chivers ¶¶ 29-32, 57, 63, 143 n.35 (A-1410-12, 1420-22, 1448); Chivers Reply ¶ 11 (A-2462).

### B. Comity of Nations Also Warrants Dismissal

The comity of nations doctrine also warrants dismissal. SPA-96-98. This doctrine does not depend on the existence of parallel foreign proceedings, but instead "is best understood as a guide where the issues to be resolved are entangled in international relations." Maxwell Commc'n Corp. plc ex rel. Homan v. Société Générale (In re Maxwell Commc'n Corp. plc ex rel Homan), 93 F.3d 1036, 1047 (2d Cir. 1996); Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 513 B.R. 222, 232 (Bankr. S.D.N.Y. 2014) ("Courts conducting a comity analysis must

109

engage in a choice-of-law analysis to determine whether the application of U.S. law would be reasonable under the circumstances . . . .").  Here, the application of U.S. law over the law of BVI/Bermuda would not be reasonable.  The Funds and KML are in liquidation in the BVI and Bermuda, respectively.  The validity of any creditor claim—including claims by the Funds' shareholders—should be determined through those liquidation proceedings under BVI/Bermuda law.  This Court should not provide creditors a second avenue for recovery, through potentially variant rules on distribution.  Sec. Inv'r Prot. Corp., 513 B.R. at 232 (foreign jurisdictions for Madoff feeder funds currently in liquidation "have their own rules concerning on what bases the recipient of a transfer from a debtor should be required to disgorge it.").  Rather than play by those rules, these foreign Plaintiffs improperly seek to avoid them and, through this action, make a grab for the limited assets of the Funds and KML, to the exclusion of their other creditors.  See, e.g., Morrison, 130 S. Ct. at 2885-86 (2010) (recognizing concern with "interference" by U.S. law in "domestic securities exchanges and securities transactions occurring within [foreign countries'] territorial jurisdiction.").

The BVI's and Bermuda's interests in applying their own laws through the bankruptcy proceedings to creditor claims vastly outweigh any interest of the United States in adjudicating this case.  This is particularly true now that (1) these foreign Plaintiffs, all of whom signed SAs that provided for the application of

foreign law, concede that BVI/Bermuda law applies to their claims, which all arise from investments in foreign funds and are asserted against mostly foreign Defendants, Tracey ¶¶ 5-10 (A-1463-64), and (2) the BVI and Bermuda courts approved the settlement of the Bermuda Proceeding and the parties to the Bermuda Audit Proceeding have also reached a settlement. The BVI court will, as it should, determine the appropriate distribution of the Funds' assets, including any recoveries from these settlements, to all claimants, including Plaintiffs. Likewise, any creditor claims asserted against KML should be resolved by the Bermuda court in KML's liquidation proceedings.

## V. ALTERNATIVELY, THE DISTRICT COURT SHOULD HAVE DISMISSED THE CLAIMS AGAINST THE KINGATE DEFENDANTS (COUNTS 5-7, 9-13 AND 28) AS TIME-BARRED

The district court correctly held that the contractual limitations period set forth in the Subscription Agreements and the IMs is enforceable and required all shareholders to bring any claim against any Kingate Defendant within six months of the "original occurrence" giving rise to their claim. SPA-91, 92 n.35; Mov. Br. at 99-105. Although the district court recognized that all of the alleged conduct of these Defendants first occurred years before Madoff's fraud was discovered, SPA-92; Mov. Br. at 101-05; Reply Br. at 85-88, the court nevertheless concluded that none of Plaintiffs' claims against these Defendants was time-barred. That conclusion was wrong.

111

A. **Plaintiffs' Claims Against the KML Defendants, the FIM Defendants and Manzke Are Untimely Because the Original Occurrence Giving Rise to the Claims Against Them Occurred Years Before Madoff's Fraud Was Discovered**

The district court rejected "the arguments that the 'original occurrence' starting the clock for the limitations period was anything other than the date of discovery of Madoff's fraud, December 11, 2008," reasoning that the scope and sophistication of the fraud foreclosed the discovery of the Defendants' alleged wrongful conduct and Plaintiff's losses until the fraud was uncovered. SPA-93 (citing Anwar II, 728 F. Supp. 2d at 445-46). But the court's reliance on Anwar II was misplaced. Unlike a statutory limitations period, there is no tolling or "discovery rule" applicable to a contractual limitation period that runs from the "original occurrence." See, e.g., Top Dog Ventures, LLC v. PK Operations, Inc., No. 0104741/2007, 2008 WL 1881559 (N.Y. Sup. Ct. Apr. 17, 2008) (contractual limitations period runs from the alleged occurrence, not the date of discovery); see also Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 611 (2013) (contracting parties may agree "not only to the length of a limitations period but also to its commencement"). A contractual limitations period giving rise to the claims runs from the date of Defendants' alleged conduct, not the date of discovery

112

of the conduct or the loss.[102]  Because Plaintiffs failed to bring their claims within

six months of when each of these Defendants "first" engaged in the alleged

conduct giving rise to the claim, the claims were time-barred and should have been

dismissed.[103]

### B. Plaintiffs' Claims Against FIM (USA), Grosso and Ceretti Are Untimely Even If The "Original Occurrence" Did Not Occur Until Madoff's Fraud Was Discovered

As the district court recognized, Plaintiffs did not assert any claims against

FIM (USA), Grosso or Ceretti until six months and one day after Madoff's fraud

was discovered, which would render those claims time-barred even if the "original

---

[102] Moreover, the contractual limitations period contemplated two triggers for the accrual of the limitations period:  "Each investor . . . shall be deemed to have waived . . . the right to bring any legal claim, action or other proceeding . . . unless such claim, action or proceeding is commenced within six (6) months from the date of the first to occur of (i) the original occurrence allegedly giving rise to such claim, action or proceeding, or (ii) the Shareholder's redemption of any Shares." A-1293; A-1237; A-1176; A-1096; A-1038; A-1614; A-1687; A-1787; A-1864; A-1038; see also A-1555; A-1033.

The district court focused on the redemption of shares and determined that the "original occurrence" was the shareholder's redemption of shares.  However, this conflates the two clauses and thus "violates the cardinal rule that a contract should not be read to render any provision superfluous." Reyes v. Metromedia Software, Inc., 840 F. Supp. 2d 752, 756 (S.D.N.Y. 2012) (citing Scholastic, Inc. v. Harris, 259 F.3d 73, 83 (2d Cir.2001)).

[103] Plaintiffs conceded that Manzke and FIM Limited ceased all involvement with the Funds years before the Initial Complaint was filed.  See SAC ¶¶ 27 (A-849) (alleging that Manzke ceased involvement with Kingate Global as of 2003 when she stopped serving as a director), 33 (A-849-51) (alleging that FIM Limited ceased being consultant to KML with respect to both Kingate Funds on August 1, 2005); Reply Br. at 85.

113

occurrence" occurred when Madoff's fraud was discovered. SPA-91. The court nevertheless concluded that relation back to the Initial Complaint was appropriate. SPA-94-95. However, as this Court has held, relation back is not appropriate where, as here, Plaintiffs knew the identities of these Defendants and their relationship to the various other parties in the action and deliberately, rather than mistakenly, chose not to add them as defendants in the prior pleading. See Scott v. Vill. of Spring Valley, 577 F. App'x 81, 82-83 (2d Cir. 2014); see also Mov. Br. at 103-04; Reply Br. at 87.

The district court failed to apply this holding, reasoning that it is not "certain" that Plaintiffs knew that these Defendants should have been named in the Initial Complaint given the "complicated corporate structure of the various KML and FIM Entities." SPA-95. But this ignores the fact that the Initial Complaint was premised on the IMs—which detail the relationships between these entities and individuals to the Funds and to each other—and that the Initial Complaint made reference to FIM (USA) and named as defendants other individuals described in the IMs, including both other Individual Defendants. Initial Complaint ¶¶ 15, 18, 20, 24, 27, 29, 39, 42-44, 46-47, 57-58 (A-63-65, 67-69, 73-82, 87-90). Under these circumstances, Plaintiffs cannot show they made a "mistake" by failing to name these defendants, and Plaintiffs did not even argue they did so below. See Opp. Br. at 157-59. Relation back is therefore improper

114

and the claims against these Defendants must be dismissed.  See Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 468 B.R. 620, 628-30 (Bankr. S.D.N.Y. 2012) (claims against late-added defendants time-barred where decision not to include them was fully informed);  see also Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.), 341 B.R. 460, 464 (Bankr. S.D.N.Y. 2006) ("[T]here is no mistake in identifying a new party [as required by the relation-back doctrine] when the plaintiff possessed information related to the identity of such party and its involvement in the alleged transactions and chose not to name [that party]").

## VI.  ALTERNATIVELY, THE DISTRICT COURT SHOULD HAVE DISMISSED THE ACTION AGAINST CITI HEDGE FOR LACK OF PERSONAL JURISDICTION

While the district court correctly dismissed the claims against Citi Hedge on multiple grounds, it incorrectly held that Citi Hedge had previously forfeited its personal jurisdiction defense by not moving to dismiss on that ground in 2010. SPA-88-90.  The Court should affirm the district court's dismissal on the alternative ground raised below that the district court lacked personal jurisdiction over Citi Hedge.  See, e.g., Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 421 (2d Cir. 2005).

When Citi Hedge moved to dismiss the Amended Complaint in July 2010, any argument that the "court lacked jurisdiction" "would have been directly contrary to controlling precedent in this Circuit."  Gucci Am., Inc. v. Li, 768 F.3d

115

122, 135-36 (2d Cir. 2014) (citation omitted). At the time, this Circuit's decision in Wiwa v. Royal Dutch Petroleum Co. subjected defendants to general personal jurisdiction under CPLR 301 and the Due Process Clause even if they lacked "extensive direct contacts with New York." 226 F.3d 88, 93 (2d Cir. 2000). In Wiwa, the Circuit affirmed a finding of general jurisdiction based on contacts with New York such as, *inter alia*, maintenance of a website accessible in New York and retention of New York counsel. Id. Following this expansive view, district courts in this Circuit and others held that foreign service providers to foreign hedge funds were subject to general jurisdiction based on, for example, communications with individuals in the U.S., "systematic solicitation of business in the United States," and an alleged "dependent and intertwined relationship with . . . a United States run organization." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 476 (S.D.N.Y. 2001); Zurich Capital Mkts, Inc. v. Coglianese, 388 F. Supp. 2d 847, 858 (N.D. Ill. 2004) (general jurisdiction based on, *inter alia*, communications with Americans and use of an interactive website); Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V., No. CIV.A. 00-5965 JCL, 2005 WL 3658006, at *8 (D.N.J. June 7, 2005) (general jurisdiction based on, *inter alia*, alleged close relationship with U.S. affiliates).

In 2010, Plaintiffs made similar jurisdictional allegations that Citi Hedge had "systematic and continuous contacts with New York" which would have been

116

sufficient under <u>Wiwa</u>, including that Citi Hedge is an affiliate of U.S.-entity

Citigroup and Citibank, N.A., communicated with Madoff, had a website

accessible in New York and advertised it was "integrat[ed]" with U.S. entities.

Amended Complaint ¶¶ 10(a), 46(c), 193-194 (A-283, A-293, A-345-46); Opp. Br.

at 153 (citing Citi Hedge's webpage, available on February 29, 2016 at

https://www.citibank.com/tts/global_network/latam/bermuda.html).

The Supreme Court's decision in <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746

(2014), decided well after the district court's decision dismissing the Amended

Complaint,[104] "considerably altered the analytic landscape for general jurisdiction."

---

[104] To the extent the district court determined that <u>Goodyear Dunlop Tires
Operations, S.A. v. Brown</u>, 564 U.S. 915 (2011) rather than <u>Daimler</u> was the
intervening change in Supreme Court jurisprudence on general jurisdiction, that is
irrelevant—like <u>Daimler</u>, <u>Goodyear</u> was decided after issuance of the district
court's decision dated March 31, 2011 granting Defendants' first motion to
dismiss. See <u>Goodyear</u>, 564 U.S. 915 (decided June 27, 2011). Neither the district
court nor Plaintiffs cited any authority for the implied proposition that a party
forfeits a newly available personal jurisdiction defense by not raising it in an
appellee brief. <u>Contra</u> Fed. R. Civ. P. 12(h)(1)(B) (party waives personal
jurisdiction defense "by failing to either: (i) *make it by motion* under this rule; or
(ii) *include it in a responsive pleading*") (emphases added); <u>Weiss</u>, 176 F. Supp. 3d
at 274 (personal jurisdiction defense raised on remand not forfeited even though it
could have been raised before the Second Circuit post-<u>Daimler</u>).

Further, <u>Daimler</u>, not <u>Goodyear</u>, was the intervening change in Supreme Court law.
<u>See, e.g.</u>, <u>7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.</u>, No. 13 CIV. 981
(PGG), 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015) ("<u>Gucci America</u>
unequivocally holds, however, that <u>Daimler</u> [not <u>Goodyear</u>] effected a change in
the law, providing defendants . . . with a personal jurisdiction defense that was
previously unavailable to them") (citing <u>Gucci</u>, 768 F.3d at 135-36).

117

Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) (citing Wiwa and related district court decisions as the prior general jurisdiction doctrine providing "little support today" for expansive assertions of general jurisdiction). Now a corporation is only subject to general jurisdiction in its "formal place of incorporation or principal place of business," or in an "exceptional case." Daimler, 134 S. Ct. at 761 n.19. Citi Hedge is incorporated and has its principal place of business in Bermuda, SAC ¶ 38 (A-852-53), and Plaintiffs offered nothing in the SAC to show this is an exceptional case. Thus, the district court was incorrect that Daimler "did not make any new defense available to" defendants like Citi Hedge, SPA-90, because before Daimler, Citi Hedge was subject to general jurisdiction in New York. Since Daimler, however, Citi Hedge is no longer subject to general jurisdiction in New York and properly raised this newly available defense in its motion to dismiss after remand from this Court. See, e.g., Weiss v. Nat'l Westminster Bank PLC, 176 F. Supp. 3d 264, 273-76 (E.D.N.Y. 2016) (defendants did not waive personal jurisdiction argument when they raised it for the first time after remand from the Second Circuit post-Daimler).

The district court's statement that "the facts of Daimler are distinguishable from Citi Hedge's situation," because Plaintiffs sought to establish general jurisdiction over Citi Hedge in New York based on the presence of its parent company, the "opposite circumstance" of Daimler, SPA-90, does not change this

118

analysis.  In 2010, Plaintiffs sought to hale Citi Hedge to New York based both on its direct contacts with New York and its relationship with its parent, a valid approach under Wiwa.  See also Cromer, 137 F. Supp. 2d at 476-79 (subjecting foreign hedge fund administrators to jurisdiction in New York based in part on relationships with parent member association).  Daimler had yet to announce that general jurisdiction was not available unless a defendant was "at home" in the relevant jurisdiction.

The district court also mistakenly suggested that Citi Hedge forfeited its personal jurisdiction defense because "Daimler did not address the scope of specific jurisdiction over a foreign company, which Citi Hedge also challenges here for the first time."  SPA-90.  Because Citi Hedge was subject to *general* jurisdiction under Wiwa and its progeny, any challenge that the court lacked specific jurisdiction would have been "purely academic," as any motion to dismiss on jurisdictional grounds would have been denied.  Weiss, 176 F. Supp. 3d at 275.  In any event, the Plaintiffs, all foreign individuals and entities, did not contend that Citi Hedge is subject to specific jurisdiction in New York, as that would be obviously incorrect under CPLR 302.  Rather, as Plaintiffs alleged in SAC ¶ 38 (A-852), Citi Hedge provided services pursuant to the Administration Agreements to the BVI-based Kingate Funds from its location in Bermuda, not New York.  See CRT Invs., Ltd. v. BDO Seidman, LLP, 85 A.D. 3d 470, 471-72, 925 N.Y.S.2d

119

439, 441 (1st Dep't 2011) (dismissing claim against an auditor of a foreign Madoff feeder fund because "[a]ll of the relevant parties to the cause of action (plaintiff, defendant, and audit client), and all of the work that [the auditor] performed were" abroad, and "sending a few emails and engagement letters into New York" does not "alter this result"); Bensusan Rest. Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997) ("CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."); see also Opp. Br. at 59-62.

Because any argument that the court lacked personal jurisdiction over Citi Hedge would have failed under this Circuit's precedents in 2010 and 2011, Citi Hedge did not forfeit its personal jurisdiction defense by not raising it in its initial motion to dismiss.  Citi Hedge promptly moved to dismiss on personal jurisdiction grounds at the first available instance—the motion to dismiss the SAC—after the Supreme Court's Daimler decision undermined this Circuit's prior precedents. Plaintiffs have not made a "prima facie case for jurisdiction," and this Court should dismiss Citi Hedge from this case on that alternative basis.  Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic, 582 F.3d 393, 401 (2d Cir. 2009) (also denying jurisdictional discovery).

120

## VII. THE DISTRICT COURT PROPERLY DENIED APPELLANTS' REQUEST TO RE-PLEAD FOR A THIRD TIME

The Court should reject Plaintiffs' improper and otherwise futile requests for leave to amend. Plaintiffs argue that leave should be granted for them to: (i) reinstate fraud-based claims that Plaintiffs voluntarily withdrew from the SAC after agreeing that such claims are barred by SLUSA; and (ii) re-plead the existing claims with additional facts to conform to BVI/Bermuda law. App. Br. at 51. This request is entirely improper.

First, Plaintiffs' request to "pursue fraud and other claims that rely on allegations of false conduct," Opp. Br. at 44 n.12, was improperly "buried" "in a footnote in the middle of their brief opposing the [D]efendants' motion to dismiss." Joblove v. Barr Labs, Inc. (In re Tamoxifen Citrate Antitrust Litig.), 466 F.3d 187, 220 (2d Cir. 2006), abrogated on different grounds by Fed. Trade Comm'n. v. Actavis, Inc., 133 S. Ct. 2223 (2013). Moreover, Plaintiffs voluntarily omitted certain fraud-based claims from the SAC as precluded by SLUSA, subject only to "subsequent changes in the law [that] make such claims viable." SAC at p. 72 (A-914). Plaintiffs have identified no such subsequent change in the law. The district court's determination that BVI/Bermuda law governs their common law claims certainly does not amount to a subsequent change in the law. By September 2015, when the district court allowed Plaintiffs to re-plead and they filed their SAC, Plaintiffs were well aware that some courts had held that SLUSA does not preclude

121

foreign law claims—in fact, they had argued precisely that before this Court in May 2012.  Instead, Plaintiffs removed all references to fraud in the SAC in an obvious attempt to plead around SLUSA Group 1.  SAC at p. 72 (A-864) (Kingate "effectively precludes certain claims" and as a result "they are not asserted in th[e] [SAC].")[105]

Second, Plaintiffs never requested leave to conform a new pleading to BVI/Bermuda law, so the district court "surely did not abuse its discretion in not *sua sponte* granting leave to replead."  Lewis v. Robinson (In re Am. Exp. Co. S'holder Litig.), 39 F.3d 395, 402 (2d Cir. 1994). [106]  It came as no surprise to Plaintiffs that Defendants would be arguing that BVI/Bermuda law applied to their claims:  (1) Defendants have argued for the application of foreign law to Plaintiffs'

---

[105]  Plaintiffs' statement further evidences that this Court's mandate was clear, even to them; they are not free to reargue that SLUSA does not apply to foreign law claims.  Supra at Section III.B.

[106] Plaintiffs make even more untimely requests for leave to amend, this time throughout their brief to this Court.  App. Br. at 29-30 (requesting leave to replead with respect to standing given the exculpatory provisions in the Service Agreements), 37 n.15 (requesting leave to replead additional allegations of supposed contacts with Defendants).  These requests should be rejected as not raised to the district court in the first instance.  Moreover, Plaintiffs' request for leave to amend with respect to personal jurisdiction over Citi Hedge should be denied because they have not pleaded even a prima facie basis for jurisdiction.  Frontera, 582 F.3d at 401.

122

common law claims since moving to dismiss in 2010;[107] and (2) the briefing schedule set by the district court when Plaintiffs were granted the opportunity to re-plead their complaint expressly contemplated that the parties would be submitting foreign law declarations with the anticipated motion to dismiss the new complaint.[108]  Moreover, Plaintiffs previously submitted two expert declarations stating that their existing complaints already complied with BVI/Bermuda law. See Bompas (A-770-826); Bompas Further (A-2256-2313).

Plaintiffs' request for leave to amend now, more than a year after the district court permitted them to file the SAC that should have included all allegations they believed could support their claims under foreign law, is a blatant attempt to get a third bite at the apple.  They should not be rewarded with the opportunity to game Rule 15.  State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (denying leave to amend to bring claims under foreign law as unduly delayed and in bad faith because of delay after choice-of-law issue first raised by defendants); Rivero v. INTL FCStone Inc., No. 14 CIV. 3879 (PAC), 2015 WL 6128707, at *3 (S.D.N.Y. Oct. 19, 2015) ("The appropriate time for Plaintiff to file an amended complaint was any time after" they first became

---

[107] See, e.g., Opp. Br. at 41 n.9 (noting that Defendants argued in their motions to dismiss the Amended Complaint in May 2010 that foreign law governed the claims).

[108] Stipulated Order Re: Consol. Action, No. 09 Civ. 5386, ECF No. 50.

aware another jurisdiction's law might apply); but cf. Sango v. Plovba, 966 F. Supp. 229, 233 (S.D.N.Y. 1997) (cited by Plaintiffs) (plaintiffs granted leave to amend where, unlike here, "both parties incorrectly" assumed U.S. law applied (emphasis added)).

Finally, as the district court concluded, leave to re-plead should be denied because any amendment would be futile. SPA-144. Simply put, there are multiple reasons why each of Plaintiffs' claims fail against all Defendants regardless of how Plaintiffs would re-plead them—Plaintiffs lack standing under the reflective loss and proper plaintiff doctrines, and the claims are precluded under SLUSA, contrary to the investment documents and Service Agreements, time-barred and fail for the many additional reasons as set forth in this brief. To the extent that there was any viable claim that could be asserted against any Defendant, which there is not, international comity would nonetheless require dismissal.

## CONCLUSION

For these reasons, this Court should affirm the Decision dismissing the SAC in its entirety with prejudice.

124

Dated:  April 20, 2017

Respectfully submitted,

PAUL HASTINGS, LLP
By: /s/ Jodi A. Kleinick
    Barry G. Sher
    (barrysher@paulhastings.com)
    Jodi A. Kleinick
    (jodikleinick@paulhastings.com)
    Anthony Antonelli
    (anthonyantonelli@paulhastings.com
    Mor Wetzler
    (morwetzler@paulhastings.com)
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 318-6000

*Attorneys for FIM Limited, FIM
Advisers LLP, FIM (USA) Incorporated,
Carlo Grosso, and Federico Ceretti*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
By: /s/ Carmine D. Boccuzzi, Jr.
    Carmine D. Boccuzzi, Jr.
    (cboccuzzi@cgsh.com)
    Erica Klipper
    (eklipper@cgsh.com)
    One Liberty Plaza
    New York, New York 10006
    (212) 225-2000

*Attorneys for Citi Hedge Fund Services
Ltd.*

HOGAN LOVELLS US LLP
By: /s/ Dennis H. Tracey, III
    Dennis H. Tracey, III
    (dennis.tracey@hoganlovells.com)
    Sanford M. Litvack
    (sandy.litvack@hoganlovells.com)
    875 Third Avenue
    New York, NY 10022
    Telephone: (212) 918-3000

*Attorneys for PricewaterhouseCoopers
Bermuda*

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
By: /s/ Seth M. Schwartz
    Seth M. Schwartz
    (Seth.Schwartz@Skadden.com)
    Four Times Square
    New York, New York 10036
    Telephone: (212) 735-3000

*Attorneys for Tremont (Bermuda) Limited
and Tremont Group Holdings, Inc.*

125

COOLEY LLP
By: /s/ Laura Grossfield Birger
   Laura Grossfield Birger
   (lbirger@cooley.com)
   Abigail Belknap Seidner
   (aseidner@cooley.com)
   1114 Avenue of the Americas
   New York, New York 10036
   (212) 479-6000

*Attorneys for Michael G. Tannenbaum*

CHAFFETZ LINDSEY LLP
By: /s/ Scott W. Reynolds
   Scott W. Reynolds
   (scott.reynolds@chaffetzlindsey.com)
   Erin E. Valentine
   (e.valentine@chaffetzlindsey.com)
   1700 Broadway, 33rd Floor
   New York, NY 10019
   Telephone: (212) 257-6960

*Attorneys for Kingate Management Limited*

KOBRE & KIM LLP
By: /s/ Kimberly Perrotta Cole
   Kimberly Perrotta Cole
   (kimberly.cole@kobrekim.com)
   Jonathan D. Cogan
   (jonathan.cogan@kobrekim.com)
   800 Third Avenue
   New York, NY 10022
   Telephone: (212) 488-1200

*Attorneys for Sandra Manzke*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 30,818 words, pursuant to the April 7, 2017 Order granting permission to file an oversized brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(7) because this brief has been prepared in a proportionally spaced typeface using word processing program Microsoft Word 2007, in 14 font, Times New Roman.

Dated:  April 20, 2017

Respectfully submitted,


  /s/ Jodi Kleinick
Jodi Kleinick